# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

PRESIDENT DONALD J. TRUMP, 45th President
of the United States of America, in his individual
capacity,

                    Plaintiff,

         v.                                                3:23-cv-02333-MCR-ZCB

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD p.k.a. BOB
WOODWARD, an individual, and PARAMOUNT
GLOBAL, a Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS Corporation, a
Pennsylvania corporation f/k/a Westinghouse
Electric Corporation,

                    Defendants.

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE AND INCORPORATED MEMORANDUM OF LAW

i

## **TABLE OF CONTENTS**

**Page**

MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER FOR IMPROPER VENUE .........................................................1

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS ...............................2

FACTS ............................................................................................................4

    A.    The Parties ......................................................................................4

    B.    The Interviews and The Work .........................................................5

    C.    The Complaint ..................................................................................9

ARGUMENT ...................................................................................................10

I.     THIS ACTION MUST BE DISMISSED BECAUSE VENUE IS
IMPROPER IN THE NORTHERN DISTRICT OF FLORIDA .................10

    A.    N.D. Fla is Not a Proper Venue Under Section 1391(b)(1) Because
Defendants Are Not All Residents of Florida ...................................11

    B.    N.D. Fla Is Not a Proper Venue Under Section 1391(b)(2) Because A
Substantial Part of the Events Giving Rise to this Action Did Not
Occur Here .......................................................................................12

    C.    Section 1391(b)(3) Is Not Applicable Because D.D.C. and S.D.N.Y.
Are Proper Venues Under 28 U.S.C. § 1391(b)(2) ............................15

II.    IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE
CASE FOR THE CONVENIENCE OF THE PARTIES UNDER 28 U.S.C.
§ 1404 .............................................................................................16

CONCLUSION ................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A1 Procurement, LLC v. Thermcor, Inc.*,
 2015 WL 13659312 (S.D. Fla. Jan. 15, 2015).....................................................18

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
 571 U.S. 49 (2013)......................................................................................10, 11

*Ford v. Brown*,
 319 F.3d 1302 (11th Cir. 2003) ...........................................................................17

*Franklin v. Enhanced Recovery Co., LLC*,
 2019 WL 11555271 (N.D. Fla. Nov. 21, 2019), *report and recommendation adopted*, 2019 WL 11555272 (N.D. Fla. Dec. 20, 2019 ....................................14

*Freeman v. Comerica Bank & Tr., N.A.*,
 2013 WL 12253550 (N.D. Fla. July 1, 2013).......................................................18

*Frey v. Minter*,
 2017 WL 2172195 (M.D. Fla. May 17, 2017), *aff'd,* 829 F. App'x 432 (11th Cir. 2020) ...........................................................................................................11

*Hamel-Schwulst v. Negrotto*,
 2010 WL 548318 (N.D. Fla. Feb. 11, 2010) .........................................................10

*Jenkins Brick Co. v. Bremer*,
 321 F.3d 1366 (11th Cir. 2003) ...................................................................12, 13

*Maki v. Neptune Constr. Grp., Inc.*,
 310 F. Supp. 3d 1371 (M.D. Fla. 2018)................................................................10

*Manuel v. Convergys Corp.*,
 430 F.3d 1132 (11th Cir. 2005) ...........................................................................16

*McDowell v. Ham*,
 2011 WL 2560342 (N.D. Fla. May 23, 2011), *report and recommendation adopted,* 2011 WL 2560328 (N.D. Fla. June 28, 2011) ......................................15

*Michel v. NYP Holdings, Inc.*,
 816 F.3d 686 (11th Cir. 2016) .............................................................................17

*Montgomery v. Risen*,
2016 WL 4119865 (S.D. Fla. Jan. 26, 2016) ......................................................13

*Motorola Mobility, Inc. v. Microsoft Corp.*,
804 F.Supp.2d 1271 (S.D. Fla. 2011) ......................................................16, 17, 18

*Mt. Hawley Ins. Co. v. Adams Homes, LLC*,
2014 WL 12538169 (N.D. Fla. Jan. 10, 2014) ...........................................12, 13

*Nunes v. CNN*,
2023 WL 2468646 (M.D. Fla. Mar. 1, 2023) .......................................11, 13, 14

