

Robert Garson
20803 Biscayne Blvd., 4th Floor
Aventura, FL 33180
E: rg@gs2law.com
P: +1.305-780-5212

November 17, 2022

Elizabeth McNamara
Davis Wright Tremaine LLP
1252 Avenue of the Americas
New York, NY, 10020
**By e-mail to:** lizmcnamara@dwt.com

**Re:     Notice of Copyright Infringement / The Trump Tapes**

Dear Ms. McNamara,

We write in furtherance to our letter of October 24, 2022, and Simon & Schuster's response of October 28, 2022 ("Response"). We are copying Mr. Woodward into this correspondence as the Response stated that your firm represents Simon & Schuster ("SS") and was silent concerning Mr. Woodward. However, if you are also representing Mr. Woodward's interests, please make us aware of that representation and whether such representation is pursuant to any indemnification agreement.

It is evident from the outset that the position in the Response is internally inconsistent, drafted without a full appreciation of the facts and bereft of support at law. First and foremost, the repetitive contention that the interviews were "on the record," fails to take into account that on multiple occasions, Mr. Woodward represented to President Trump that the interviews were specifically and only for "the book" "to come out before the election," namely the printed publication entitled Rage.[1] The recorded interviews themselves specifically reveal not only an audiobook was not contemplated at the time of recording but Mr. Woodward circumscribed the scope of the permission sought for their use. Certainly, neither President Trump nor anybody on his behalf authorized a recording for the purposes of releasing that recording to the public for a profit.

---

[1] Interview 4 3:34:37 "On the record for the book… The book only", Interview 9 2:24 "And this is again for the book … ah … uh to come out before the election."


Secondly, an analysis of the recorded interviews show that they are not "raw" or "unedited" as SS and Mr. Woodward have represented to the purchasing public, but that significant audio footage has been excised from the recorded interviews for the published audiobook. We therefore demand complete copies of the raw and unedited recorded interviews so that we can conduct a full comparison to reveal the extent of the editing that has taken place.

Thirdly, SS's position that the recordings represent government copyright is unavailing. If that were, in fact, the case, then Mr. Woodward would have lodged such recorded interviews with the National Archives previously, and SS would not have been able to claim any exclusivity over the recorded interviews.  Furthermore, one of the recorded interviews took place prior to the Presidency.  Similarly, the Response attempts to invoke the doctrine fair use, which is similarly meritless as a defense. The release, for profit, of eight (8) hours of the recorded interviews, fails every element of the fair use defense at the first hurdle, in that this is a commercially released work which on Mr. Woodward's own admission adds no new expression and utilizes substantially all of the recordings. Simply put, fair use fails.

Fourthly, the Response misconstrues the nature of the copyright in a recorded interview. It is not the mimicry of a voice character that is claimed as was the case in *Azaria v. Bierko*, 2014 WL 12561611 (C.D. Cal Feb. 21, 2014). Rather, President Trump claims copyright in the recorded interviews, the actual recordings of his voice, where consent to be recorded was limited and for the purposes of the writing of a book to be released before the election, when it was given.[2] It is hornbook law, well recognized by the Copyright Office that *an interview may be registered as a literary work if it has been fixed in a written transcript, an audio recording, a video recording, or other medium of expression."* (¶719 Compendium of U.S. Copyright Office Practices January 2021). The Compendium proceeds to state *"The U.S. Copyright Office will assume that the interviewer and the interviewee own the copyright in their respective questions and responses."*

---

[2] There are multiple instances of Mr. Woodward stating that he is about to turn on his recorder when the recording had already begun.



Continuation Page

Given that Mr. Woodward has conceded on multiple occasions that the responses of President Trump provide the value to this publication, the demand of the entire copyright remains.

Lastly, the notion that Mr. Woodward released the recordings for the "historical archive" while together with SS, charged the public $24.99 per download for which the Response asserts is Government Copyright is laughable. If altruism came with such attendant revenue, no charity would qualify as a non-profit.

In addition to provision of the full unedited recorded interviews, please provide a full record of sales made and revenue derived from the publication of the audiobook, together with details of any advance made to Mr. Woodward, in order to have meaningful discussions to resolve this matter amicably. If you are not prepared to accede to our requests, please confirm that you are authorized to accept service and for whom.

All rights reserved.

Yours sincerely,

Robert Garson

cc. Bob Woodward, Yanina Zilberman