# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

PRESIDENT DONALD J. TRUMP, 45th
President of the United States of America,
in his individual capacity,

                    Plaintiff,

     v.                              3:23-cv-02333-MCR-ZCB

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD
p.k.a. BOB WOODWARD, an individual,
and PARAMOUNT GLOBAL, a Delaware
corporation, f/k/a Viacom Inc., successor by
merger to CBS Corporation, a Pennsylvania
corporation f/k/a Westinghouse Electric
Corporation,

                    Defendants.

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO TRANSFER FOR IMPROPER VENUE AND TO DISMISS THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

ARGUMENT ....................................................................................................2

I.     DEFENDANTS' VENUE MOTION SHOULD BE GRANTED .................2

     A.      Venue is Improper in this District ................................................2

     B.      The Action Should in Any Event be Transferred ................................5

II.     DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE
       GRANTED ......................................................................................6

     A.      President Trump Cannot Avoid Dismissal for Failing to Obtain a
          Registration ..............................................................................6

     B.      President Trump Lacks a Copyright Interest in the Work ....................8

          1.      The Work is Not a Joint Work ................................................8

          2.      Any Contributions President Trump Made to the Work Are
              Unprotectable Government Works ..........................................10

          3.      The Copyright Compendium does not Preclude Woodward
              as the Sole Author of the Work ..............................................13

     C.      President Trump's Copyright Claims Are Barred by Fair Use ..........15

     D.      The State Law Claims Are Preempted ...........................................17

     E.      The State Law Claims Fail  to State a Claim ....................................18

     F.      Paramount Is Not a Proper Party......................................................19

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
    143 S.Ct. 1258 (2023) ..........................................................................16

*Aretz v. Douglas*,
    2013 WL 12123678 (M.D. Fla. Nov. 27, 2013) ....................................9

*Baker v. Carnival Corp.*,
    2006 WL 3360418 (S.D. Fla. Nov. 20, 2006) ......................................4

*Bennett v. Am. Online, Inc.*,
    2007 WL 2178317 (E.D. Mich. July 27, 2007) ...................................20

*Brown v. Entertainment Merchants Ass'n*,
    564 U.S. 786 (2011) ............................................................................18

*Campbell v. Acuff-Rose Music*,
    510 U.S. 569 (1994) ............................................................................16

*Childress v. Taylor*,
    945 F.2d 500 (2d Cir. 1991) ................................................................9

*Database Am. v. Bellsouth Adver. & Publ'g Corp.*,
    825 F. Supp. 1216 (D.N.J. 1993) ........................................................3

*Dowbenko v. Google, Inc.*,
    582 F.App'x 801 (11th Cir. 2014) ......................................................7

*Finch v. Weigh Down Workshop Ministries*,
    2019 WL 1243729 (W.D. Va. Mar. 18, 2019) ....................................4

*Foley v. Luster*,
    249 F.3d 1281 (11th Cir. 2001) ........................................................17

*Fort Wayne Books, Inc. v. Indiana*,
    489 U.S. 46 (1989) ..............................................................................18

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*,
    139 S.Ct. 881 (2019) ............................................................................7

ii

*Georgia v. Public.Resource.Org, Inc.*,
  140 S.Ct. 1498 (2020) ...................................................................13, 15

*Gilmour v. Gates, McDonald & Co.*,
  382 F.3d 1312 (11th Cir. 2004) ........................................................9

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ......................................................11

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ........................................................11

*Howard Johnson Co. v. Khimani*,
  892 F.2d 1512 (11th Cir. 1990) ......................................................19

*Huls v. Llabona*,
  437 F.App'x 830 (11th Cir. 2009) .....................................................7

*Jackson v. Red Hills Oral & Facial Surgery PA*,
  2019 WL 13290748 (N.D. Fla. July 26, 2019).................................17

*Kissi v. Panzer*,
  664 F.Supp.2d 120 (D.D.C. 2009)...................................................18

*McKally v. Perez*,
  87 F.Supp.3d 1310 (S.D. Fla. 2015) .................................................7

*Meyers v. Waverly Fabrics*,
  65 N.Y.2d 75 (1985) ......................................................................19

