# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

PRESIDENT DONALD J. TRUMP,
45th President of the United States of
America, in his individual capacity,
    Plaintiff

v.                                          Case No: 3:23cv2333-
                                                MCR/ZCB

SIMON & SCHUSTER, INC.;
ROBERT WOODWARD p.k.a
BOB WOODWARD; and
PARAMOUNT GLOBAL,
    Defendants.
_____/

## **ORDER**

The Plaintiff, former President Donald J. Trump, filed this case against

journalist Robert Woodward (professionally known as Bob Woodward); book

publisher Simon & Shuster, Inc. (SSI); and SSI's parent company Paramount

Global (Paramount) (together, the Defendants), alleging the "systematic

usurpation, manipulation, and exploitation" of a series of recorded interviews

then-President Trump gave to Mr. Woodward between December 2019 and

August 2020.  *See* First Amended Complaint (ECF No. 32)  at p.2 & ¶ 37. The

Defendants have filed two motions which are now pending.  First, they seek

dismissal or transfer of the case for improper venue pursuant to 28 U.S.C.

§ 1406(a) and Fed. R. Civ. P. 12(b)(3); or, in the alternative, transfer of venue to

a more convenient forum pursuant to 28 U.S.C. § 1404(a) (ECF No. 37) (Def. Mot.).  They also request dismissal for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) (ECF No. 38).  Mr. Trump has responded in opposition (ECF Nos. 43 & 44).  For the reasons set forth below, the first motion will be granted to the extent it seeks a transfer of venue, which in turn  "obviate[s] the need" to reach the second motion.  *See Baker v. Major League Baseball Properties, Inc.*, 2009 WL 1098482, at *1 n.1 (N.D. Fla. Apr. 22, 2009); *see also, e.g., Keitt v. Thor Motor Coach, Inc.*, 2019 WL 13249018, at *2 n.1 (M.D. Fla. Dec. 20, 2019) ("Having determined that this case is subject to transfer, the Court declines to reach the merits of Defendant's arguments under Federal Rule of Civil Procedure 12(b)(6).   The transferee court is the appropriate court to address these arguments[.]") (internal citation omitted).

## I.    Background

The pertinent facts can be stated briefly.  These facts are taken from the First Amended Complaint, so they must be—and are—accepted as true at this stage of the case.   Certain uncontroverted facts are also taken from Mr. Woodward's sworn declaration attached to the motion to transfer (Woodward Dec.).

Mr. Trump, the 45th President of the United States, is a citizen and resident of the State of Florida.  FAC ¶ 1.  His home is at the Mar-a-Lago resort in Palm

Beach (which falls under the jurisdiction of the Southern District of Florida), and he brings this action in his individual capacity. *Id.* ¶¶ 1, 37.

Bob Woodward is a veteran investigative journalist and an associate editor of *The Washington Post*. FAC ¶ 13; Woodward Dec. ¶ 2. He resides and works in Washington, D.C. FAC ¶ 4; Woodward Dec. ¶ 2. Mr. Woodward has authored at least twenty-one (21) books, fifteen (15) of which have been national bestsellers. FAC ¶ 13; Woodward Dec. ¶ 2. His books have all been published by SSI, a book publisher headquartered in New York City. Woodward Dec. ¶ 4; FAC ¶ 2. SSI is a subsidiary of Paramount, an international media and entertainment company also headquartered in New York City. FAC ¶¶ 2, 5. The Defendants have had multiple contacts with Florida by virtue of marketing, selling, and distributing Mr. Woodward's books in the state, including in this district. *See id.* ¶¶ 11-23.

Mr. Woodward has written books about every United States president since Richard Nixon (*All the President's Men*), and he has interviewed a number of presidents—including Presidents Jimmy Carter, Bill Clinton, George W. Bush, and Barack Obama—in the Oval Office. Woodward Dec. ¶ 2. More recently, Mr. Woodward covered the Trump Administration and authored three books based on his reporting: *Fear: Trump in the White House*; *Peril*; and *Rage.* Woodward Dec. ¶ 3.

