Exhibit C
part 1

# 20-3977-cv(L), 20-3978-cv(CON)

# United States Court of Appeals

*for the*

# Second Circuit

E. JEAN CARROLL,

*Plaintiff-Appellee,*

— v. —

DONALD J. TRUMP, in his personal capacity,

*Defendant-Appellant,*

UNITED STATES OF AMERICA,

*Movant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR DEFENDANT-APPELLANT

MARC KASOWITZ
KASOWITZ BENSON TORRES LLP
*Attorneys for Defendant-Appellant*
1633 Broadway
New York, New York 10019
(212) 506-1700

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ...........................................................................1

ISSUES PRESENTED FOR REVIEW ....................................................................2

     A.    Nature of Case and Procedural History..................................................3

     B.    Factual Background.................................................................................3

SUMMARY OF ARGUMENT ................................................................................5

     A.    The Westfall Act Applies to the President .............................................5

     B.    The President Acted Within the "Scope of Employment."....................8

ARGUMENT ........................................................................................................14

I.      STANDARD OF REVIEW......................................................................14

II.    THE WESTFALL ACT APPLIES TO THE PRESIDENT OF THE
      UNITED STATES....................................................................................15

     A.    The Expansive Definition of Employee Includes the President .........15

     B.    The Westfall Act's Failure to Exclude the President Establishes
          that the President is Included in the Definition...................................19

     C.    The Legislative History Makes Clear That Congress Intended to
          Include the President ...........................................................................23

     D.    The President is Part of the Executive Departments as That
          Term is Used in the Westfall Act........................................................23

     E.    The Administrative Requirements in the Westfall Act Do Not
          Preclude it From Applying to the President.......................................29

III.   THE PRESIDENT'S STATEMENTS AT THE WHITE HOUSE
      WERE MADE "WITHIN THE SCOPE OF HIS OFFICE OR
      EMPLOYMENT"...................................................................................32

A. The President's Statements to The Press At The White House Were Made "Within the Scope of His Office or Employment" .........32

    1. Speaking to the Press is "Of the Kind" a President is Employed to Perform. ...............................................36

    2. The Statements Were Substantially Within An Authorized Time and Place........................................38

    3. The Statements Were Actuated in Part by a Purpose to Serve the Master.........................................................39

B. The District Court's Complaints with Ballenger Are Unfounded ......43

C. The Master-Servant Test is Irrelevant But Satisfied ...........................47

    1. The Master-Servant Test is Irrelevant Here..............................47

    2. A Master-Servant Relationship Exists .....................................50

CONCLUSION .........................................................................................53

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Nat'l Sec. Agency,*
    925 F.3d 576 (2d Cir. 2019) ................................................................4

*Ali Jaber v. United States,*
    155 F. Supp. 3d 70 (D.D.C. 2016) .....................................................16

*Ali v. Rumsfeld,*
    649 F.3d 762 (D.C. Cir. 2011) ...........................................................37

*Azar v. Alina Health Servs.,*
    139 S. Ct. 1804 (2019)........................................................................46

*B & A Marine Co. v. Am. Foreign Shipping Co.,*
    23 F.3d 709 (2d Cir. 1994) ..........................................12, 30, 46, 49

*Barr v. Matteo,*
    360 U.S. 564 (1959).....................................................8, 34, 47

*Bello v. United States,*
    93 F. App'x 288 (2d Cir. 2004) .........................................................14

*Blair v. District of Columbia,*
    190 A.3d 212 (D.C. 2018) ..........................................40, 41, 42, 43

*Bowles v. United States,*
    685 F. App'x 21 (2d Cir. 2017) .............................................*passim*

*Bradley v. Nat'l Collegiate Athletic Ass'n,*
    249 F. Supp. 3d 149 (D.D.C. 2017)...................................................48

*Brown v. Argenbright Sec., Inc.,*
    782 A.2d 752 (D.C. 2001) .................................................................42

*Carroll v. Trump,*
    --- F. Supp. 3d ----, No. 20-CV-7311 (LAK), 2020 WL 6277814
    (S.D.N.Y. Oct. 27, 2020) ....................................................................3

*Chapman v. Rahall,*
    399 F. Supp. 2d 711 (W.D. Va. 2005)................................................................33

*Christopher v. SmithKline Beecham Corp.,*
    567 U.S. 142 (2012)..........................................................................................17, 18

*Clinton v. Jones,*
    520 U.S. 681 (1997)....................................................................................*passim*

*Conyers v Westphal,*
    235 F. Supp. 3d 72 (D.D.C 2017)...................................................................32

*Council on Am. Islamic Relations v. Ballenger,*
    444 F.3d 659 (D.C. Cir. 2006)..................................................................*passim*

*Davila v. United States,*
    247 F. Supp. 3d 650 (W.D. Pa. 2017)............................................................18

*District of Columbia v. Bamidele,*
    103 A.3d 516 (D.C. 2014) ..........................................................................41, 42

*Does 1-10 v. Haaland,*
    973 F.3d 591 (6th Cir. 2020) ...............................................................16, 33, 53

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.,*
    314 U.S. 95 (1941)..........................................................................................17, 20

*Franklin v. Massachusetts,*
    505 U.S. 788 (1992).................................................................................7, 21, 22

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
    561 U.S. 477 (2010).........................................................................................53