*Pferdmenges v. Bindra*,
2012 WL 12867831 (S.D. Fla. Nov. 20, 2012) ..............................................17

*Robey v. JPMorgan Chase Bank, N.A.*,
343 F. Supp. 3d 1304 (S.D. Fla. 2018) .......................................................12, 13

*Trump v. Clinton*,
2023 WL 333699 (S.D. Fla. Jan. 19, 2023) ......................................................6

*Wai v. Rainbow Holdings*,
315 F. Supp. 2d 1261 (S.D. Fla. 2004) ...........................................................10

## Statutes

28 U.S.C.
§ 1391 *et seq.* ...........................................................................*passim*
§ 1404..........................................................................................15, 16
§ 1404(a) .......................................................................................2, 15
§ 1406...............................................................................................15
§ 1406(a) .........................................................................................2, 9

## Other Authorities

Fed. R. Civ. P.
12(b)(3) ..........................................................................................2, 9
12(b)(6) ..........................................................................................2, 4

N.D. Fla. Loc. R 7.1(F). .........................................................................22

## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## TO TRANSFER FOR IMPROPER VENUE

Defendants Robert Woodward ("Woodward"), Simon & Schuster, Inc. ("S&S"), and Paramount Global ("Paramount" and, collectively, "Defendants"), by and through undersigned counsel, respectfully move to dismiss Plaintiff's Complaint and, in support of this motion, state:

1. Plaintiff alleges venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), which states in relevant part that a party can file suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…."

2. Plaintiff has made no allegations of relevant conduct in this District to support it as a proper venue. Plaintiff alleges that Woodward's book was sold in the state of Florida and that Paramount has a registered agent in Tallahassee. Such conduct, however, is not sufficient for venue and did not give rise to this action.

3. Indeed, there are no allegations that could support venue in this District. All the substantial events—conceptualizing, drafting, researching, editing, recording, and producing the Work in audio and print format—occurred in Washington, D.C. and New York.

4. Neither can Plaintiff show venue is proper in this District under Section 1391(b)(1) or Section 1391(b)(3). Section 1391(b)(1) does not apply

because Defendants are not all residents of Florida. Further, Plaintiff cannot rely on Section 1391(b)(3) because there are proper venues under the statute—the District of Columbia and the Southern District of New York. Therefore, this case must be dismissed under 28 U.S.C. § 1406(a)

5. In the alternative, the Court should transfer this action to the District of Columbia or the Southern District of New York under 28 U.S.C. § 1404(a) for the convenience of the parties.

WHEREFORE, Defendants request that the Court enter an Order dismissing this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a) or, in the alternative, transferring this action pursuant to 28 U.S.C. § 1404(a).

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

In this lawsuit, President Trump accuses Defendants copyright infringement based on Woodward's work, *The Trump Tapes: The Historical Record* (the "Work"), which expands upon a series of interviews Woodward conducted with President Trump during his presidency. Defendants address the substantive defects of President Trump's claims in their accompanying Rule 12(b)(6) Motion to Dismiss, but this Court need not reach the merits because the Northern District of Florida is not a proper venue.

Though President Trump carries the burden of establishing proper venue, the Complaint alleges only that "venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2)." Compl. ¶ 18. Section 1391(b)(2) permits plaintiffs to file suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Yet, the allegations show no nexus between his claims and this District capable of satisfying the venue statute. Indeed, though the Complaint alleges copyright and tagalong state law claims arising from the publication of the Work, *none* of the substantial events that gave rise to President Trump's claims occurred in the Northern District of Florida.

As the title suggests, *The Trump Tapes: The Historical Record* is based on 19 tape-recorded interviews Woodward conducted with then-President Trump (the "Interviews")—the vast majority of which occurred in Washington, D.C. Only one interview took place in Florida at Mar-a-Lago, in Palm Beach, Florida, which is not located within this District. Further, Woodward wrote, edited, and audio-recorded original content for the Work in Washington, D.C., where he resides. Meanwhile, additional work editing, recording, and publicizing the Work was performed in New York, where Simon & Schuster is based.

Simply put, none of the Interviews and none of the events that led to the publication of the Work occurred in the Northern District of Florida. The Court

3

should dismiss the complaint for improper venue or transfer the case to the District of Columbia or the Southern District of New York, where venue is proper.