*Michel v. NYP Holdings*,
  816 F.3d 686 (11th Cir. 2016) ........................................................11

*Palmer v. Braun*,
  376 F.3d 1254 (11th Cir. 2004) ........................................................4

*Public Affairs Assocs. v. Rickover*,
  268 F.Supp. 444 (D.D.C. 1967)..................................................11, 12

*Senter v. JP Morgan Chase Bank, N.A.*,
  810 F.Supp.2d 1339 (S.D. Fla. 2011)..............................................19

*Seventh Chakra Films, LLC v. Alesse*,
    2023 WL 3600492 (S.D. Fla. Mar. 28, 2023) ......................................................9

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)...........................................................................................13, 14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)...................................................................................................16

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
    756 F.3d 73 (2d Cir. 2014) ....................................................................................16, 17

*Varsity Brands, Inc. v. Star Athletica, LLC*,
    799 F.3d 468 (6th Cir. 2015) ......................................................................................13

**Constitutional Provisions**

U.S. Const. amend. I ...........................................................................................................18

**Statutes**

17 U.S.C.
    § 101...............................................................................................................................9, 10
    § 105................................................................................................................................17
    § 105(a) ..........................................................................................................................10
    § 411(a) ..........................................................................................................................6, 7
    § 411(b)(1) .....................................................................................................................9

28 U.S.C.
    § 1391................................................................................................................................3
    § 1391(b)(2) ..................................................................................................................3, 4, 5
    § 1400................................................................................................................................3
    § 1400(a) ..........................................................................................................................4
    § 2201…...........................................................................................................................3

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1, 6

**Other Authorities**

H.R. Rep. No. 94-1476 (1976).............................................................................................9

## INTRODUCTION

President Trump fails to confront multiple independent grounds for dismissal set forth in Defendants' Venue ("Venue-Mot.") and Rule 12(b)(6) ("MTD") Motions.[1]  Instead, his oppositions ask this Court to disregard his own pleadings, undisputed facts, and established law to save this unfounded action.

Most egregious, President Trump repeatedly attempts to amend his pleadings via his opposition briefs.  Despite expressly alleging counts under the Declaratory Judgment Act, Plaintiff now suggests his claims could be reframed as copyright infringement to avoid the venue standard for declaratory judgment claims and escape transfer.  Similarly, he introduces unverified and undocumented allegations that the Copyright Office will issue a registration of the Work as a joint work, even though this directly contradicts his own affirmative pleadings alleging the exact opposite.  But President Trump cannot swap flawed claims out for new ones.  Nor can he hold Defendants' Motions in abeyance indefinitely while he awaits a decision on his registration application.  The Court should adjudicate the claims Plaintiff Trump presented in the Amended Complaint, just as it would for any other litigant.

---

[1] Unless noted, capitalizations and abbreviations are the same as in Defendants' moving briefs.

1

Nor can President Trump expect this Court to ignore the undisputed facts that dispose of his claims.  Most significantly, there is no dispute that the Amended Complaint, the Work incorporated by reference therein, and the declaration of Plaintiff's own lawyer incontrovertibly demonstrate that President Trump gave the Interviews in his official capacity and as part of his official duties.  It cannot be disputed, therefore, that President Trump's contributions to the Interviews are Government Works that do not qualify for copyright protection.  In the end, his entire Amended Complaint fails as a matter of law.

## ARGUMENT

## I.   DEFENDANTS' VENUE MOTION SHOULD BE GRANTED

### A.   Venue is Improper in this District

The opposition fails to rebut the conclusion that this action has no connection to the Northern District of Florida and should be transferred to the District of Columbia.  First, President Trump pleaded (Compl. ¶¶7-8), repleaded (Am.Compl. ¶¶6-8), and reaffirmed that this is "an action for declaratory judgment as to copyright ownership."  Dkt. 43 ("Venue-Opp.") 10.  Plaintiff nevertheless suggests that this Court put the Motion on hold and wait for the Copyright Office's ruling on his registration application before "determin[ing] whether this is an action for declaratory judgment or an action for copyright infringement, or both."  Venue-Opp. 7.  But President Trump is master of his pleadings.  He chose to file

2

this action before obtaining any copyright registration (an independent infirmity) and alleges unequivocally that this action "arises under the declaratory judgment provision of 28 U.S.C. §2201…." Dkt. 32, ¶66.