While writing *Rage*, Mr. Woodward interviewed then-President Trump on 19 occasions between December 2019 and August 2020 (the Interviews), and he recorded each one. *Id.* ¶ 6; FAC ¶¶ 36-37. None of the Interviews was held in the Northern District of Florida. FAC ¶ 37. Three of the Interviews took place in person in late 2019—two at the White House and one at Mar-a-Lago—while the other sixteen were conducted via telephone during the COVID-19 pandemic. FAC ¶ 37; Woodward Dec. ¶¶ 8-13. For each of the telephone Interviews, Mr. Woodward was either at his home or office in Washington, D.C., and President Trump was at the White House (except for a single call during which he was aboard Air Force One). Woodward Dec. ¶¶ 8-13.

The First Amended Complaint alleges that Mr. Woodward "repeatedly" told Mr. Trump that the recorded Interviews were for the "sole purpose" of *Rage*, FAC ¶ 36,[1] and therefore Mr. Trump did not consent to the use or release of the recordings for any other purpose, *id*. ¶ 43. Mr. Woodward (through SSI and Paramount) subsequently published the Interviews as a stand-alone work in the form of an audiobook titled *The Trump Tapes: The Historical Record* and in various derivative works, including a CD, audio download, paperback, and e-book (together, *The Trump Tapes*). *Id.* at p.3 & ¶ 39. The First Amended Complaint

---

[1] Woodward denies this allegation in his declaration. *See* Woodward Dec. ¶ 7. However, given that this dispute need not be decided in order to resolve the venue question, the Court accepts the allegation as true but only for this limited purpose. *See Myhra*, 695 F.3d at 1239.

further alleges that the Defendants not only published the Interviews without Mr. Trump's prior consent, but they "manipulated" the recordings themselves by taking "extensive and unacceptable liberties with the words actually spoken by President Trump" to alter his language and "support the particular narrative desired by Woodward, SSI, and Paramount." *Id.* ¶¶ 58-60.

In creating and publishing *The Trump Tapes*, Mr. Woodward collaborated with his full-time assistant, SSI employees, independent contractors, and other individuals, all of whom were in either Washington, D.C. or New York. Woodward Dec. ¶¶ 5, 21-27. None of the work done on *The Trump Tapes* was carried out in the Northern District of Florida.

On January 30, 2023, Mr. Trump filed this action seeking "declaratory relief regarding ownership of copyrights" in *The Trump Tapes* (Count I), and asserting various other claims, to wit: Accounting (Count II); Unjust Enrichment (Count III-V); Promissory Estoppel (Count VI); Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count VII); Breach of Contract (Count VIII); and Breach of the Covenant of Good Faith and Fair Dealing (Count IX).

## II.    Discussion

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be

in the interest of justice, transfer such case to any district or division in which it could have been brought."   Rule 12(b)(3) similarly provides that a party may move to dismiss a case for "improper venue."   Therefore, Section 1406(a) and Rule 12(b)(3) together authorize dismissal or transfer of a case "when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 55 (2013).   Although both the statute and rule authorize a district court to dismiss a case for lack of venue, "'the interest of justice generally favors transferring a case to an appropriate forum'" rather than outright dismissing the case. *Whitfield v. Southern-Owners Ins. Co.*, 2020 WL 6938439, at *1 (N.D. Fla. Aug. 27, 2020) (citation omitted).   Ultimately, the decision to transfer a case pursuant to Section 1406(a) "is left to the sound discretion of the district court." *Pinson v. Rumsfeld*, 192 Fed. App'x 811, 817 (11th Cir. 2006) (citation omitted).

In response to a venue challenge, the plaintiff has the burden to show that venue in his chosen forum is proper.   *Hamel-Schwulst v. Negrotto*, 2010 WL 548318, at *5 (N.D. Fla. Feb. 11, 2010) (citation omitted).   In this context, a court must accept the facts in the plaintiff's complaint as true, as long as the facts are not controverted by defense affidavits. *Id*. The Eleventh Circuit has described the standard of review as follows:

> [A]lthough we take the facts of the complaint as true,
> we do so only to the extent they are uncontroverted by

> defendant's affidavits.  When the parties submit conflicting affidavits, the court, in the absence of an evidentiary hearing, is inclined to give greater weight to the plaintiff's version of the jurisdictional facts and to construe such facts in the light most favorable to the plaintiff.  In sum, Rule 12(b)(3) is a somewhat unique context of dismissal in which we consciously look beyond the mere allegations of a complaint, and, although we continue to favor the plaintiff's facts in the context of any actual evidentiary dispute, we do not view the allegations of the complaint as the exclusive basis for decision.

*Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 695 F.3d 1233, 1239 (11th Cir. 2012) (internal citations, quotation marks, brackets omitted), *superseded by statute on other grounds as stated in Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1364 n.2 (11th Cir. 2018).

"Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws[.]" *Atlantic Marine Const. Co., Inc.*, 571 U.S. at 55.  In arguing that venue is proper in this district, Mr. Trump relies on Section 1400(a) (special venue statute for copyrights) and Section 1391(b) (general venue statute).  FAC ¶ 24. Each is addressed in turn.

Section 1400(a) provides that:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

"A defendant 'may be found' in a district in which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). Mr. Trump alleges that the Defendants "may be found" in the Northern District of Florida—as they could be served with process here and personal jurisdiction can be asserted over them due to their contacts with this forum in marketing, selling, and distributing Mr. Woodward's various books, including *The Trump Tapes*—and thus venue is proper in the Northern District of Florida under the special copyright statute in Section 1400(a). The Court disagrees.

Numerous courts have determined that the special venue statute in Section 1400(a) does not apply to copyright cases seeking declaratory relief; instead, the general venue statute in Section 1391(b) (discussed further *infra*) applies in this context. *See, e.g., Finch v. Weigh Down Workshop Ministries, Inc.*, 2019 WL 1243729, at *2 (E.D. Va. Mar. 18, 2019) ("Venue in copyright cases is usually governed by 28 U.S.C. § 1400. However, because this is a declaratory judgment action, the general venue statute applies."); *Third Party Verification, Inc. v. SIGNATURELINKE, Inc.*, 2006 WL 8448725, at *2 n.1 (M.D. Fla. June 20, 2006) ("Generally § 1400(a) determines venue for civil cases relating to copyrights. However, case law in other circuits suggests venue for a declaratory judgment action involving copyright invalidity is governed by the general venue statute, 28

U.S.C. § 1391.") (citing cases); *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 946-47 (E.D.N.Y. 1994) ("Because this is a declaratory judgment action involving patent and copyright infringement, venue is governed by the general venue statute, 28 U.S.C. § 1391, rather than the specific venue statute for infringement actions, 28 U.S.C. § 1400.") (citing *Database America, Inc. v. Bellsouth Advert. & Publ'g Corp.*, 825 F. Supp. 1216, 1223 n.13 (D.N.J. 1993) ("Venue in a declaratory judgment action for patent or copyright infringement is governed by the general venue statute at 28 U.S.C. § 1391(b), rather than by the specific venue statute for infringement actions at 28 U.S.C. § 1400[.]") (collecting additional cases)). Mr. Trump cites *Nu Image, Inc. v. Doe* for the assertion that the copyright venue statute applies for declaratory relief for copyright ownership, *see* ECF No. 43 at 10 (citing *Nu Image, Inc. v. Doe*, 799 F. Supp.2d 34, 43 (D. D.C. 2011)); however, his reliance on this case is misplaced because *Nu Image, Inc.* is a copyright *infringement* case, not a copyright ownership case seeking declaratory relief. *See* 799 F. Supp. 2d at 36. In short, Mr. Trump failed to cite and the Court has not found a case applying the copyright venue statute in an analogous case seeking declaratory relief for copyright ownership.

Mr. Trump's sole copyright claim in the First Amended Complaint (Count I) seeks *declaratory relief* regarding ownership of the copyrights in *The Trump*

*Tapes* as opposed to relief for copyright infringement.  *See* FAC ¶¶ 65-72.[2]  As a

result, the special venue statute in Section 1400(a) does not apply, and instead Mr.

Trump must satisfy the general venue statute in Section 1391(b) for venue to be

proper in this district.

Section 1391(b) provides that:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"When venue is challenged, the court must determine whether the case falls

within one of the three categories set out in § 1391(b).  If it does, venue is proper;

if it does not, venue is improper, and the case must be dismissed or transferred[.]"

*Atlantic Marine Const. Co., Inc.,* 571 U.S. at 56.  Subsections (1) and (3) plainly

---

[2] In his response, Mr. Trump tries to recharacterize his declaratory judgment claim as a copyright infringement claim due to a newly filed copyright application with the United States Copyright Office. ECF No. 43 at 6–7; ECF No. 43-1 at ¶¶16–17. This is not persuasive because Mr. Trump's declaration cannot amend the controlling complaint, which says nothing about infringement.

do not apply in this case, and Mr. Trump does not contend otherwise.  *See* FAC ¶ 24 (limiting his venue claim to Section 1391(b)(2), with no mention of the other two subsections).[3]  Therefore, the Court will limit its analysis of the general venue statute to subsection (2).