*Guadagni v. New York City Transit Auth.,*
    387 F. App'x 124 (2d Cir. 2010) ....................................................................14

*Gutierrez de Martinez v. Lamagno,*
    515 U.S. 417 (1994).....................................................................................18, 28

*Harbury v. Hayden,*
    522 F.3d 413 (D.C. Cir. 2008)................................................................10, 32, 44

*Hechinger Co. v. Johnson*,
761 A.2d 15 (D.C. 2000) ...................................................................45

*Hui v. Castaneda*,
559 U.S. 799 (2010) ........................................................................17

*Jacobs v. Vrobel*,
724 F.3d 217 (D.C. Cir. 2013) ................................................10, 32, 37

*Johnson v. Weinberg*,
434 A.2d 404 (D.C. 1981) .................................................................45

*Klayman v. Obama*,
125 F. Supp. 3d 67 (D.D.C. 2015) ......................................................16

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
928 F.3d 226 (2d Cir. 2019) .........................................................37, 39

*Levin v. United States*,
568 U.S. 503 (2013) ........................................................................17

*Littlejohn v. Obama*,
No. CA 7:14-812-JMC-KFM, 2014 WL 8266142 (D.S.C. Mar. 18,
2014) ...........................................................................................16

*Littlejohn v. South Carolina*,
No. CA6:100940RBHWMC, 2010 WL 1791419 (D.S.C. Apr. 16,
2010) ...........................................................................................31

*Littlejohn v. United States*,
No. CA 6:13-870-JMC-KFM, 2013 WL 1840050 (D.S.C. Apr. 9,
2013) ...........................................................................................15

*McNamara v. United States*,
199 F. Supp. 879 (D.D.C. 1961) ...............................................18, 24, 25

*Ex parte Milligan*,
71 U.S. (4 Wall.) 2 (1866) .................................................................53

*Nixon v. Fitzgerald*,
457 U.S. 731 (1982)...........................................................22, 23, 27, 39

*Operation Rescue Nat'l v. United States*,
147 F.3d 68 (1st Cir. 1998)........................................................16, 28, 54

*Osborn v. Haley*,
549 U.S. 225 (2007)..............................................................................2

*Palmer v. Flaggman*,
93 F.3d 196 (5th Cir. 1996) ...............................................................48

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*,
175 F.3d 132 (2d Cir. 1999)................................................................15

*Richards v. United States*,
369 U.S. 1 (1962)..............................................................................32

*Saleh v. Bush*,
848 F.3d 880 (9th Cir. 2017) ..............................................................16

*SAS Institute, Inc. v. Iancu*,
138 S. Ct. 1348 (2018)........................................................................16

*Smith v. Clinton*,
886 F.3d 122 (D.C. Cir. 2018)........................................................28, 36

*Sniado v. Bank Austria AG*,
378 F.3d 210 (2d Cir. 2004) ...............................................................15

*Sullivan v. United States*,
21 F.3d 198 (7th Cir. 1994) ...............................................................49

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018)........................................................................37

*Trump v. Mazars USA, LLP*,
140 S. Ct. 2019 (2020)...................................................................38, 45

*Trump v. Vance*,
140 S. Ct. 2412 (2020).............................................................11, 15, 39

*United States v. Hatter*,
532 U.S. 557 (2001)...........................................................................19

*United States v. LePatourel,*
    571 F. 2d 405 (8th Cir. 1978) .......................................................20, 21, 50, 54

*United States v. United States Fidelity and Guaranty Co.,*
    309 U.S. 506 (1940)................................................................................15

*Velez-Diaz v Vega-Irizarry,*
    421 F.3d 71 (1st Cir 2005)........................................................................2

*Weinberg v. Johnson,*
    518 A.2d 985 (D.C. 1986) .......................................................................42

*West v. Trump,*
    No. 3:19-CV-2522-K-BH, 2020 WL 4721291 (N.D. Tex. July 23,
    2020) ....................................................................................................16, 30

*Westfall v. Erwin,*
    484 U.S. 292 (1988)........................................................................26, 27, 31

*Williams v. United States,*
    71 F.3d 502 (5th Cir. 1995) ...............................................................33, 54

*Wilson v. Libby,*
    535 F.3d 697 (D.C. Cir. 2008)............................................................*passim*

*Wuterich v. Murtha,*
    562 F.3d 375 (D.C. Cir. 2009)............................................................*passim*

*Youngstown Sheet & Tube Co. v. Sawyer,*
    343 U.S. 579 (1952)...............................................................................6, 53

**Statutes**

3 U.S.C. § 102 ...........................................................................................19, 51

5 U.S.C. § 7322 ..............................................................................................21

28 U.S.C. § 451 ............................................................................................8, 24

28 U.S.C. § 516 ..............................................................................................29

28 U.S.C. § 519 ..............................................................................................29

28 U.S.C. § 1291 ..............................................................................................2

28 U.S.C. § 1346(b)(1)............................................................5, 16

28 U.S.C. § 2679............................................................5, 16, 29

28 U.S.C. § 2671...................................................................*passim*

28 U.S.C. § 2672.........................................................................29

28 U.S.C. § 2673.........................................................................30

28 U.S.C. § 2675....................................................................31, 49

28 U.S.C. § 2674...................................................................*passim*

28 U.S.C. § 2680....................................................................23, 46

42 U.S.C. § 410(a) .......................................................................19

Act of June 25, 1948, ch. 646, § 451, 62 Stat. 869, 907 ........................24