## FACTS[1]

### A.    The Parties

Plaintiff Donald Trump was President of the United States from January 2017 to January 2021, and is now a private citizen living in Palm Beach County, Florida. Compl. ¶1.

Defendant Bob Woodward is one of this country's most celebrated investigative journalists.  He resides in Washington, D.C.  Compl. ¶4; Rule 7.1 Statement, Dkt. 17.  Since 1971, he has worked at *The Washington Post* in Washington, D.C. (where he conducted his Pulitzer Prize winning reporting on Watergate).  *Id.* at ¶¶13, 22; *see also* Declaration of Bob Woodward ("Woodward Decl.")  ¶2.  Since *All the President's Men*, which documents the downfall of President Nixon, Woodward has written books about every president, including current-President Biden, and interviewed Presidents Carter, Clinton, George W. Bush, Obama, and Trump in the Oval Office.  *See id.*.

Defendant S&S is a publishing house incorporated in New York and headquartered in New York City.  Compl. ¶¶2, 19-21; Rule 7.1 Statement, Dkt. 16.

---

[1] Relevant background is further detailed in Defendants' contemporaneously-filed Rule 12(b)(6) Motion to Dismiss.

S&S has published all of Woodward's books, including those covering Trump's presidency: *Fear*, *Rage*, *Peril*, and the Work.  *See* Woodward Decl. ¶4.  Defendant Paramount is a media company and the parent company of S&S.  Compl. ¶¶2, 5; Rule 7.1 Statement, Dkt. 18.  Paramount is incorporated in Delaware and headquartered in New York City.  *See id.*  The Complaint does not identify any conduct by Paramount related to the Work.

### B.    The Interviews and The Work

Between December 5, 2019 and August 14, 2020, Woodward conducted the Interviews with then-President Trump, excerpts of which were included in his book *Rage*, published by S&S in 2020.  Woodward then incorporated the Interviews into the Work, which S&S published in 2022.  At the time of all the Interviews, Trump was the President of the United States and resided at the White House in Washington, D.C.

Virtually all the Interviews and the vast majority of the surrounding events occurred in the Nation's Capital.  On December 5, 2019, Woodward conducted the first interview in the Oval Office with various government officials in attendance, including Vice President Mike Pence, Senator Lindsey Graham, Senior Political Counselor Kellyanne Conway, Deputy Press Secretary Hogan Gidley, and Chief of

Staff Mick Mulvaney.  Woodward Decl. ¶8, Appx. A.[2]  The next interview took place in the Oval Office on December 13, 2019, and the final in-person interview occurred at Mar-a-Lago, Trump's residence in Palm Beach, Florida in the Southern District of Florida.[3]  *Id.* ¶¶9-10.

In early 2020, with the onset of the COVID-19 pandemic, the remaining Interviews occurred via telephone.  *Id.* ¶11.  For those Interviews, Woodward generally contacted Trump through his Special Assistant, Molly Michaels.  *Id..*  Woodward placed these calls from Washington, D.C.  *Id..*  On a few occasions, President Trump called Woodward at his home in Washington, D.C.  *Id.* ¶12.  Through President Trump's own words and independent reporting, it appears that President Trump was also in Washington, D.C. during these Interviews, except on February 19, 2020, when Woodward reached President Trump aboard Air Force One.  *Id.* ¶13.[4]  Woodward conducted the last interview with Trump on August 14,

---

[2]  *See* Appendix A ("Appx. A") of Woodward's Declaration for the locations and attendees for each of the Interviews.

[3]  President Trump has filed previously lawsuits in the Southern District of Florida, where he lives.  Recently, Judge Middlebrooks sanctioned Trump and imposed a fine of $937,989.39 for filing a frivolous lawsuit.  *Trump v. Clinton*, 2023 WL 333699, at *1 (S.D. Fla. Jan. 19, 2023) ("This case should never have been brought.").  Days later, Trump filed this lawsuit in the Northern District.

[4]  The Work also includes an interview from March 2016 before Trump was the Republican presidential nominee.  It also occurred in Washington, D.C.  *See* Woodward Decl. ¶19.