Since this was pleaded as a declaratory judgment action, Section 1391(b)(2) clearly governs and is determined by where a "substantial part of the events…giving rise to the claim occurred." *Database Am. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1223 & n.13 (D.N.J. 1993); *see also* Venue-Mot. 10-14. President Trump does not dispute—nor could he—that the vast majority of the Interviews, as well as the creation and editing of the Work, took place in the District of Columbia or New York. No significant events occurred in the Northern District of Florida. *Id.* at 5-8.

President Trump suggests that the law holding that venue in declaratory judgment actions is governed by Section 1391(b), not Section 1400, should be narrowly construed or rejected, since these authorities rest on patent or copyright invalidity principles. Venue-Opp. 8-10. But this misses the point. In each decision Defendants cited, the court invariably applied Section 1391 to Declaratory Judgment Act claims involving underlying copyright issues. *See also* Venue-Mot. 10-11. There is no suggestion that a different outcome would be required if the plaintiff contested copyright ownership rather than validity or infringement. Nor does the opposition cite a single case supporting such a finding. Instead, it relies

on a handful of standard copyright infringement cases that say nothing about venue in declaratory judgment actions.  Venue-Opp. 10-11; *see also* Venue-Mot. 10-14.[2]

Finally, President Trump suggests Section 1391(b)(2) is satisfied based on "substantial sales [that] occurred in Florida."  Venue-Opp. 16.  This is legally and factually without basis.  Citing no authority, Plaintiff argues that the relevant events are "not where the Interviews took place" or where the Work was created and published.  *Id.*  Rather, he suggests—again, without support—that the "gravamen" of "the events giving rise to this lawsuit is the sale of the subject works."  *Id*.  This ignores that Section 1391(b)(2) venue in a "declaratory-judgment-copyright-case" is based on where an author "researched... synthesized...and drafted her work."  Venue-Mot. 16 (quoting *Finch v. Weigh Down Workshop Ministries*, 2019 WL 1243729, at *1, *3 (W.D. Va. Mar. 18, 2019)); *see also* Venue-Mot. 14-16.  Since it is conceded that *none* of the Interviews, research, writing, recording, editing, or other creative conduct occurred

---

[2] Assuming *arguendo* that Section 1400(a) governs, a few sales in this District cannot satisfy the "minimum contacts" requirement.  *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004) (under 1400(a), venue coincides with personal jurisdiction in the specific district); *see, e.g.*, *Baker v. Carnival Corp.*, 2006 WL 3360418, at *5 (S.D. Fla. Nov. 20, 2006) (no personal jurisdiction where "low sales" of defendant's book were the only connection to Florida).  President Trump's venue argument boils down to Defendants' publishing activities reaching nationwide (or global) audiences, including in this District.  *See* Venue-Opp. 11-15.

in this   District, venue is clearly not proper here under the "substantial part" standard.  *See id.*

Even if substantial sales determined venue—they do not—President Trump provides no factual support that substantial sales occurred in *this* District in Florida.  *See* Venue-Opp. 16.  Statewide sales are irrelevant, as venue looks to specific judicial districts.  Section 1391(b)(2).  In *this* District, commercial and library sales are negligible.  If such meager sales were sufficient, it would eviscerate the requirements of Section 1391(b)(2) and allow venue in any judicial district.[3]

In sum, the action should be transferred because venue is improper.

## B.    The Action Should in Any Event be Transferred

The undisputed record, including Woodward's declaration and the Work, establishes that the District of Columbia is the most convenient venue by far. Woodward resides in D.C. (Woodward Decl. ¶2), all but two of the Interviews took place in D.C. (Woodward Decl. ¶¶8-15; Appendix A), and Woodward wrote, edited, and recorded the Work in D.C. with his D.C.-based collaborator, Claire

---

[3] Though the sales data is not grouped by judicial district, only ▇ copies of the paperback and ▇ CD audiobooks sold in the greater "Mobile-Pensacola, AL/FL/MS" market. Garson Decl. Ex. E. (S&S00000013).  Of ▇▇▇▇▇ eAudio sales to libraries nationwide, only ▇ copies were purchased in this District ▇▇▇▇▇▇▇▇▇▇.  *Id.* (S&S00000001, OverDrive eAudio Sales by State Tab).