For venue to be proper under Section 1391(b)(2), "a substantial part of the events or omissions giving rise to the claim" must have occurred here in the Northern District of Florida.  In this case, it is undisputed that *none* of the relevant events—let alone "a substantial part" of them—occurred in this district.  This case centers on the alleged "systematic usurpation, manipulation, and exploitation of" the recorded Interviews, *see* FAC at p.2, but neither the Interviews nor the alleged manipulation of the recordings took place here, and Mr. Trump does not allege that any of the parties or participants were present in this district during any relevant time.  Mr. Trump focuses heavily on the fact that the Defendants have ties and connections to this district because Mr. Woodward is a national best-selling author and they have marketed and sold his books in this district (as they have elsewhere).  While this may be true, it is not enough to satisfy Section 1391(b)(2).  In analyzing the "events or omissions" for Section 1391 purposes,

---

[3] None of the Defendants reside in this judicial district, thus rendering Section 1391(b)(1) inapplicable.  Regarding Section 1391(b)(3), it is a "fallback" provision that will come into play only if—as quoted in the text—there is "no district" anywhere in the country where the case could have been filed.  *See* Wright & Miller, *Federal Practice & Procedure*, § 3806.1 (4th ed.).  Obviously, "such cases are rare," *id.*, and this is not one of them, as the case could have been filed in the District of Columbia or the Southern District of New York.

only the Defendants' activities "*that directly give rise to a claim are relevant*,"
and "of the places where the events have taken place, *only those locations hosting
a 'substantial part' of the events are to be considered.*"   *Robey v. JP Morgan
Chase Bank N.A.*, 343 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (emphasis added)
(quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).
"Also, when considering where the events giving rise to the claim occurred, . . .
there must be a substantial connection to the kind of events giving rise to the
claim—that is, 'a close nexus to the wrong' alleged—not merely insubstantial
"minimum contacts" with the venue." *Mt. Hawley Ins. Co. v. Adams Homes LLC*,
2014 WL 12538169, at *2 (N.D. Fla. Jan. 10, 2014) (quoting *Jenkins Brick Co.*,
321 F.3d at 1372). Therefore, venue is not proper in this district pursuant to
Section 1391(b)(2).

Accordingly, the Northern District of Florida is an improper venue under
Section 1391(b) because none of the Defendants reside in this district, a
substantial part of the events giving rise to Mr. Trump's claims did not occur in
this district, and other viable districts exist in which Trump could have properly
filed his claims, such as the United States District Court for the Southern District
of New York where two Defendants reside and many relevant decisions regarding
*The Trump Tapes* were made. Since venue is improper under Section 1391(b), the
Court has the power to dismiss or transfer the case pursuant to Section 1406(a)

and Rule 12(b)(3). The Court finds that "interests of justice" favor transfer to the United States District Court for the Southern District of New York rather than dismissal. *See* 28 U.S.C. §1406(a); *see also Whitfield*, 2020 WL 6938439 at *1.

Notwithstanding, even if venue is not "wrong" or "improper"—and thus the case is not subject to dismissal or transfer under Section 1406(a) and/or Rule 12(b)(3))—the Court may still transfer the case to another venue in its discretion pursuant to Section 1404(a) if this district is an inconvenient forum for the parties and witnesses. *State v. United States*, 2022 WL 2431443, at *2 (N.D. Fla. Jan. 18, 2022) ("Although venue is proper in [the] Pensacola Division, the Court has the authority to transfer the case [under Section 1404(a)]."). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" An action "might have been brought" in the proposed transferee court if (1) the court had jurisdiction over the subject matter of the case; (2) venue is proper there; and (3) the defendant is amenable to process issued out of the transferee court. *Carucel Inv., LP v. Novatel Wireless, Inc.,* 157 F. Supp. 3d 1219, 1223 n.4 (S.D. Fla. 2016) (citation omitted).