**Other Authorities**

H.R. Rep. 100-700 (June 14, 1988) ........................................6, 8, 23, 26

*Hearings on S. 2690 Before a Subcomm. of the Senate Comm. on the Judiciary*, 76th Cong., 3d Sess. 9 (1940) (memorandum to the Att'y Gen. from Special Ass't Alexander Holtzoff dated June 7, 1939) ...................................................................................24

Restatement (Second) of Agency...................................................*passim*

Restatement (Third) of Agency 6 (2006).........................................50, 51

U.S. Const. art. II, § 1 ...........................................................6, 19, 51

Defendant-appellant President Donald J. Trump respectfully submits this
memorandum of law in support of his appeal from the October 27, 2020 Opinion
and Order ("Order") (SPA-1)[1] of the United States District Court for the Southern
District of New York, the Honorable Lewis A. Kaplan, denying the United States'
motion, pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(2), to substitute the
United States as defendant in place of President Trump.[2]

## JURISDICTIONAL STATEMENT

Plaintiff-appellee E. Jean Carroll filed this action on November 4, 2019
against President Trump in New York State Supreme Court, New York County,
alleging that he defamed her in June 2019 when he denied, in a White House Press
Office statement and two responses to questions from the press, her accusation that
he had sexually assaulted her in a Bergdorf Goodman dressing area 24 years
earlier.

Pursuant to the Westfall Act, codified at 28 U.S.C. §§ 2671, 2674 and 2679,
the United States Department of Justice certified that President Trump "was acting
within the scope of his office as the President of the United States at the time of the
alleged conduct," and the United States removed the action to the District Court

---

[1] References to the Joint Appendix are to "JA-__" and to the Special Appendix are to "SPA-__."
Citations to "ECF" refer to the District Court docket.

[2] Pursuant to Fed. R. App. P. 28(i), President Trump joins in the opening brief of the United
States.

pursuant to Section 2679(d)(2), which is the basis for the District Court's subject-matter jurisdiction.

Also pursuant to Section 2679(d)(2), the United States moved in the District Court to substitute the United States for President Trump as the defendant.  (JA-19; JA-12).  On October 27, 2020, the District Court entered the Order denying the motion to substitute (SPA-1).

The Order is immediately appealable as a collateral order, and this Court has jurisdiction to review the Order pursuant to 28 U.S.C. § 1291.  *Osborn v. Haley*, 549 U.S. 225, 238 (2007).

On November 25, 2020, the United States and President Trump filed timely notices of appeal from the Order.  (JA-421; JA-423.)[3]

## ISSUES PRESENTED FOR REVIEW

1. Whether the President of the United States is an employee of the Government within the meaning of the Westfall Act.

2. Whether the President of the United States is acting within the scope of his or her office or employment within the meaning of the Westfall Act, when he or she communicates with the press.

---

[3] Both the United States and President Trump have standing to appeal.  *Velez-Diaz v Vega-Irizarry*, 421 F.3d 71, 75-76 (1st Cir 2005) (holding "the United States has standing to appeal the denial of Westfall Act substitution along with the individual defendants"); *see Bowles v. United States*, 685 F. App'x 21, 22 (2d Cir. 2017) (appeal taken by both the United States and employee defendant).

### A.    Nature of Case and Procedural History.

Ms. Carroll commenced this action in New York State Supreme Court, New York County, asserting a single claim for defamation against President Trump, allegedly arising out of his denials in June 2019 of her accusation that he sexually assaulted her in a Bergdorf Goodman dressing area 24 years earlier.  (JA-24.)

On September 8, 2020, the United States, pursuant to the Westfall Act, removed this action to the United States District Court for the Southern District of New York and filed a motion in that court to substitute the United States as defendant.  (JA-12; JA-19.)  On October 27, 2020, Judge Lewis A. Kaplan denied the motion to substitute, holding that, as a matter of law, the Westfall Act does not apply to the President of the United States and the alleged conduct was not within the President's scope of employment.  *Carroll v. Trump*, --- F. Supp. 3d ----, No. 20-CV-7311 (LAK), 2020 WL 6277814 (S.D.N.Y. Oct. 27, 2020).

This appeal and the United States' appeal followed.

### B.    Factual Background.

Ms. Carroll's defamation claim arises out of three statements in June 2019 denying her accusation that the President had assaulted her:

 (1) A statement emailed by the Deputy White House Press Secretary to the press denied the accusation, compared it to accusations against Supreme Court Justice Kavanaugh, commented that false accusations "diminish the severity of real

assault," and solicited "information that the Democratic Party was working with Ms. Carroll or New York Magazine." (JA-78 ¶ 82; JA-403.) The statement was published by the Office of the Federal Register, National Archives and Records Administration, in its Compilation of Presidential Documents under "Budget and Presidential Materials."[4]

(2) In responding to reporters' wide-ranging questions while on the South Lawn of the White House on his way to the Presidential Helicopter, Marine One, including questions concerning the economy, foreign affairs, potential reactions to Iran's targeting a U.S. drone, immigration issues and Ms. Carroll's accusation, the President denied the accusation, compared it to those against Justice Kavanaugh, and commented on the role of the media.[5]