2020, and *Rage* was published one month later on September 15, 2020—less than two months before the presidential election.[5] *Id.* ¶¶15-16.

Corresponding with the publication of *Rage*, Woodward published 38 audio excerpts from the Interviews for use in news stories.  *See* Compl. n.9 (linking to video clip explaining release of excerpts); Woodward Decl. ¶16.  Various media used these excerpts, and they appeared on *The Washington Post's* website.  *See id.* The Complaint asserts no claim over the use of the Interviews in *Rage* or the prior release of the Interview excerpts.

Upon reviewing the Interviews in early 2022, Woodward "decided to take the unusual step of releasing these recordings" as an audiobook because "[h]earing Trump speak is a completely different experience to reading the transcripts or listening to snatches of interviews…"  Woodward Decl. ¶17; 12(b)(6) Exhibit A, 1.[6] In the Work, the Interviews generally "proceed uninterrupted, fulfilling Woodward's goal of presenting Trump's voice and words for the historical record, and offering listeners the chance to hear and judge and make their own assessments."  *Id*. Woodward wrote an Introduction and Epilogue for the Work, providing historical

---

[5] The Complaint incorrectly cites the paperback edition of *Rage* published in 2021, not the hardcover published a year earlier.  *See* Compl. ¶ 31.

[6] 12(b)(6) Exhibit A ("Ex. A") refers to the Work, incorporated into the Complaint by reference and included as Exhibit A to Defendants' contemporaneously-filed 12(b)(6) motion.

and political context for the Interviews and, more broadly, the Trump Administration. *Id*. 1-3, 414-19. The Work also includes Woodward's "227 new commentaries," interspersed throughout the Interviews, "provid[ing] essential context or clarification." *Id*. vii, 2; Woodward Decl. ¶20.

Woodward wrote all of this original content in Washington, D.C. *Id*. S&S employees then edited the Work in New York City. *Id*. ¶¶20-21. More precisely, Woodward and S&S edited Woodward's recordings of the Interviews for clarity to remove "excessive repetition, irrelevant material, background noise and unintelligible audio." Ex. A, 2; *see* Compl. ¶53. An audio producer recorded Woodward's commentaries, Introduction, and Epilogue and spliced them into the Interviews, ensuring "sound production quality" and, in one case, processing the audio "to remove the [background] music for copyright reasons." Ex. A, vii, 137; Woodward Decl. ¶¶22, 26. Woodward, and his collaborator, Claire McMullen, worked primarily from Washington, D.C., including recording much of the Work's audio. Woodward Decl. ¶23. S&S employees, another recording studio, and the post-production staff who worked on the manuscript and audiobook worked in New York. *Id*. ¶¶24-26. The audiobook version of the Work was released in October 2022, with the compact disc set, paperback and e-book versions released in November 2022 and January 2023, respectively. Compl. ¶40.

In sum, none of this work took place in this District.  Instead, virtually all of the Interviews, research, drafting, editing, and production for the Work, in print and audio formats, took place in Washington, D.C. or New York City.  *See* Woodward Decl. ¶¶5, 8-12, 14, 20-27; Appx. A.

### C.    The Complaint

Plaintiff commenced this action on January 30, 2023.  The Complaint asserts a claim under the Declaratory Judgment Act against all Defendants, seeking a declaration of Plaintiff's copyright interests in the Interviews and the Work and demanding damages "estimated to be at least $49,980,000, exclusive of punitive damages."  Compl. ¶¶60, 64-66.  It further asserts state common law and statutory claims against Defendants for an accounting, unjust enrichment from the use of the Interviews, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").   Compl. ¶¶67-73, 77-79, 86-88, 95-98, 108-113.   Finally, the Complaint asserts claims for promissory estoppel, breach of contract, and breach of the covenant of good faith and fair dealing against Woodward for his use of the Interviews beyond the scope of Trump's alleged limited license and for "mislead[ing] and deceiv[ing] other customers into viewing him in a poor light."  Compl. ¶¶102-04, 118-126. The Complaint does not assert, beyond a conclusory reference to Section 1391(b)(2) (*see* Compl. ¶18), how venue is proper in this District.