McMullen, or New York-based S&S employees. *Id*. ¶¶4-5, 20.[4]  President Trump

does not dispute that none of the likely witnesses appears to reside in this District,

or that litigating is as convenient for him in D.C. as Florida.  Nor does he dispute

that the relevant documents all reside in D.C. or New York.  President Trump

dismisses the importance of which law governs, Venue-Opp. 22-23, but does not

dispute that D.C. law applies to this case or that a D.C. court would be better

placed to apply that law.  In short, the record establishes that the convenience of

the parties dictates transfer to D.C.  Venue-Mot. 17-19.[5]

## II.   DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS SHOULD BE GRANTED

### A.   President Trump Cannot Avoid Dismissal for Failing to Obtain a Registration

President Trump admits that he "did not satisfy the copyright registration

requirement in 17 U.S.C. §411(a)," but asks this Court to permit him to amend his

Amended Complaint "to reflect satisfaction of the imminent registration element."

Dkt. 44 ("Opp.") 9.  He provides no evidence that any registration has issued or

will issue, let alone "imminently."  This last ditch effort to sustain an admittedly

non-actionable lawsuit should be rejected.

---

[4] Assuming *arguendo* that book sales are the "operative facts" (Venue-Opp. 21), the data shows that more copies of the paperback and audiobook were sold in the D.C. area than in this District.  *See* Garson Decl. Ex. E. (S&S00000013).

[5] Plaintiff's argument that Defendants failed to support their transfer arguments should be given no weight in the face of the documented record supporting Defendants' motion.  Venue-Opp. 19-23.

President Trump cannot inject new allegations into his pleadings through opposition papers and, instead, must rely only on the facts in his Amended Complaint. *McKally v. Perez*, 87 F.Supp.3d 1310, 1317 (S.D. Fla. 2015) ("[A] complaint may not be amended in briefs in opposition to a motion to dismiss.") (citing *Huls v. Llabona*, 437 F.App'x 830, 832 n.5 (11th Cir. 2009)).   No registration is alleged, and that is the end of the inquiry.

Nor does good cause exist to stay this action due to unverified communications in which the Copyright Office supposedly "expressed its willingness to grant copyright protection to President Trump as a joint author of the Work." Opp. 8.  The Supreme Court slammed the door on arguments that copyright claims can survive while applications are pending. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881, 892 (2019) (copyright claims are not actionable unless and until the "Register [of Copyrights] has registered a copyright after examining a properly filed application").  President Trump fails to mention *Fourth Estate*, and instead points out that the registration requirement "is not a jurisdictional prerequisite." Opp. 10.  But that misses the point.  "[A]lthough §411(a) is not jurisdictional, it nevertheless amounts to 'a precondition to filing a claim.'"  *Dowbenko v. Google, Inc.*, 582 F.App'x 801, 805 (11th Cir. 2014) (citation omitted).  Simply put, registration is a prerequisite to this lawsuit that President Trump failed to satisfy.  MTD 13-14.

Having filed a Complaint and Amended Complaint that fail to meet a basic "precondition" for his claims, President Trump forced Defendants to bear the expense of filing two sets of motions to dismiss facially deficient pleadings.  This Court should not allow President Trump to waste more time and judicial resources by permitting further amendments to allege a "fact" that does not even exist.

### B.  President Trump Lacks a Copyright Interest in the Work

Attempting to find some toehold for his Copyright Claims, President Trump makes three inconsistent arguments belied by law and the undisputed facts:  (1) the Work is a "joint work" under the Copyright Act; (2) his contributions to the Work are not governed by the Government Works doctrine; and (3) the Copyright Office's Compendium dictates that Woodward cannot be sole author of the Work.

### 1.  The Work is Not a Joint Work

President Trump's complaints allege that he is the "sole author" of the Work—a position he appears to have abandoned—or, in the alternative, the exclusive owner of the "copyright interest in his [Interview] responses."  Compl. ¶66; Am.Compl. ¶72.  His pleadings also squarely reject the notion that the Work is a "joint work," unequivocally stating that he "never sought to create a work of joint authorship, and in the hours of the Interviews, there is neither allusion to nor confirmation of such."  Compl. ¶47; Am.Compl. ¶53.