"'In substance, § 1404 is the statutory enactment of the doctrine of forum *non conveniens* tempered to allow transfer rather than dismissal. By contrast, § 1406 operates in cases where the first forum chosen is improper in the sense that

the litigation may not proceed there.'" *Gulf Power Co. v. Coalsales II, LLC*, 2008

WL 563484, at *6 n.17 (N.D. Fla. Feb. 27, 2008) (quoting *Dubin v. United States*,

380 F.2d 813, 816 (5th Cir. 1967)).  Put simply, "28 U.S.C. § 1406(a) . . . governs

actions filed in an improper venue, as opposed to § 1404(a), which governs actions

filed in permissible yet inconvenient venue." *Ford v. Supreme Court of Fla.*, 2006

WL 1382075, *6 n.15 (M.D. Fla. May 18, 2006).

In  determining  whether  a  venue  is  "permissible  yet  inconvenient"  for

purposes of Section 1404(a), courts will generally consider the following nine

factors:

> (1) the convenience of the witnesses; (2) the location of
> relevant documents and the relative ease of access to
> sources of proof; (3) the convenience of the parties; (4)
> the  locus  of  operative  facts;  (5)  the  availability  of
> process  to  compel  the  attendance  of  unwilling
> witnesses; (6) the relative means of the parties; (7) a
> forum's  familiarity  with  the  governing  law;  (8)  the
> weight  accorded  a  plaintiff's  choice  of  forum;  and  (9)
> trial efficiency and the interests of justice, based on the
> totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005); *see also,*

*e.g.*, *Harvard v. Inch*, 408 F. Supp. 3d 1255, 1262 (N.D. Fla. 2019) (same).  The

moving party has the burden to show that these factors warrant transfer. *Optimum*

*Nutrition, Inc. v. Schiff Nutrition Group, Inc.,* 2006 WL 8432460, at *8 (S.D. Fla.

May 30, 2006).

Courts have broad discretion in applying Section 1404(a). *In re World Wide Med. Tech. LLC.*, 2012 WL 1252423, at *1 (N.D. Fla. Apr. 13, 2012); *see also, e.g., Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 31 (1988) ("§ 1404(a) accords broad discretion to district court" and "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'") (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955), and *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) ("Trial judges are permitted a broad discretion in weighing the conflicting arguments as to venue [under Section 1404(a)]."); *Puliga v. Southern Guar. Ins. Co.*, 2006 WL 8432534, at *3 (S.D. Fla. June 26, 2006) ("Section 1404(a) places considerable discretion in the district court to adjudicate motions for transfer[.]").

Defendants argue that under 1404(a) transfer to the District of Columbia or the Southern District of New York would be justified under Section because either forum is more convenient for the parties and witnesses than this forum. Because this case "might have been brought" in either district for purposes of Section 1404(a), the Court will proceed to consider the nine factors set forth *supra*.

### (1) Convenience of the witnesses

"'The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses.'" *Trans Am Worldwide LLC v. JP Superior Solutions, LLC*, 2018 WL 3090394, at *8 (N.D. Fla. Apr. 30, 2018) (citation omitted). This factor pertains to the convenience of "key, non-party witnesses . . . as the Court presumes that the parties and their employees will be willing to travel, if necessary, to testify at trial." *Hexcel Corp. v. Ineos Polymers, Inc.*, 2009 WL 10665434, at *4 (N.D. Ga. July 21, 2009) (citing cases); *see also Trinity Christian Center of Santa Ana, Inc. v. New Frontier Media*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("This factor, which pertains to the convenience of non-party witnesses, is an important consideration in determining whether a transfer should be granted.").

Insofar as the Court can tell on the record as currently developed, no witnesses at all (let alone "key witnesses") reside in the Northern District of Florida. This factor thus weighs in favor of transfer to either Washington, D.C. or New York, as it would appear that all the potential non-party witnesses would be located in one of those two venues, and it would be inconvenient to require them to come here for discovery and/or trial.

### (2) Location of relevant documents and the relative ease of access to sources of proof

"Since the advent of electronic discovery, 'most courts have recognized that the physical location of relevant documents is no longer a significant factor in the transfer inquiry.'" *Harvard*, 408 F. Supp. 3d at 1264 (quoting *Trans Am Worldwide LLC*, 2018 WL 3090394, at *9).  Consequently, this is a neutral factor.