(3) In responding to questions from reporters from *The Hill* during a 45-minute wide-ranging interview in the Oval Office concerning the Federal Reserve, the Supreme Court, taxes and trade, the presidential election campaign, the

---

[4] JA-327; JA-403 (citing *Statement on the Assault Allegation by E. Jean Carroll*, Daily Comp. Pres. Docs., 2019 DCPD No. 00410 (June 21, 2019), https://www.govinfo.gov/app/details/DCPD-201900410.) This Court may take judicial notice of government publications. *See ACLU v. Nat'l Sec. Agency*, 925 F.3d 576, 599 n.126 (2d Cir. 2019) ("[T]he Government's . . . public statements are precisely the sort of materials of which we may take judicial notice.").

[5] JA-80-81 ¶ 91; JA-81 n.11 (citing *Remarks by President Donald Trump Before Marine One Departure*, WHITE HOUSE (June 22, 2019)); *Remarks in an Exchange With Reporters Prior to Departure for Camp David, Maryland*, Daily Comp. Pres. Docs., 2019 DCPD No. 00414 (June 22, 2019), https://www.govinfo.gov/content/pkg/DCPD-201900414/pdf/DCPD-201900414.pdf, at 3-4. *See ACLU*, 925 F.3d at 599 n.126.

President's authority to take military action against Iran and Ms. Carroll's accusation, the President denied the accusation.[6]

## SUMMARY OF ARGUMENT

### A.     The Westfall Act Applies to the President.

Until this case, it had not been doubted that the Westfall Act -- which provides all federal employees with immunity from state tort law claims arising from conduct within the scope of their employment -- applies to the President.  The Act has been applied by federal courts to the President at least five times -- in a case against President Clinton, a case against President George W. Bush, three cases against President Obama and, not counting this case, a case against President Trump.

The District Court's erroneous holding below that the Westfall Act does not apply to the President is contrary not only to the established understanding evidenced by those and other cases, but it is contrary to the plain language of the Westfall Act, which by its terms applies to "any employee of the Government," 28 U.S.C. §§ 1346(b)(1), 2679(b).

---

[6] JA-42 n.13 (citing Jordan Fabian & Saagar Enjeti, *EXCLUSIVE: Trump Vehemently Denies E. Jean Carroll Allegation, Says "She's Not My Type"*, HILL (June 24, 2019)); *see also* JA-329 (noting that "Trump discussed a range of topics, including the upcoming 2020 election as well as the possibility that President Barack Obama might endorse Vice President Biden in that race."); *READ: Trump's full exclusive interview with The Hill*, HILL (June 25, 2019), https://thehill.com/homenews/administration/450229-read-trumps-full-exclusive-interview-with-the-hill.

Presidents plainly are employees of the Government, and Congress plainly intended Presidents to be covered by the Westfall Act -- notwithstanding the District Court's strenuous but strained and unsuccessful effort to show otherwise here. The President's duties and responsibilities are set forth in and governed by and serve the purposes of Article II of the Constitution and Congressional statutes – that is, the Government. *See, e.g.*, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (President's powers derive "from an act of Congress or from the Constitution itself."). Under Article II, section 1, the President is the "President of the United States of America," holds an "Office" -- which could only be an Office of the Government -- and "receive[s] for his [or her] services, a Compensation" from the Government. U.S. Const. art. II, § 1. And, not surprisingly given these facts, both Congress and the Supreme Court have referred to the President as an employee of the Government.

And, that Congress intended to include the President under the Westfall Act is conclusively confirmed by the legislative history of Section 2674 of the Act, which allows the United States to assert as a defense any immunities or statutory defenses belonging to the employee for whom the United States substitutes as defendant -- as the legislative history puts it, "[t]he United States would also be able to continue to assert other functional immunities, "*such as Presidential . . . immunity*, recognized in the constitution and judicial decisions." H.R. Rep. No.

6

100-700, at 5 (1988) (emphasis added), *as reprinted in* 1988 U.S.C.C.A.N. 5945, 5948.  Congress enacted Section 2674 with the President specifically in mind, and it is therefore clear that Congress intended to include the President in the Westfall Act's protections.

The District Court nonetheless erroneously reasoned that the Westfall Act's failure to explicitly include the President evidences that Congress intended to exclude the President.  But as the Westfall Act itself and other statutes make clear, when Congress intends to exclude the President or anyone else, it *explicitly* excludes them.  Moreover, the Supreme Court has made clear that statutory silence should be read to afford the President, not exclude the President from, the protection of a statute.  *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992) ("Out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President" to review under the Administrative Procedures Act.).

Equally erroneous are the District Court's other justifications for its novel finding that the President is not an employee of the Government covered by the Westfall Act.  The District Court found support for its conclusion in its claim that the Westfall Act defines the term "employees of the Government" as "includ[ing] the executive departments," 28 U.S.C. § 2671, but not the "executive branch." (SPA-19-21.)  But the District Court's reading runs contrary to the governing

7

definition of "department" in 28 U.S.C. § 451 ("'*department*' means one of the executive departments…unless the context shows that such term was intended to describe the executive, legislative, or judicial *branches* of the government"), as well as statutory rules of construction established by the Supreme Court whereby what follows the term "including" is not an exclusive list and the legislative history showing that Congress repeatedly referred to the Westfall Act as applying to the "Executive Branch." It is plain that the use of the term "departments" was in no way an expression of a Congressional intent to exclude the President, but was a carry-over from the original enactment in 1946 of the FTCA, the statute the Westfall Act amended in 1988. *See, e.g.*, H.R. Rep. No. 100-700, at 5.