## ARGUMENT

## I.   THIS ACTION MUST BE DISMISSED BECAUSE VENUE IS IMPROPER IN THE NORTHERN DISTRICT OF FLORIDA

Courts are required to dismiss or transfer an action when venue is "wrong" or "improper."  28 U.S.C. § 1406(a); F.R.C.P. 12(b)(3).  "Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  "On a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of showing that venue in her chosen forum is proper."  *Hamel-Schwulst v. Negrotto*, 2010 WL 548318, at *5 (N.D. Fla. Feb. 11, 2010) (citing *Wai v. Rainbow Holdings,* 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).  "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper."  *Wai*, 315 F. Supp. 2d at 1268.  "Trial courts generally have broad discretion in evaluating venue arguments and determining whether to transfer or dismiss the case."  *Maki v. Neptune Constr. Grp., Inc.*, 310 F. Supp. 3d 1371, 1373 (M.D. Fla. 2018) (citation omitted).

There are three permissible grounds for proper venue.  *First*, venue is proper in the district where "any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  *Second*, venue is

proper in the district where "a substantial part of the events or omissions giving rise to the claim occurred." *Id*. at (b)(2).   *Third*, when "there is no district in which an action may otherwise be brought" under the first two prongs, a plaintiff may select "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *Id.* at (b)(3). This is a "fallback" prong, only to be considered *if* there is no proper venue identified under the statute's first two provisions. *Atl. Marine Const. Co.*, 571 U.S. at 56-57; *Frey v. Minter*, 2017 WL 2172195, at *3 (M.D. Fla. May 17, 2017), *aff'd*, 829 F. App'x 432 (11th Cir. 2020) ("The Court need not analyze whether this District could be a 'fallback' venue because there is a 'preferred' district for this action" under Section (b)(2)).

President Trump asserts in conclusory fashion that "[v]enue is proper in this jurisdiction pursuant to subsection (b)(2)." Compl. ¶ 18.  For the following reasons, however, the Northern District of Florida is not a proper venue under *any* part of Section 1391.

### A.   N.D. Fla is Not a Proper Venue Under Section 1391(b)(1) Because Defendants Are Not All Residents of Florida

President Trump rightly does not rely on subsection (b)(1) because not "all defendants are residents of" Florida as required under the subsection.  As Plaintiff alleges, Woodward is a "resident of Washington, D.C.," while S&S and Paramount are "headquartered in New York" (Compl. ¶¶2, 4-5) thereby precluding reliance on the subsection.  *See, e.g.*, *Nunes v. CNN*, 2023 WL 2468646, at *5 (M.D. Fla. Mar.

1, 2023) (finding improper venue where the defendants did not "both … reside in Florida").[7]

**B.**    **N.D. Fla Is Not a Proper Venue Under Section 1391(b)(2) Because A Substantial Part of the Events Giving Rise to this Action Did Not Occur Here**

President Trump alleges, albeit without explanation, that venue is proper under subsection (b)(2).  Compl. ¶ 18.  But this allegation is insufficient because no "substantial part of the events or omissions" that give rise to his claims occurred in this District.  Under the relevant analysis, only the *defendants*' activities "'that directly give rise to a claim are relevant,'" and "of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Robey v. JPMorgan Chase Bank*, N.A., 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).  Further, "there must be a substantial connection to the kind of events giving rise to the claim—that is, 'a close nexus to the wrong' alleged—not merely insubstantial 'minimum contacts' with the venue."  *Mt. Hawley Ins. Co. v. Adams Homes, LLC*, 2014 WL 12538169, at *2 (N.D. Fla. Jan. 10, 2014) (citing *Jenkins*, 321 F.3d at 1372).

---

[7] For venue, a defendant corporation is deemed to be the resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  28 U.S.C. § 1391(c).  Assuming *arguendo* that the corporate defendants are residents, this section still does not apply because of Woodward's residency in Washington, D.C.