Nonetheless, President Trump now contends that the Work is a "joint work," and he its "joint author." Opp. 19. It is improper for President Trump to use opposition papers to rewrite the core allegations of his pleadings that no longer suit him. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("plaintiff may not amend her complaint through argument in a brief opposing" a motion); *see supra* II-A.

Further, the law could not be more clear: a "joint work" is only created by "authors with the intention that their contributions be merged into…a unitary whole." 17 U.S.C. §101; *Childress v. Taylor*, 945 F.2d 500, 505-07 (2d Cir. 1991) (quoting H.R. Rep. No. 94-1476, at 120 (1976) at 120 ("The touchstone here is the *intention, at the time the writing is done,* that the parts be absorbed or combined into an integrated unit....")); *Aretz v. Douglas*, 2013 WL 12123678, at *2 (M.D. Fla. Nov. 27, 2013) (applying *Childress*, joint authors "must show…that each party intended to be joint authors"); *Seventh Chakra Films, LLC v. Alesse*, 2023 WL 3600492, at *6 (S.D. Fla. Mar. 28, 2023) (same).[6] President Trump not only affirmatively disclaimed his intention to create a "joint work," but also underscored that "there is neither allusion to nor confirmation of such [intent.]" in the Interviews. Compl. ¶47; Am.Compl. ¶53. Neither does he allege—nor could

---

[6] Any "joint work" registration obtained by President Trump is subject to invalidation under 17 U.S.C. § 411(b)(1) after he repeatedly disclaimed his intent to create a joint work.

he—that Woodward shared the necessary intent to create a joint work.  As a matter of fact, law, and procedure, President Trump is barred from now claiming joint authorship.

### 2.   Any Contributions President Trump Made to the Work Are Unprotectable Government Works

As a threshold matter, President Trump does not dispute the law of the Government Works doctrine.   Opp. 21; 17 U.S.C. §105(a) ("Copyright protection…is not available for *any* work of the United States Government.") (emphasis added); 17 U.S.C. §101 (Government Works are "prepared…as part of [the] official duties" of an "employee of the United States government.").   Thus, President Trump's Copyright Claims fail whether he asserts a joint, exclusive, or divided copyright interest in the Work because he—like any president—cannot claim ownership over press interviews provided as part of his official duties.  MTD 19-26.

Unable to dispute this, President Trump incorrectly asserts that Defendants argue that being President is an "automatic trigger" for application of the Government Works doctrine and "offer no…evidence" that he gave the Interviews within the scope of his duties.  Opp. 21, 23.  Neither is true.  In fact, Defendants painstakingly showed that President Trump's conclusory allegation that the Interviews were "not conducted or performed in the scope of government employment" is belied by the Work itself—and now Plaintiff's own declaration

confirming that he was working on federal property for virtually all the Interviews. Am.Compl. ¶38; *see also* Mot. 20-24; Garson Decl. ¶21; *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Michel v. NYP Holdings*, 816 F.3d 686, 707 (11th Cir. 2016).[7]   Since President Trump's opposition does not dispute *any* of the facts Defendants cite from the Work (and waived opposition to their incorporation by reference), the facts conclusively demonstrate that President Trump was performing official duties when he was interviewed by Woodward.  *See Public Affairs Assocs. v. Rickover*, 268 F.Supp. 444, 448-49 (D.D.C. 1967) ("[T]he duties of a high Government official should not be narrowly interpreted" and do not turn on a formal job description.).

President Trump does not dispute that he represented to another court that "[s]peaking to the press and communicating with the public is clearly conduct 'of the kind [a President] is employed to perform.'"  MTD at 23.  Neither does he challenge *any* of the evidence demonstrating that his contributions to the Interviews were not in his personal capacity, but rather part of his official duties.

---

[7] As the Eleventh Circuit has observed, "[a] document central to the complaint," like the Work, "that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *see also* MTD 4 (citing cases).