### (3) Convenience of the parties

Again, Mr. Trump resides in Palm Beach, Florida (in the Southern District of Florida); Mr. Woodward resides in Washington, D.C. (in the District of Columbia); and SSI and Paramount are both headquartered in New York (in the Southern District of New York).  Because the Northern District of Florida has no relationship to—and thus would not appear to be a convenient forum for—any of the parties involved in this case, this factor favors a transfer.

### (4) Locus of operative facts

The locus of operative facts underlying a claim is a "key factor" in deciding a motion to transfer venue.  *National Trust Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016).  "In determining the locus of operative facts, the court must look at 'the site of events from which the claim arises.'"  *Id.* (citation omitted).  This factor favors transfer because unquestionably "the site of events" that gave rise to this action was either Washington, D.C. (where the majority of the Interviews were held) or New York

Case No. 3:23cv2333-MCR/ZCB

(where, *inter alia*, the recordings were allegedly manipulated) and Mr. Trump does not argue otherwise.

> **(5) Availability of process to compel the attendance of unwilling witnesses**

This factor also weighs in favor of transfer.  Under the Federal Rules of Civil Procedure, courts may be required to quash any subpoena that requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person.  Fed. R. Civ. P. 45(c)(3)(A)(ii).  Once again, on the record as developed, it would not appear there are any witnesses located within 100 miles of this district.  It seems likely that most, if not all, of the potential witnesses would be in either Washington, D.C. or New York.

> **(6) Relative means of the parties**

This factor is neutral, as there does not appear to be an appreciable difference in the financial means of the parties and their abilities to conduct this litigation.  The Defendants persuasively argue that "President Trump, a non-resident who describes himself as a billionaire, deliberately sued in a venue with no connection to this case.  If he is able to litigate his claims here, 600 miles from Mar-a-Lago, he is clearly capable of litigating his claims in the District of Columbia or Southern District of New York."  Def. Mot. at 18-19 (citations omitted).  The Court readily agrees, particularly given that, he currently owns

property and is involved in active litigation in both of those venues already, as the motion further points out. *Id.* at 19.

### (7) Weight accorded a plaintiff's choice of forum

A plaintiff's choice of forum is usually given great weight. *See, e.g., Kostelac v. Allianz Global Corporate & Specialty AG*, 517 F. Appx. 670, 673 (11th Cir. 2013) (noting "the strong presumption in favor of the plaintiff's choice of forum"); *King v. Cessna Aircraft*, 562 F.3d 1374, 1381 (11th Cir. 2009) ("'the plaintiff's choice of forum should rarely be disturbed'") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *Robinson v. Giamarco & Bill, P.C.,* 74 F.3d 253, 260 (11th Cir. 1996) (stating "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations").  Importantly, however, "[t]he weight accorded plaintiff's choice of forum is diminished substantially . . . when the forum is neither plaintiff's home district nor the place where the majority of the operative events or transactions underlying the action occurred." *Hexcel Corp.*, 2009 WL 10665434, at *3; *accord EasyWeb Innovations LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348-49 (E.D.N.Y. 2012) ("Where the selected forum is not connected in a meaningful way to the operative facts and is not the plaintiff's residence, the deference to the chosen forum is significantly diminished.") (citing multiple cases).  Consequently, Mr. Trump's

choice of forum in the Northern District of Florida (which is neither his home district nor where the operative events occurred) is given very little weight.[4]

### (8) Forum's familiarity with the governing law

"The forum's familiarity with the governing law 'is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.'" *Trans Am Worldwide LLC*, 2018 WL 3090394, at *10 (citation omitted).  It does not appear that this case will involve any complex issues of foreign law and, to the extent that Florida law will govern certain of the causes of action (*e.g.,* the FDUTPA claim), "district courts often have little trouble applying the law of other states." *Id.* (citing *Mirasco, Inc. v. Ghaly*, 2017 WL 4890540, at *4 (N.D. Ga. May 30, 2017) ("[T]o the extent that Georgia substantive law applies, both Georgia and California district courts are