## B. The President Acted Within the "Scope of Employment."

Until this case, the courts uniformly have held that speaking to the press is within the scope of employment of policy-making public officials. As the Supreme Court observed in *Barr v. Matteo*, 360 U.S. 564 (1959), which involved allegedly defamatory statements by an acting agency director, "[i]t would be an unduly restrictive view of the scope of the duties of a policymaking executive official to hold that that a public statement of agency policy in respect to matters of wide public interest and concern is not action in the line of duty." *Id.* at 575. *A fortiori*, it is within the "scope of duties of the President to make public statements on "matters of wide public interest and concern," and Ms. Carroll's accusation is

8

without question such a matter.  *See Clinton v. Jones,* 520 U.S. 681, 686 (1997) (President Clinton's agents' allegedly defamatory denials to the press of sexual harassment accusations against him were "arguably…within the outer perimeter of the President's official responsibilities."); *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 663 (D.C. Cir. 2006) (allegedly defamatory statements to the press were within the scope of Congressman's employment for Westfall Act purposes); *Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008) (extending *Ballenger* to executive branch officials).

As the *Ballenger* and *Libby* courts found, District of Columbia law compels this result.  In *Ballenger*, a Congressman was sued for allegedly defamatory statements during a telephone interview concerning his personal life.  The court, applying District of Columbia law, held that this conduct fell within the scope of his employment for purposes of the Westfall Act, noting that "[t]he appropriate question . . . is whether that telephone conversation [with the reporter] -- not the allegedly defamatory sentence -- was the kind of conduct Ballenger was employed to perform," and that "speaking to the press during regular work hours in response to a reporter's inquiry falls within the scope of a congressman's authorized duties." *Id.* at 664.

In *Libby*, the D.C. Circuit extended *Ballenger* to Executive Branch officials. *Libby* concerned an invasion of privacy suit against Vice President Cheney and his

9

Chief of Staff for allegedly revealing to the media the identity of a covert CIA agent critical of the administration. The court upheld the Attorney General's Westfall Act certification because "[o]f course, the defendants may discredit public critics of the Executive Branch." *Id*. at 711. In so holding, the D.C. Circuit also reaffirmed that "D.C. scope-of-employment law (not to mention the plain text of the Westfall Act)" requires courts "'to look beyond alleged intentional torts themselves' to the underlying conduct in determining whether that conduct was within the scope of employment." *Id.*

Under District of Columbia law, courts, in determining whether conduct falls within the scope of employment, examine whether the conduct: (a) is "of the kind" an employee is "employed to perform;" (b) "occurs substantially within the authorized time and space limits;" and (c) is "actuated, at least in part, by a purpose to serve the master." *Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009) (citing Restatement § 228(1) (1958)). *See also Harbury v. Hayden*, 522 F.3d 413, 422 n.4 (D.C. Cir. 2008) (Kavanaugh, J.) (Courts "apply the scope-of-employment test very expansively," to ask "whether the defendant merely was on duty or on the job when committing the alleged tort.'")

In determining whether the conduct is "of the kind" the defendant is employed to perform, courts examine the context of the allegedly actionable conduct, not the content of the conduct. *See Ballenger*, 444 F.3d at 664; *Jacobs v.*

*Vrobel*, 724 F.3d 217, 222 (D.C. Cir. 2013) ("District law requires that we focus on the type of act [defendant] took that allegedly gave rise to the tort, not the wrongful character of that act."). The President speaking with the press is plainly "of the kind" of conduct, the President is "employed to perform."

As for the second prong of the test -- whether the statements were made within authorized time and space limits -- the President, who must "be always in function," *Trump v. Vance*, 140 S. Ct. 2412, 2423 (2020) (quoting Letter from T. Jefferson to G. Hay (June 17, 1807), in 10 Works of Thomas Jefferson 400-401, n. (P. Ford ed. 1905)), is authorized, indeed required, to carry out his or her duties no matter where he is or when.

The statements also satisfy the third prong because they were actuated, at least in part, by a purpose to serve the master -- here the Government.  The District Court erred in finding that "a slight purpose to serve the master is not enough." (SPA-48.)  Under applicable law, conduct is outside the scope of employment only if it was done *solely* for the accomplishment of a personal goal.  Here, the President's statements to the press were at "least in part," *Wuterich*, *supra,* done to serve the Government, because they addressed a matter of undoubted public concern.  *See Ballenger*, 444 F.3d at 665 (elected official's "remarks, made to the media to ensure his effectiveness as a legislator, can 'fairly and reasonably be deemed to be an ordinary and natural incident or attribute' of his job as a

11

legislator." (citing *Chapman v. Rahall*, 399 F. Supp. 2d 711, 714 (W.D. Va. 2005)).