Here, venue is improper in the Northern District of Florida because President Trump has failed to plead a single act undertaken by Defendants in this District that has a "close nexus with the cause of action." *Jenkins*, 321 F.3d at 1372–73. While the Complaint does make general allegations that books were "sold and distributed in Florida," Compl. ¶15, there are no allegations of such activity in this District. Indeed, even if there were, such minimum contacts cannot establish venue. *See Mt. Hawley*, 2014 WL 12538169, at *2 (citing *Jenkins*, 321 F.3d at 1372) (finding "connection" to Florida "marginal at best" where insurance policies mailed to district). Consider, for example, the recent defamation action brought by Devin Nunes against CNN and Jake Tapper in the Middle District of Florida. *Nunes*, 2023 WL 2468646, at *5. The court dismissed the action for improper venue since none of the significant events occurred there, underscoring that it was not relevant to venue that the CNN broadcast at issue was available in "the Middle District of Florida, *in addition to all over the world*." *Id.* (emphasis in original). *See also Robey,* 343 F.Supp.3d at 1316 (improper venue where plaintiffs "failed to demonstrate that a 'substantial part' of [defendant's] acts or omissions giving rise to these specific causes of action occurred in this District"); *Montgomery v. Risen,* 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016) (venue improper where defendant's newsgathering occurred in D.C., not Florida).

Here, too, the events giving rise to this action have no nexus to this District. Virtually all of the Interviews occurred in Washington, D.C.; Woodward never travelled to this District in the process of writing the Work nor did he knowingly speak with anyone located here; all the writing, editing and work on the audio version of the Work occurred in Washington, D.C. or New York; and the Work was published from S&S' headquarters in New York.  Woodward Decl. at ¶¶4-6, 11-15, 20-27; *Nunes*, 2023 WL 2468646, at *5 (allegations that plaintiff was employed in the district insufficient to establish venue).  *See also* Appx. A.

President Trump's only allegation specific to this District is that Paramount has a registered agent in Tallahassee.  Compl. ¶5.[8]  Paramount's use of a registered agent, however, is not a "substantial part of the events" that give rise to this action. *See, e.g.*, *Franklin v. Enhanced Recovery Co., LLC*, 2019 WL 11555271, at *1 (N.D. Fla. Nov. 21, 2019), *report and recommendation adopted*, 2019 WL 11555272 (N.D. Fla. Dec. 20, 2019) (transferring to M.D. Fla. where alleged wrongful conduct occurred even though defendant had a registered agent in Tallahassee).  In sum, nothing related to the creation and publication of the Work took place in this District. Accordingly, venue is improper.

---

[8] Indeed, this is the only allegation related to Paramount's conduct.

**C.**     **Section 1391(b)(3) Is Not Applicable Because D.D.C. and S.D.N.Y. Are Proper Venues Under 28 U.S.C. § 1391(b)(2)**

Nor can President Trump establish venue under "fallback" subsection (b)(3) because the District of Columbia and the Southern District of New York are both appropriate venues under subsection (b)(2).  *See*, *e.g.*, *McDowell v. Ham*, 2011 WL 2560342, at *1–2 (N.D. Fla. May 23, 2011), *report and recommendation adopted*, 2011 WL 2560328 (N.D. Fla. June 28, 2011) ("[B]ecause this action could have been brought in the [M.D. Ala] where all of the events occurred, § 1391(b)(3) does not apply….").

Here, the most appropriate venue is clearly the District of Columbia where the Interviews occurred, where Woodward resides, and where he conceptualized, drafted, edited, and produced the Work.  The Southern District of New York would also be proper because S&S edited and published the Work from its offices there.[9] Since President Trump could have brought suit in these districts, he cannot rely on Section 1391(b)(3).

In sum, President Trump cannot establish this District as a proper venue under Section 1391, and this case should be dismissed.  *See* 28 U.S.C. § 1406.

---

[9] All Defendants accept venue is proper in either the Southern District of New York or the District of Columbia.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THE CASE FOR THE CONVENIENCE OF THE PARTIES UNDER 28 U.S.C. § 1404

If the Court finds that the Northern District of Florida is a proper venue, this case should still be transferred "for the convenience of the parties."  *See* 28 U.S.C. § 1404(a).  When more than one venue is proper, courts "may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id*.  In doing so, courts consider several factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  Here, the majority of factors weigh in favor of transfer.