Specifically, there is no dispute that certain Interviews took place in the Oval Office—the "innermost seat of executive power"—and almost all in the White House, often with active involvement of White House communications employees. MTD 22; *see also* Garson Decl. ¶21.   Nor is there any dispute that all the Interviews focused on matters of state, or that President Trump directed administration officials to provide interviews and government documents to Woodward to support his arguments.  MTD 22-23.  Thus, President Trump cannot deny that his contributions to the Interviews were in his Presidential capacity and therefore constitute Government Works.   In short, this is a far cry from the extracurricular speeches in *Public Affairs Associates v. Rickover*, and Defendants' position is fully supported.

President Trump nonetheless argues that the Presidential Records Act ("PRA") supports his conclusions because it "functions independent of and as a functional exception to the Copyright Act and its government works provision," and permits presidents to retain ownership of purely "personal records" like "diaries [or] journals."  Opp. 25-27.  But on-the-record Interviews with America's foremost political journalist are not the "functional equivalent of a diary or journal."  And the PRA does not act as a "functional exception" to the Copyright Act.   As Defendants explained, the PRA operates independently of and harmoniously with the Copyright Act because the former concerns the "ownership

of physical materials," which is "a distinct legal concept" from copyright. MTD 24. The PRA simply does not support the claim that President Trump should own and profit from a copyright in Interviews he conducted as President.[8]

### 3. The Copyright Compendium does not Preclude Woodward as the Sole Author of the Work

As predicted, President Trump uses the Compendium of U.S. Copyright Offices Practices (the "Compendium") to argue against Defendants' detailed showing that Woodward is "the true author of the Interviews." MTD 14-19. But the Opposition vastly overstates the deference owed to a "non-binding administrative manual," *Georgia v. Public.Resource.Org, Inc.*, 140 S.Ct. 1498, 1510 (2020), particularly when the Compendium does not specifically address interviews of high-government officials and no registration has actually issued.

The Opposition concedes that the "policies and practices set forth in the Compendium do not in themselves have the force and effect of law.…" Opp. 16 (quoting Compendium 2). Instead, the Compendium is only "entitled to *Skidmore* deference"—not even the higher *Chevron* standard (*id.*, quoting *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 479 (6th Cir. 2015)—and courts thus "must follow it only to the extent it has the power to persuade." *Public.Resource.Org, Inc.*, 140 S.Ct. at 1510 (finding certain guidance in

---

[8] President Trump suggests that Woodward was "acting as author rather than journalist," Opp. 26, but this is a distinction without a difference. Investigative reporters like Woodward are often book authors and journalists simultaneously.

13

Compendium unpersuasive).   As President Trump admits and the Compendium itself states, the persuasiveness of the Compendium "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade."  Opp. 17 (quoting *Skidmore v. Swift & Co.*, 323 U.S. at 134, 140 (1944), and citing Compendium).

Here, President Trump does not even try to persuade the Court that the Compendium's default rules on interviews are worth adopting.  On its face, the Compendium's bare-bones statement that "[t]he Copyright Office *will assume* that the interviewer and the interviewee own the copyright in their respective questions and responses…" (*id*. at 18, Compendium §719 (emphasis added)) hardly reflects any "thoroughness…in its consideration."  *Skidmore*, 323 U.S. at 140.  Section 719 of the Compendium cites no case law or justifications for its "assumption." Further, the Compendium is only a general manual, not a conclusive determination of the unique circumstances presented by President Trump's novel claim. Critically, President Trump also ignores Defendants' detailed arguments that a rule dividing the copyright in the Interviews between him and Woodward contravenes at least two categories of binding laws: (i) precedents defining the "mastermind" as the sole author of a collective creative project, and (ii) the statutory prohibition on private ownership of Government Works.  MTD 14-19, 25.  And President Trump

does not mention Defendants' strong policy rationales against granting politicians and other public figures ownership interests in their interviews, which could stifle news reporting. *Id*. at 25-26.