---

[4] In fact, "'[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, *and transfer of venue is appropriate.*'"  *Hexcel Corp.,* 2009 WL 10665434, at *3 (citation omitted).  Although the Court doesn't find it necessary to expressly hold that Mr. Trump *was* forum shopping, the fact that he chose to bring suit in a district without any connection to the action and hundreds of miles  from Mar-a-Lago (despite that one of the in-person Interviews was conducted there) strongly suggests forum shopping.  To be sure, it is worth pointing out—as the Defendants have, ECF No. 27 at 6 n.3—that Mr. Trump had previously filed various litigations in his home district; i.e. the Southern District of Florida, but by order dated January 19, 2023, Judge Middlebrooks of that court sanctioned him and his lawyers $937,989.39 for filing a frivolous case. *Trump v. Clinton*, 2023 WL 333699, at *4 (S.D. Fla. Jan. 19, 2023) ("Here, we are confronted with a lawsuit that should never have been filed, which was completely frivolous, both factually and legally, and which was brought in bad faith for an improper purpose.  Mr. Trump is a prolific and sophisticated litigant who is repeatedly using the courts to seek revenge on political adversaries.").  Mr. Trump filed the instant case in this district only a few days after the sanctions order was entered in his home jurisdiction.

Case No. 3:23cv2333-MCR/ZCB

capable of applying such law."); *Everlast World's Boxing Headquarters v. Ringside, Inc.*, 928 F. Supp. 2d 735, 747 (S.D.N.Y. 2013) ("[Plaintiff] has not argued, nor could it persuasively, that this case turns on nuanced issues of New York state law that this Court is materially more qualified to apply than a Kansas court would be.")).  This factor is neutral.

### (9) Trial efficiency and the interests of justice, based on the totality of the circumstances

Lastly, the Court evaluates "those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"  *Stewart Org., Inc.,* 487 U.S. at 30 (citation omitted).  "Courts often consider such things as the relative interests of the two forum states in the litigation, relative hardship of the parties, and questions of judicial economy."  *Suomen Colorize Oy v. DISH Network LLC*, 801 F. Supp. 2d 1334, 1339 (M.D. Fla. 2011).  "[T]his factor addresses all other problems that make trial of the case easy, expeditious, and inexpensive," *Thursday LLC v. Klhip Inc.*, 2018 WL 4574877, at *5 (M.D. Fla. July 11, 2018), and "'if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.'"  *Id.*  (quoting *In re Hoffman–La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

Although Florida, New York, and Washington, D.C., each has a valid interest in providing a forum to protect the rights of their residents and citizens,

as stated multiple times now, none of the pertinent events occurred in the Northern District of Florida, and none of the parties and relevant witnesses are located here. This factor weighs in favor of transfer. *See, e.g., Endotach LLC v. Cook Medical Inc.*, 2012 WL 12870252, at *5 (N.D. Fla. Nov. 7, 2012) ("Considering that [defendant] is located in Indiana, the state of Indiana plainly has a valid interest in providing a forum to adjudicate the claims at issue in this case. The alleged activity giving rise to this case also occurred in Indiana, which strongly weighs in favor of transfer to that state."); *Techshell, Inc. v. Incase Designs Corp.*, 2011 WL 13118039, at *5 (N.D. Fla. Sept. 7, 2011) ("There is no apparent trial efficiency advantage to trying the case in one forum over the other in this case. Both states have a valid interest in providing a forum to protect the patent rights of residents. However, since the accused activity giving rise to this case occurred in the Northern District of California, this [final] factor strongly weighs in favor of transfer.").

Each of the foregoing factors either weighs in favor of transfer or is neutral. None of the factors weigh in favor of keeping the action in the Northern District of Florida. The Court will thus exercise its broad and considerable discretion under Section 1404(a) and transfer this case to a more convenient forum.

## III.   Conclusion

For all the reasons set forth above, venue in this district is "wrong" and "improper" for purposes of Section 1406(a) and Rule 12(b)(3), so a transfer is required.  Even if venue is proper here under the statute and rule, transfer is also appropriate under Section 1404(a).

Consequently, the Defendants' motion to dismiss or to transfer venue (ECF No. 37) is **GRANTED,** to the extent that it seeks transfer.  The Clerk is directed to transfer this case to the United States District Court for the Southern District of New York as the Court concludes that district is the most appropriate and convenient forum for the parties and witnesses and the one with the strongest connection to the dispute.  The Defendants' separately-filed Rule 12(b)(6) motion to dismiss for failure to state a claim (ECF No. 38) will carry with the case for resolution by the transferee court.

**DONE** and **ORDERED** this 4th day of August 2023.

*M. Casey Rodgers* /

M. Casey Rodgers
United States District Judge