The District Court, recognizing that *Ballenger*'s reasoning would compel upholding certification here, found it "wanting." (SPA-51), essentially because it "would mean that a president is free to defame anyone who criticizes his conduct or impugns his character -- without adverse consequences to that president." (SPA-54.)  However, as this Court has recognized, it precisely "was the intention of Congress" in enacting the Westfall Act to leave the plaintiff who brings a defamation claim "without any remedy." *B & A Marine Co. v. Am. Foreign Shipping Co.*, 23 F.3d 709, 715 (2d Cir. 1994).

The District Court also applied an incorrect test for scope of employment -- whether under state *respondeat superior* law there is a master-servant relationship. The court, relying on its incorrect conclusion that the President has no "master" -- as shown below, the President, according to the Supreme Court, is subject to the partial control of the other branches -- incorrectly held that therefore the statements here were not within the scope.  But for purposes of the Westfall Act, courts look only to the other prong of state *respondeat superior* law -- scope of employment -- to determine scope of employment.  Whether there is a master-servant relationship is irrelevant, because the Westfall Act replaces that inquiry with whether the defendant is an "employee of the Government."  Courts apply the master-servant

test for purposes of the Westfall Act only when they look to federal common law to determine whether the defendant is an "independent contractor."  Moreover, even if the master-servant relationship were relevant, it was inappropriate for the District Court look to the Restatement of Agency for guidance in this instance, because the Restatement "does not state the special rules applicable to public officers . . . ."  Restatement (Second) of Agency ("Restatement") Scope Note (1958).

In any event, the District Court erred in finding that the President does not satisfy the master-servant test by taking an overly restrictive view of whether the master "controls" the servant that is not even borne out by the Restatement. Because the District Court could not point to a person that controls the President, it found that there can be no master-servant relationship.  However, the Restatement is clear that the master-servant relationship may exist, for example, for officers of corporations, who have no "master" but "give their time to their employers" -- just as Presidents "give their time" to the Government.  Restatement § 2 cmt. c. Moreover, contrary to the District Court's conclusion, the President can in fact be controlled by other co-equal branches of Government.

Accordingly, the District Court's Order should be reversed.

# ARGUMENT

## I.    STANDARD OF REVIEW.

On appeal from a ruling on a motion for substitution pursuant to the Westfall Act, this Court reviews "the district court's factual findings for clear error and its legal conclusions *de novo*."  *Bello v. United States*, 93 F. App'x 288, 290 (2d Cir. 2004).  Here, the District Court's rulings were legal conclusions, *see* SPA-42 n.103 (scope of employment "is decided appropriately as a legal question of law in this case"), and this Court's review is therefore *de novo*.

On review, this Court may also consider arguments raised by the United States below which the District Court erroneously held were waived (SPA-19 n.48).  Those arguments were appropriately raised by the United States on reply in response to arguments Ms. Carroll raised in opposing the motion to substitute on which she has the burden.[7]  *See Guadagni v. New York City Transit Auth.*, 387 F. App'x 124, 125-26 (2d Cir. 2010).  In any event, this Court has discretion to consider arguments raised for the first time on appeal "where necessary to avoid a manifest injustice" or "where [as here] the argument presents a question of law and

---

[7] The Westfall Act provides that on review by the courts, the Attorney's General certification that a federal employee's conduct was within the scope of employment is "*prima facie* evidence that the employee was acting within the scope of his [or her] employment," *Bowles v. United States*, 685 F. App'x 21, 24 (2d Cir. 2017)(quoting *Wuterich v. Murtha*, 562 F.3d 375, 381 (D.C. Cir. 2009), and to rebut the certification, it is plaintiff's burden to "allege sufficient facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment." *Wuterich*, 562 F.3d at 381 (citation omitted).

there is no need for additional fact-finding." *Sniado v. Bank Austria AG*, 378 F.3d 210, 213 (2d Cir. 2004).  And, as the Supreme Court has held, where the appeal involves the President, "'appellate review … should be particularly meticulous.'" *Trump v. Vance*, 140 S. Ct. at 2430 (quoting *Nixon v. Fitzgerald,* 457 U.S. 731 (1982)).[8]

## II.    THE WESTFALL ACT APPLIES TO THE PRESIDENT OF THE UNITED STATES.

The District Court erred in holding that the Westfall Act does not apply to the President of the United States.

### A.    The Expansive Definition of Employee Includes the President.

Until this case, it had not been doubted that the Westfall Act applies to the President.  The Act has been applied by federal courts in a case against President Clinton, a case against President George W. Bush, three cases against President Obama and, not counting this case, a case against President Trump.  *See Littlejohn v. United States*, No. CA 6:13-870-JMC-KFM, 2013 WL 1840050, at *2 (D.S.C. Apr. 9, 2013), *report and recommendation adopted*, No. 6:13-CV-00870-JMC, 2013 WL 1840025 (D.S.C. Apr. 30, 2013) (United States substituted for President

---

[8] Moreover, a "responsible official," here the Department of Justice, may not waive sovereign immunity by failing to raise an objection.  *See United States v. United States Fidelity and Guaranty Co.*, 309 U.S. 506, 513 (1940); *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 140 (2d Cir. 1999) (no official is empowered to consent to suit against the United States and any such waiver acceded to by an official is beyond the scope of his or her authority).