*First*, because the events underlying this lawsuit occurred in Washington, D.C. and New York, at least six factors support transfer: the convenience of the witnesses, the locations of relevant documents and access to sources of proof, convenience of the parties, the locus of operative facts, the availability of process to compel unwilling witnesses, and trial efficiency.  *See Motorola Mobility, Inc. v. Microsoft Corp.*, 804 F.Supp.2d 1271, 1275, 1278 (S.D. Fla. 2011) (transfer was

warranted under § 1404 where Motorola "alleged venue solely based on Microsoft's products being sold within this District," and "the extent of Microsoft's presence" in Washington State led to each factor weighing in favor of transfer or being neutral).

*Second*, the governing law favors transfer because D.C. law applies to the state claims.  There is an "advantage to 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.'"  *Pferdmenges v. Bindra*, 2012 WL 12867831, at *5 (S.D. Fla. Nov. 20, 2012) (citing *Ford v. Brown*, 319 F.3d 1302, 1307 (11th Cir. 2003)).  A federal court sitting in diversity applies the conflict-of-law principles of the state in which it sits.  *See, e.g.*, *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 694 (11th Cir. 2016) (applying New York law when relevant reporting occurred in New York).  Florida courts apply the "most significant relationship" test, which considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  *Id.* (citations omitted).  As set forth above, the District of Columbia has the most significant relationship to this case, and, therefore, its substantive law should apply.

*Third*, neither the relative means of the parties nor Plaintiff's choice of forum weigh against transfer.  President Trump describes himself as a billionaire, and he deliberately filed in a venue with no substantial connection to the claims of this case. *See Motorola*, 804 F.Supp.2d at 1276 ("[w]here the operative facts…did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration."); *Freeman v. Comerica Bank & Tr., N.A.*, 2013 WL 12253550, at *3 (N.D. Fla. July 1, 2013) (same).  If he is able to litigate his claims in this Court, 600 miles from Mar-a-Lago, he is clearly capable of litigating his claims in the District of Columbia or Southern District of New York.  *See A1 Procurement, LLC v. Thermcor, Inc.*, 2015 WL 13659312, at *5 (S.D. Fla. Jan. 15, 2015) (relative means factor neutral where plaintiff bears cost of travel regardless of forum).  Similarly, Plaintiff is familiar with the District of Columbia and the Southern District of New York, where he is involved in active litigation and has several residential properties, including the Trump Tower.

In sum, the totality of the circumstances overwhelmingly favors transferring this case to the District of Columbia.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint for improper venue or, in the alternative, transfer to the District of Columbia, and such and other relief the Court deems proper.

Dated:  April 3, 2023

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara (NYBN 1930643
Linda J. Steinman (NYBN 2137305)
John M. Browning (NYBN 5213038)
Leena M. Charlton (NYBN 5622147)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
        lindasteinman@dwt.com
        jackbrowning@dwt.com
        leenacharlton@dwt.com

**GUNSTER, YOAKLEY & STEWART, P.A.**

Kenneth B. Bell (FBN 347035)
Lauren V. Purdy (FBN 93943)
Derek K. Mountford (FBN127172)
One Independent Dr., Suite 2300
Jacksonville, FL 32202
Phone: (904) 354-1980
Email: kbell@gunster.com
        lpurdy@gunster.com

*Attorneys for Robert Woodward,
Simon & Schuster, Inc. and
Paramount Global*

**WILLIAMS & CONNOLLY***

Kevin T. Bane (DCBN 438394;
*pro hac vice forthcoming)*
Thomas G. Hentoff (DCBN 128600)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5804

19

Email: thentoff@wc.com

*Of counsel to Robert Woodward*

## ORAL ARGUMENT REQUESTED

Pursuant to Local Rule 7.1(K), Defendants respectfully request oral argument on this Motion and, together with their accompanying Rule 12(b)(6)Motion to Dismiss the Complaint, Defendants estimate one hour as the required time for the hearing.

## CERTIFICATION OF WORD COUNT

I hereby certify that this Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue complies with Rule 7.1(F) of the Local Rules for the Northern District of Florida and this Court's order granting permission to file an oversized document, not to exceed 4,000 words. Dkt. 22.

According to the word-processing system used to prepare this Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue, the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 3,830 words.

Dated: April 3, 2023                              */s/ Elizabeth A. McNamara*
     New York, New York                              Elizabeth A. McNamara

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2023, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to all counsel of record.

_/s/ Elizabeth A. McNamara     ._
Attorney