Against this backdrop, the Court should reject the invitations to blindly follow the Compendium and to preclude a finding that Woodward is the sole author of the Work. As the Supreme Court held in *Public.Resource.Org.*, "[b]ecause…precedents answer the question before us,…any competing guidance in the Compendium [is] unpersuasive" and need not be followed. 140 S.Ct. at 1510.[9]

## C.   President Trump's Copyright Claims Are Barred by Fair Use

Even if President Trump's Interview responses were copyrightable, this is a rare case where fair use is so evident from the face of the Complaint that immediate dismissal is appropriate. MTD 28. Rather than identifying facts to rebut fair use, Plaintiff turns to misrepresentations of the undisputed record or to bad law. Most glaring is President Trump's contention that "there is nothing before this Court to suggest the Defendants" added "extensive supplemental materials" to the Interviews. Opp. 28. The Work, however, indisputably uses the

---

[9] Court should grant no deference to President's Trump's contention that the Copyright Office "concluded, in its specialized experience and investigation" that the Work is a "joint work." Opp. 19. The Court cannot evaluate the weight of a conclusion or registration that does not yet exist.

Interviews for the transformative and presumptively fair use purpose of "commenting" upon and "criticizing" President Trump's statements during the Interviews—particularly through Woodward's 227 "commentaries," Introduction, Epilogue, and other original contributions. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S.Ct. 1258, 1282 (2023).

Similarly, President Trump suggests that "every commercial use of copyright material is…presumptively unfair." Opp. 36 (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984)). But the Supreme Court rejected this, holding that "Congress could not have intended…a rule" where "commerciality carried presumptive force against a finding of fairness…." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 584-85 (1994). Virtually all news reporting and publishing is "commercial" and that has never been found to preclude fair use. Further, President Trump ignores *Swatch*, which establishes that "the need to convey information to the public accurately may in some instances make it…consonant with copyright law for a defendant to faithfully reproduce an original work [in full] without alteration." *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014); MTD 26-27.

President Trump's arguments miss Defendants' larger point that this case presents undisputed facts that cry out for early application of the fair use doctrine. Woodward's Interviews with then-President Trump are inherently part of the

16

historical record.  Fair use permits their extensive use in the Work because, as *Swatch* makes clear, "a speaker's demeanor, tone, and cadence can often elucidate his or her true beliefs far beyond what a stale transcript or summary can show." *Swatch*, 756 F.3d at 84.  *See also* MTD 26-28.

### D.   The State Law Claims Are Preempted

President Trump does not mention—let alone dispute—the premise of Defendants' conflict preemption argument: courts cannot enforce State Law Claims that would thwart "the full purposes and objectives of Congress[']" statutory prohibition against copyrighting government works.  *Foley v. Luster*, 249 F.3d 1281, 1287 (11th Cir. 2001).  President Trump dodges by arguing that "the government works doctrine is irrelevant," and *ipso facto* there can be no preemption.  Opp. 40.  But this logic fails if the Court determines that the government works exception does apply to the Copyright Claims—in which case, President Trump offers no response to *any* of Defendants' points establishing that the State Law Claims are unenforceable because they "ask[] this Court to contravene Section 105…."  MTD 29-32.  "Because the plaintiff's opposition fails to address the defendant's arguments, the Court may treat the defendant's [conflict preemption arguments] as conceded" and dismiss all of the State Law Claims accordingly.  *Jackson v. Red Hills Oral & Facial Surgery PA*, 2019 WL 13290748,

at *1 (N.D. Fla. July 26, 2019) (quoting *Kissi v. Panzer*, 664 F.Supp.2d 120, 123 (D.D.C. 2009)).

### E.     The State Law Claims Fail to State a Claim

President Trump's opposition reaffirms fatal flaws in his FDUTPA claim. Agreeing that "the statute applies only to commercial speech"—*i.e.*, "expression related solely to the economic interests of the speaker and its audience"—President Trump brands the Work "nothing short of commercial." Opp. 46. This conflicts with established Supreme Court precedent. The Supreme Court has repeatedly found that books are expressive content covered by the First Amendment, not commercial speech. *See Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790 (2011) (statute governing commercial actions not applicable to books); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63 (1989) (rejecting pretrial seizure of films, "books or any other expressive materials."). Indeed, President Trump himself argues that "the Interviews are replete with creative expression." Opp. 18; *see, e.g.*, *id.* at 32-33 ("The Interviews were not information or functional, but rather a creative work."). Plaintiff cannot argue that the Work is expressive to advance some arguments and that it is entirely commercial to advance others.