Clinton); *Saleh v. Bush*, 848 F.3d 880, 891 (9th Cir. 2017); *Ali Jaber v. United States*, 155 F. Supp. 3d 70, 73 n.1 (D.D.C. 2016)*, aff'd*, 861 F.3d 241 (D.C. Cir. 2017); *Klayman v. Obama*, 125 F. Supp. 3d 67, 84-85 (D.D.C. 2015); *Littlejohn v. Obama*, No. CA 7:14-812-JMC-KFM, 2014 WL 8266142, at *2 (D.S.C. Mar. 18, 2014), *report and recommendation adopted*, No. CIV.A. 7:14-812-BHH, 2015 WL 1275346 (D.S.C. Mar. 18, 2015), *aff'd*, 615 F. App'x 121 (4th Cir. 2015); *West v. Trump*, No. 3:19-CV-2522-K-BH, 2020 WL 4721291, at *3 (N.D. Tex. July 23, 2020). Several courts, emphasizing the expansive reach of the Westfall Act, have also noted that it applies "to all officers, up to the president." *See Does 1-10 v. Haaland*, 973 F.3d 591, 598 (6th Cir. 2020); *Operation Rescue Nat'l v. United States*, 147 F.3d 68, 70-71 (1st Cir. 1998) (same).

The District Court's erroneous holding below that the Westfall Act does not apply to the President is contrary not only to the established understanding evidenced by those cases, but is contrary to the expansive language of the Westfall Act, which by its terms applies to "*any* employee of the Government," 28 U.S.C. §§ 1346(b)(1), 2679(b) (emphasis added). "When used (as here) with a 'singular noun in affirmative contexts,' the word 'any' ordinarily 'refer[s] to a member of a particular group or class without distinction or limitation' and in this way 'impl[ies] *every* member of the class or group.'" *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) ("The word 'any' naturally carries 'an expansive

meaning.'").  Thus, as the Supreme Court has repeatedly noted, the Westfall Act

applies to "all federal employees."  *Levin v. United States*, 568 U.S. 503, 509

(2013); *Hui v. Castaneda*, 559 U.S. 799, 809-10 (2010) (same).

The Westfall Act defines "employee of the Government" in 28 U.S.C.

§ 2671, by setting forth illustrative, non-exclusive examples.  That provision

provides, in relevant part, that "employee of the government *includes* officers or

employees of any federal agency . . . and persons acting on behalf of a federal

agency in an official capacity, temporarily or permanently in the service of the

United States, whether with or without compensation."  28 U.S.C. § 2671

(emphasis added).  "Federal agency," in turn, is defined to "*include*[] the executive

departments, the judicial and legislative branches, the military departments,

independent establishments of the United States, and corporations primarily acting

as instrumentalities or agencies of the United States, *but does not include* any

contractor with the United States."  *Id.* (emphasis added).

These definitions are "introduced with the verb 'includes,'" which "makes

clear that the examples enumerated . . . are intended to be illustrative, not

exhaustive." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 162 (2012)

(interpreting Fair Labor Standards Act ("FLSA")); *see also Fed. Land Bank of St.

Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is

not one of all-embracing definition, but connotes simply an illustrative application

of the general principle."); *Davila v. United States*, 247 F. Supp. 3d 650, 661 n.18 (W.D. Pa. 2017) ("The use of the word 'includes' [in the Westfall Act] . . . suggests that persons not clearly within the scope of these [enumerated] categories may nonetheless be covered." (citation omitted)); *McNamara v. United States*, 199 F. Supp. 879, 880 (D.D.C. 1961) (definition of "federal agency" in FTCA is "not an exclusive definition."). When Congress sought to limit the definitions of terms in the Westfall Act to specifically enumerated categories, it used the words "means" instead of "includes."[9] *See Christopher*, 567 U.S. at 162 ("Congress used the narrower word 'means'" in the same and "other provisions of the FLSA when it wanted to cabin a definition.").

In other words, the only question is whether, under the expansive definition intended to cover "the entire Federal workforce," *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 425-26 (1994) (citation omitted), Presidents are "employee[s] of the Government" -- with the definitions in 28 U.S.C. § 2671 providing only illustrations of "employee."

Presidents plainly are employees of the Government, and Congress plainly

---

[9] *See* 28 U.S.C. § 2671 ("'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States or a member of the National Guard . . . *means* acting in line of duty." (emphasis added)); *id.* § 2680 ("'[I]nvestigative or law enforcement officer' *means* any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." (emphasis added)).

intended Presidents to be covered by the Westfall Act -- notwithstanding the District Court's strenuous but strained and unsuccessful effort to show otherwise here.  Under Article II, section 1, the President is the "President of the United States of America," holds an "Office" of the Government and "receive[s] for his [or her] services, a Compensation" from the Government.  *See* U.S. Const. art. II, § 1, cl. 7 ("The President shall, at stated Times, receive for his Services, a Compensation . . . ."); 3 U.S.C. § 102 (setting Presidential compensation including expense allowance to defray costs of performing "official duties").

Not surprisingly given these facts, both Congress and the Supreme Court have referred to the President as an employee of the Government.  In *United States v. Hatter*, 532 U.S. 557, 563 (2001), in discussing a Congressional statute concerning the participation of governmental employees in the social security program, the Supreme Court expressly referred to the President as included in a "class of current federal employees."  And in that statute, Congress itself referred to "service performed as the President" as a category of "[s]ervice performed in the employ of the United States."  42 U.S.C. § 410(a)(5)(C).