Moreover, President Trump's unsupported assertion that he has "no obligation to identify...an 'actual consumer'" in his pleadings does not change the

outcome required by the cases Defendants (and Plaintiff) cite granting motions to dismiss FDUPTA claims for such a failure.  *See* MTD 40; Opp. 47.

President Trump fares no better with breach of contract.  He does not dispute that the statute of frauds applies, but draws an illusory distinction between "allowances" and "prohibitions" to argue that Woodward could complete performance within one year.  Opp. 44.  This semantic contrast is not supported by authority and does not override caselaw holding that the statute of frauds barred enforcement of an analogous limitation against certain uses of copyrighted material because "it cannot be performed within one year.…"  *Meyers v. Waverly Fabrics*, 65 N.Y.2d 75, 79 (1985).  President Trump also fails to address any of Defendants' arguments that his contract claims are inherently implausible.  MTD 36-38.

Finally, President Trump confirms that his promissory estoppel and breach of covenant of good faith and fair dealing rise and fall with his doomed contract claim.  *Senter v. JP Morgan Chase Bank, N.A.*, 810 F.Supp.2d 1339, 1362 (S.D. Fla. 2011) (dismissing covenant of good faith and fair dealing claim for failure "to allege a valid contract").

### F.    Paramount Is Not a Proper Party

President Trump fails to satisfy his burden of identifying a "substantial and continuing connection" between the infringement he alleges and Paramount. *Howard Johnson Co. v. Khimani*, 892 F.2d 1512, 1518 (11th Cir. 1990).  As

President Trump tacitly concedes, that Paramount is S&S's corporate parent does not suffice.  MTD 42.  Moving the goalposts yet again, President Trump misleadingly cites one out-of-state case to suggest that establishing "day-to-day control" of S&S is enough.  Opp. 48 (quoting *Bennett v. Am. Online, Inc.*, 2007 WL 2178317, at *6 (E.D. Mich. July 27, 2007)).  But he has not alleged a single fact to support this bare-boned contention, precluding any reliance on *Bennett*. MTD 41-42.  At most, President Trump alleged that a parent-subsidiary relationship exists between the two entities, but that is categorically insufficient to demonstrate a "substantial and continuing connection" with the specific conduct alleged against S&S and Woodward.

## CONCLUSION

Defendants respectfully request that this Court transfer or dismiss the Amended Complaint with prejudice and award such other relief deemed just and proper.

Dated:  July 19, 2023

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara (NYBN 1930643)
Linda J. Steinman (NYBN 2137305)
John M. Browning (NYBN 5213038)
Leena M. Charlton (NYBN 5622147)
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
       lindasteinman@dwt.com
       jackbrowning@dwt.com
       leenacharlton@dwt.com

**GUNSTER, YOAKLEY & STEWART, P.A.**

Kenneth B. Bell (FBN 347035)
Lauren V. Purdy (FBN 93943)
Derek K. Mountford (FBN127172)
One Independent Dr., Suite 2300
Jacksonville, FL 32202
Phone: (904) 354-1980
Email: kbell@gunster.com
        lpurdy@gunster.com
        dmountford@gunster.com

*Attorneys for Robert Woodward,
Simon & Schuster, Inc. and
Paramount Global*

**WILLIAMS & CONNOLLY\***

Kevin T. Baine (DCBN 438394)
Thomas G. Hentoff (DCBN 128600)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5804
Email: kbaine@wc.com
        thentoff@wc.com

*\*Of counsel to Robert Woodward*

22

## CERTIFICATION OF WORD COUNT

I hereby certify that this Memorandum of Law in Support of Defendants Rule 12(b)(6) Motion to Dismiss complies with this Court's order granting permission to file a reply brief not to exceed 4,500 words.  Dkt. 46.

According to the word-processing system used to prepare this Motion to Dismiss or, in the Alternative, to Transfer for Improper Venue, the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 4,491 words.

Dated: July 19, 2023                                             */s/ Elizabeth A. McNamara*
                                                                                  Elizabeth A. McNamara

## CERTIFICATE OF SERVICE

I hereby certify that on July19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. McNamara*
Attorney