Accordingly, by the plain understanding of the term, the President is an employee of the Government.

### B. The Westfall Act's Failure to Exclude the President Establishes that the President is Included in the Definition.

The District Court erroneously held "that the failure to mention the president

should be understood as *excluding* him from the scope of the Westfall Act and Section 2671." (SPA-28 (emphasis in original)).  But as the Westfall Act itself and other statutes make clear, when Congress intends to exclude the President or anyone else, it *explicitly* excludes them.

Thus, the Westfall Act excludes from its coverage one potential class of employee: "any contractor with the United States," 28 U.S.C. § 2671.  As the Supreme Court noted in *United States v. Smith*: "if Congress had intended to limit the protection under the [Westfall] Act to employees not covered . . . it would have said as much."  499 U.S. 160, 173 (1991); *cf. Fed. Land Bank*, 314 U.S. at 100 ("If the broad exemption accorded to 'every Federal land bank' were limited to the specific illustrations mentioned in the participial phrase introduced by 'including', there would have been no necessity to except from the purview of section 26 the real estate held by the land banks.").

Accordingly, Congress's failure to exclude the President specifically -- as it did with independent contractors -- confirms that the Westfall Act covers the President.  Other courts have also interpreted the FTCA in this manner.  For example, in *LePatourel*, the Eighth Circuit interpreted the definition of "any government employee" in the pre-Westfall Act version of the FTCA to include federal judges, even though "federal agency" was then only defined to "include[] the executive departments, the military departments, independent establishments of

20

the United States, and corporations primarily acting as instrumentalities or agencies of the United States, but does not include any contractor with the United States." *United States v. LePatourel*, 571 F. 2d 405, 408 (8th Cir. 1978). The court noted that, as here, "[w]here Congress wished to limit the Act's coverage, as in the case of independent contractors, the language employed conferred a clear and specific exemption." *Id.* Thus, because Congress "chose to define 'employees of the government' . . . inclusively rather than exclusively," the FTCA applied to federal judges. *Id.* Under the same reasoning, the Westfall Act includes the President.

In other circumstances, when Congress intended to *exclude* the President from its definition of federal employees it has so specified. For example, the Hatch Act's prohibition against federal employees engaging in certain political activities defined "employee" as "any individual, other than the President and the Vice President . . . ." *See* 5 U.S.C. § 7322.

Moreover, the Supreme Court has made clear that statutory silence should be read to afford the President, not exclude the President from, the protection of a statute. In *Franklin v. Massachusetts*, 505 U.S. 788 (1992), the Supreme Court held that the Administrative Procedures Act ("APA"), which provides for judicial review of final agency actions, does not allow review of Presidential actions, notwithstanding the fact that the APA did not explicitly exclude the President. The

Supreme Court held that "out of respect for the separation of powers and the unique constitutional position of the President, we find that textual silence is not enough to subject the President to the provisions of the APA." *Id.* at 800-01 (citing *Nixon v. Fitzgerald,* 457 U.S. at 748, n. 27). Similarly, as the Supreme Court recognized in *Franklin*, in *Nixon v. Fitzgerald*, 457 U.S. at 748 n.27, the Court noted that it would take "express legislative action to *subject* the President" to damages claims, while reserving decision on whether that would be constitutionally permissible.

Notwithstanding *Franklin*'s clear import, the District Court read *Franklin* to support the proposition that, by excluding the President from the protections of the FTCA, it was, in fact following the direction in *Franklin* to avoid expanding Presidential liability. (SPA-29-32.) Specifically, the District Court reasoned that reading the FTCA to apply to the President would *authorize* private actions reviewing the President's official conduct. That concern is easily disposed of by 28 U.S.C. § 2674, which allows the United States to assert any pre-existing immunities possessed by the individual defendant, which, under these circumstances, would include the President's immunity from civil damages suits under *Fitzgerald*.[10] In any event, the FTCA does not permit review of

---

[10] 28 U.S.C. § 2674 provides, in relevant part, that "the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been

discretionary acts, as the District Court feared.  28 U.S.C. § 2680(a).

## C. The Legislative History Makes Clear That Congress Intended to Include the President.

If there are any lingering doubts as to the intent of Congress to include the President in the Westfall Act's coverage, it is removed by the legislative history of 28 U.S.C. § 2674.  Congress enacted this section with the President, specifically, in mind, intending that when the United States is substituted as a defendant, "[t]he United States would also be able to continue to assert other functional immunities, ***such as Presidential*** and prosecutorial ***immunity***, recognized in the constitution and judicial decisions."  H.R. Rep. 100-700, at 5 (emphasis added), *as reprinted in* 1988 U.S.C.C.A.N. 5945, 5948.

## D. The President is Part of the Executive Departments as That Term is Used in the Westfall Act.

The District Court also erred in drawing a distinction between "executive departments" and the "Executive Branch," finding that because the Westfall Act defines "employees of the Government" as "includ[ing] the executive *departments*," 28 U.S.C. § 2671 (emphasis added), it does not include the President, whom the District Court found occupies the "executive *branch*." (SPA-19-21 (emphasis added).)

---

available to the employee of the United States whose act or omission gave rise to the claim, as well as any other defenses to which the United States is entitled."