# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---

PRESIDENT DONALD J. TRUMP, 45th President of the United States of America, in his individual capacity,

Plaintiff,

v.

SIMON & SCHUSTER, INC., a New York corporation, ROBERT WOODWARD p.k.a. BOB WOODWARD, an individual, and PARAMOUNT GLOBAL, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation f/k/a Westinghouse Electric Corporation,

Defendants.

3:23-cv-06883-PGG

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF PRESIDENT TRUMP'S AMENDED COMPLAINT

**WILLIAMS & CONNOLLY\***
Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5800
Email: kbaine@wc.com
        thentoff@wc.com

*\*Of counsel to Robert Woodward*

**DAVIS WRIGHT TREMAINE LLP**
Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
        lindasteinman@dwt.com
        jackbrowning@dwt.com
        leenacharlton@dwt.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

   I.   PRESIDENT TRUMP'S FAILURE TO MEET THE REGISTRATION
       REQUIREMENT REQUIRES DISMISSAL ...................................................... 2

  II.   PRESIDENT TRUMP HAS NO COPYRIGHT INTEREST IN THE WORK ................. 3

      A.   The Government Works Doctrine Bars Trump's Copyright Claims ........................ 3

      B.   The Work Is Not a Joint Work ................................................................ 6

      C.   Woodward is the Dominant Author of the Work and the Copyright Office
           Compendium Does Not Preclude that Finding ........................................... 7

  III.  PRESIDENT TRUMP'S COPYRIGHT CLAIMS ARE BARRED BY FAIR USE ....... 11

  IV.  THE STATE LAW CLAIMS ARE PREEMPTED ............................................... 12

   V.   THE STATE LAW CLAIMS FAIL TO STATE A CLAIM ................................... 13

  VI.  PARAMOUNT IS NOT A PROPER PARTY ................................................... 14

CONCLUSION ..................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16 Case Duse, LLC v. Merkin*,
    791 F. 3d 247 (2d Cir. 2105)..............................................................................7, 10

*Andy Warhol Found. for the Visual Arts v. Goldsmith*,
    143 S. Ct. 1258 (2023)...........................................................................................11

*Bennett v. Am. Online*,
    2007 WL 2178317 (E.D. Mich. July 27, 2007) ....................................................14

*Brooks v. Dash*,
    454 F. Supp. 3d 331 (S.D.N.Y. 2020), *aff'd* 852 F. App'x. 40 (2d Cir. 2021).......10

*Brown v. Entertainment Merchants Ass'n*,
    564 U.S. 786 (2011)................................................................................................13

*Brown v. Netflix*,
    855 F. App'x. 61 (2d Cir. 2021) ..............................................................................5

*Campbell v. Acuff-Rose Music*,
    510 U.S. 569 (1994)................................................................................................11

*Childress v. Taylor*,
    945 F.2d 500 (2d Cir. 1991)..............................................................................7, 10

*Clanton v. UMG Recs.*,
    556 F. Supp. 3d 322 (S.D.N.Y. 2021).....................................................................7

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
    2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018).......................................................12

*Fort Wayne Books v. Indiana*,
    489 U.S. 46 (1989)..................................................................................................13

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com*,
    139 S. Ct. 881 (2019)................................................................................................2

*Garcia v. Google*,
    786 F.3d 733 (9th Cir. 2014) (en banc) ................................................................10

*Georgia v. Public.Resource.Org, Inc.*,
    140 S. Ct. 1498 (2020).........................................................................................8, 9

*Harper & Row v. Nation Enterprises*,
   723 F.2d 195 (2d Cir. 1983)..................................................................................5

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011).................................................................14

*Jackson v. Roberts (In re Jackson)*,
   972 F.3d 25 (2d Cir. 2020)................................................................................12

*Meyers v. Waverly Fabrics*,
   65 N.Y.2d 75 (1985) ........................................................................................14

*Pac and South. Co. v Duncan*,
   792 F.2d 1013 (11th Cir. 1986) .......................................................................10

*Perry v. Mary Ann Liebert, Inc.*,
   2018 WL 2561029 (S.D.N.Y. June 4, 2018) ...................................................7, 9

*Peter F. Gaito Architecture v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010)..................................................................................5

*Pub. Affairs Assocs. v. Rickover*,
   268 F. Supp. 444 (D.D.C. 1967) .........................................................................5

*Pub. Affairs Assocs. v. Rickover*,
   284 F.2d 262 (D.C.Cir. 1960) .............................................................................5

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)............................................................................................8

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014)................................................................................12

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998)................................................................................7

*Universal Instruments Corp. v. Micro Sys. Eng'g*,
   924 F.3d 32 (2d Cir. 2019)................................................................................13

*Wright v. Ernst & Young*,
   152 F.3d 169 (2d Cir. 1998)................................................................................2

**Statutes**

17 U.S.C. §§
   101.....................................................................................................................7
   301...............................................................................................................12, 13

44 U.S.C. § 22.................................................................................................................6

## PRELIMINARY STATEMENT

President Trump's opposition brief ("Opp.") fails to rebut the multiple independent grounds for dismissal set forth by Defendants.[1]  Indeed, he asks this Court to disregard his own pleadings, well-established undisputed facts, and controlling law.  Yet this entire action can be disposed of by a holding that President Trump does not hold any copyright interest in the Work because his contributions are Government Works.  And the Court should reach that conclusion on this motion because President Trump admits that, as President, he was a government employee, and he also does not dispute the many facts demonstrating that he engaged in the Interviews as part of his official duties.  As such, his Copyright Claims fail as a matter of law and his State Law Claims are preempted because they inevitably conflict with application of the Government Works doctrine.

President Trump also fails to rebut Defendants' other arguments requiring dismissal here. Instead, he attempts to dodge dismissal by trying to amend his pleadings via his opposition brief. Most glaringly, he introduces unverified and undocumented allegations that the Copyright Office will recognize him as a joint author of the Work, even though this directly contradicts his own pleadings alleging the exact opposite.  Nor can he hold dismissal in abeyance indefinitely while he awaits a decision on his registration application.  The Court should adjudicate the claims Plaintiff Trump presented in the Complaint.  Faithful application of the law to President Trump's actual pleadings requires dismissal.

---

[1] Capitalizations and abbreviations are the same as in Defendants' moving briefs.

## ARGUMENT

### I.   PRESIDENT TRUMP'S FAILURE TO MEET THE REGISTRATION REQUIREMENT REQUIRES DISMISSAL

After nine months of litigation, President Trump cannot satisfy the basic registration requirement that he was supposed to fulfill before filing this lawsuit.  President Trump stated in his previous opposition brief, filed more than two months ago, that a "copyright registration reflecting Plaintiff's copyright as a joint author is imminent" (Dkt. 44 at 19)—but it never issued. Whatever his counsel's current, unverified representations about such a registration now being around the corner (based on communications with the Copyright Office that he conspicuously fails to file), the fact remains that President Trump still has no registration, which is fatal to his claims—full stop. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com*, 139 S. Ct. 881, 892 (2019) (copyright claims are not actionable unless and until the "Register [of Copyrights] has registered a copyright").

Moreover, counsel's purported "rejection notice" of July 5, 2023 (Opp. 2) has not been submitted to the Court and, as quoted, is not a rejection notice at all—*i.e.*, a formal determination from the Copyright Office on registrability.  Instead, it appears to be a passing reference to the fact that President Trump cannot register as a sole author of the Interviews "without a bona fide copy."  Garson Decl. 21.  Even if the rejection were legitimate or a valid registration does issue, President Trump's claims nevertheless should be dismissed because he cannot amend his deficient Complaint through opposition papers.  *Wright v. Ernst & Young*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers.") (citations omitted).  No registration is alleged in the pleadings, and that is the end of the inquiry.

President Trump preemptively asks "for the opportunity to amend to include what has transpired since commencement of this lawsuit." Opp. 4. But assuming that his Copyright Claims are dismissed for failure to register, this Court should rule now on Defendants' alternate grounds for dismissal before even considering whether to grant President Trump another opportunity to amend his Amended Complaint. As President Trump has noted, registration is "non-jurisdictional" (*id.*) and there is nothing preventing this Court from dismissing the Copyright Claims with prejudice on multiple grounds other than registration—including the Government Works doctrine, the impossibility of joint authorship and Woodward's status as the Work's sole author. Defendants have been forced to shoulder the expense of filing this motion to dismiss three times (*see* Dkts. 28, 38) and it would be manifestly unfair to force them to start from scratch once again if President Trump finally manages to secure a copyright registration.

## II.  PRESIDENT TRUMP HAS NO COPYRIGHT INTEREST IN THE WORK

Independent of registration, President Trump's Copyright Claims fail on their merits for multiple reasons.

### A.  The Government Works Doctrine Bars Trump's Copyright Claims

The Government Works doctrine requires dismissal under any of President Trump's theories of copyright ownership. As a threshold matter, President Trump does not dispute that "[c]opyright protection … is not available for *any* work of the United States Government." Opp. 8, quoting 17 U.S.C. §105(a) (emphasis added). Nor does he dispute that, if his contributions are deemed to be Government Works, his Copyright Claims fail whether he asserts a joint, exclusive, or divided copyright interest in the Interviews or the Work. And he does not challenge that Defendants satisfied the first prong of the Government Works doctrine because he indisputably was "an officer or employee of the United States by way of his Presidency." *Id.*

The only issue that remains is whether President Trump participated in the Interviews "as part of [his] official duties." *Id*., quoting 17 U.S.C. §105(a).[2]

The Complaint and the Work make it indisputably clear that President Trump sat for the Interviews with Woodward as part of his official duties as President. He points to no factual allegations or legal argument that rebut that conclusion. He does not even attempt to argue that the Court should credit the Complaint's conclusory legal conclusion that the Interviews were "not conducted or performed in the scope of government employment." Am.Compl. ¶38. Instead, he improperly attempts to supplement his pleadings with an attorney declaration that does nothing more than confirm that President Trump agreed to the Interviews and that virtually all the Interviews took place on federal property. Opp. 9-10, citing Garson Decl. ¶20. Even if credited, these facts only underscore that President Trump was acting in his official capacity.

President Trump also does not dispute (and thus concedes) the many facts evident from the face of the Work showing he was acting within the scope of his duties during the Interviews. There is no dispute that certain Interviews took place in the Oval Office—the epicenter of executive authority—or that President Trump was almost always in the White House for the Interviews. MTD 18-19; *see also* Garson Decl. ¶20. There is no dispute that the list of "who was present during the interviews" (Opp. 9) contained a host of federal employees who actively participated, including communications officers whose job it was to control the message coming out of the White House. MTD 5, 19. There is no dispute that all of the Interviews focused on policy, not President Trump's personal or business affairs. *Id*. at 4 . Nor is there any dispute that

---

[2] President Trump focuses on rebutting an argument Defendants never made: that his status as President acts as an "automatic trigger" for application of the Government Works doctrine. Opp. 8-9. Alternatively, he suggests that "one can be a president and play golf" or "be an equestrian and also be a parent" but never explains how these observations have any relation to evidence that President Trump was addressing issues of State with a journalist and seeking to defend his administration's policies. *Id.* 10.

President Trump directed administration officials to supplement his responses by sitting for follow-up interviews with Woodward. *Id*. at 8-9, 19. Or that President Trump gave Woodward sensitive government documents, including his official correspondence with Kim Jong Un. *Id*. at 19. These uncontested facts—all evident from the face of the Work—lead to the inexorable conclusion that President Trump was acting within the scope of his official duties and thus cannot assert any copyright interest in the Interviews. *See Peter F. Gaito Architecture v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("In copyright infringement actions, the works themselves supersede and control contrary descriptions of them…including any contrary allegations, conclusions or descriptions of the works contained in the pleadings."); *Brown v. Netflix*, 855 F. App'x. 61, 63 (2d Cir. 2021).

Having effectively conceded the facts, President Trump fares no better on the law. He invokes *Pub. Affairs Assocs. v. Rickover,* 284 F.2d 262, 269 (D.C.Cir. 1960) and *Harper & Row v. Nation Enterprises*, 723 F.2d 195 (2d Cir. 1983) (subsequent history omitted), but the facts of those cases—extracurricular speeches in *Rickover* or, as in *Harper*, memoirs written after a president leaves office—are a far cry from Interviews with a sitting President. *See* Opp. 8-9. As President Trump stated in another lawsuit, "[s]peaking to the press and communicating with the public is clearly conduct 'of the kind [a President] is employed to perform.'" MTD at 19. It is impossible to square this truism with President Trump's opposite contention here that he was acting in a personal capacity when he submitted to White House interviews about matters of State, often while flanked by federal employees, with one of this country's leading journalists. "[T]he duties of a high Government official should not be narrowly interpreted" and this Court should not define the scope of President Trump's office more narrowly than he himself has defined it. *Pub. Affairs Assocs. v. Rickover*, 268 F. Supp. 444, 448-49 (D.D.C. 1967).

President Trump nonetheless invokes the Presidential Records Act ("PRA"). He argues it defeats dismissal because the PRA "functions independent of and as a functional exception to the Copyright Act and its government works provision" and permits presidents to retain ownership of purely "personal records" like "diaries [or] journals." Opp. 12. But on-the-record Interviews with a political journalist are not the "functional equivalent of a diary or journal." Further, as Defendants explained, the PRA is not a "functional exception" to the Copyright Act because it operates independently of and harmoniously with the Copyright Act. MTD 20-21. The PRA concerns the "ownership of physical materials" and has no bearing on the "distinct legal concept" of copyright law. *Id*. The PRA does not rescue President Trump's claim to own and have the right to profit from his presidential Interviews, which are a clear Government Work. In sum, the Government Works doctrine requires a dismissal of this action.

### B.     The Work Is Not a Joint Work

If this Court concludes President Trump's contributions to the Interviews are somehow not Government Works, President Trump would still be precluded from contending the Work is a "joint work." Citing to a supposedly upcoming finding by the Copyright Office—unsupported with any evidence—President Trump now contends that the Work is a "joint work" and that he should be entitled to the "presumption" accorded to a copyright registration "as a matter of law." Opp. 6.[3] But President Trump's Complaint and Amended Complaint explicitly disavow joint authorship, unequivocally alleging that he "never sought to create a work of joint authorship, and in the hours of the Interviews, there is neither allusion to nor confirmation of such." Compl. ¶47; Am.Compl. ¶53. Instead, President Trump expressly alleged that he was the sole author of the

---

[3] The Court should grant no deference to President's Trump's contention that the Copyright Office "concluded, in its specialized experience and investigation" that the Work is a "joint work." *Id*. The Court cannot evaluate the weight of a conclusion or supposed finding without any evidence from the Copyright Office before it.

Work or, in the alternative, the exclusive owner of the "copyright interest in his [Interview] responses." Compl. ¶66; Am.Compl. ¶72. "It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss" and President Trump's belated joint authorship claim should be disregarded. *Clanton v. UMG Recs.*, 556 F. Supp. 3d 322, 327 n.1 (S.D.N.Y. 2021) (citation omitted).

Further, the law is clear that parties asserting a claim of joint authorship must share the "intention that their contributions be merged into inseparable or interdependent parts of a unitary whole" (17 U.S.C. §101) *and* show that "each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors." *16 Case Duse, LLC v. Merkin*, 791 F. 3d 247, 255-56 (2d Cir. 2105); *see also Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998); *Childress v. Taylor*, 945 F.2d 500, 504-09 (2d Cir. 1991). As the Second Circuit stated in *Childress*, the "equal sharing of rights should be reserved for relationships in which all participants fully intend to be joint authors." *Id.* at 509. President Trump cannot meet the test, given his own binding admission in his pleadings that he did *not* intend to be a joint author and that "there is neither allusion to nor confirmation of such [intent]" in the Interviews. Compl. ¶47; Am.Compl. ¶53. S*ee also Perry v. Mary Ann Liebert, Inc.*, 2018 WL 2561029, *9 (S.D.N.Y. June 4, 2018) (granting motion to dismiss implausible claim of joint authorship). Further, he does not allege—nor could he—that Woodward shared the necessary intent to be a joint author. President Trump is therefore barred from asserting joint authorship as a matter of procedure, law and fact.

### C. Woodward is the Dominant Author of the Work and the Copyright Office Compendium Does Not Preclude that Finding

President Trump also fails to rebut Defendants' independent but detailed showing that Woodward is "the true author of the Interviews." MTD 11-16. As anticipated, President Trump

attempts to use the Compendium of U.S. Copyright Offices Practices (the "Compendium") to attack this showing.  However, the Opposition misstates the deference owed to a "non-binding administrative manual," *Georgia v. Public.Resource.Org, Inc*., 140 S. Ct. 1498, 1510 (2020), particularly when the Compendium does not even address interviews of high-government officials concerning matters of State; there are no administrative findings by the Copyright Office before the Court; and the Compendium is not consistent with Second Circuit precedent on the "dominant" author of a work.

The Supreme Court is clear that the Compendium is entitled to *Skidmore* deference only —not even the higher *Chevron* standard—and courts thus "must follow it only to the extent it has the power to persuade."  *Id*. at 1510 (finding certain guidance in Compendium unpersuasive). Further, as the Compendium itself recognizes, its persuasiveness on any given point "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." Compendium at p. 2, citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Here, President Trump does not even try to argue that the Compendium's default rules on interviews are worth adopting, let alone why they should apply in the context of Government Works, nor can he seriously argue that the guidance is applicable here.  On its face, the Compendium's bare-bones statement that "[t]he Copyright Office *will assume* that the interviewer and the interviewee own the copyright in their respective questions and responses…" (Compendium §719 (emphasis added)) hardly reflects any "thoroughness…in its consideration." *Skidmore*, 323 U.S. at 140.  Section 719 of the Compendium cites no case law or justifications for its "assumption."  Further, the Compendium is only a general manual, not an actual determination of the unique circumstances presented by President Trump's unprecedented claim.

Critically, President Trump also ignores Defendants' detailed arguments that a rule dividing the copyright in the Interviews between him and Woodward contravenes at least two categories of binding law: (i) precedents defining the dominant author as the sole author of a unitary creative project where there are no joint authors, and (ii) the statutory prohibition on private ownership of Government Works.  MTD 11-21.  Nor does President Trump mention Defendants' strong policy rationales against granting public figures ownership interests in their interviews, which could stifle news reporting.  *Id.* at 21.

Against this backdrop, the Court should reject the invitation to apply the Compendium's guidance under these circumstances and preclude a finding that Woodward is the sole author of the Work.  As the Supreme Court held in *Public.Resource.Org.*, "[b]ecause…precedents answer the question before us,…any competing guidance in the Compendium [is] unpersuasive" and need not be followed.  140 S.Ct. at 1510.

The Court also should reject President Trump's arguments that Woodward is not the "dominant author" of a collaborative work under *16 Casa Duse* and related authority.  President Trump suggests that *16 Casa Duse* is distinguishable because it dealt with "filmmaking, not interviews" (Opp. 16), but no law distinguishes between movies, books or news reporting.  It instead turns on whether the Interviews and Work were "collaborative."  An interview is collaborative by definition and the Interviews at issue here were especially so.  The initial purpose of the Interviews was to gather material for Woodward's book *Rage* and Woodward interviewed dozens of people other than President Trump. MTD 5, 7-8, 19.  Once he elected to use the raw Interviews in an independent Work and edited them with multiple commentaries, many more individuals were involved in editing, publishing and producing the audio and print versions of the Work.  *Id.* at 8-9.  And, contrary to President Trump's suggestion that the

copyright in the Interviews is somehow divisible (Opp. 16-17), the questions and responses are "inseparable" parts "of a unitary whole" because "they have little or no independent meaning standing alone." *Childress*, 945 F.2d at 505 (holding that "written text[s]" like a play are "often" comprised of "inseparable" parts); *cf. Pac and South. Co. v Duncan*, 792 F.2d 1013, 1014 n.1 (11th Cir. 1986).  Since President Trump has disclaimed the "mutual intent to be co-authors,…the 'dominant author' is the sole author" of the Works and Interviews.  *Brooks v. Dash*, 454 F. Supp. 3d 331, 338 (S.D.N.Y. 2020), *aff'd* 852 F. App'x. 40 (2d Cir. 2021) (citations omitted).

President Trump's efforts to position himself as the dominant author are unavailing.  As a threshold matter, he incorrectly suggests that the Court should determine ownership by looking at the Interviews and Work in isolation.  Opp. 13-15.  But courts in the Second Circuit determine the ownership of "raw film footage" by determining who "exercised…more decision making authority" in "the context of the project as a whole."  *16 Casa Duse*, 791 F.3d at 260.  Here, there is no dispute that Woodward initiated the Interviews to obtain content for his book *Rage*, decided who to interview and controlled the line of questions as well as the publication schedule for *Rage* and the Work.  MTD 4-8.[4]  President Trump also concedes the critical point that "he had no control over what Woodward would write."  Opp. 14, quoting MTD 29.  Given this uncontestable record, which is apparent from the Complaint and the Work, President Trump cannot plausibly position himself as the "dominant author" based on the perceived value of "the uniqueness of his voice."  Opp. 14.  *See Garcia v. Google,* 786 F.3d 733, 743-44 (9th Cir. 2014) (en banc) (holding that actress had no copyrightable interest in her performance in a film).[5]

---

[4] President Trump argues that Woodward's only role in the Interviews was "secretarial" and "to press the 'record button'" (Opp. 14), but the Work itself documents Woodward's thought process in structuring the Interviews.  *See* Ex. A 1-3, MTD 4, 8.

[5] On the other "dominant author" factors, President Trump does not deny the obvious fact that he was not a party to the agreements that gave rise to the Interviews – *i.e.*, the publishing

### III.   PRESIDENT TRUMP'S COPYRIGHT CLAIMS ARE BARRED BY FAIR USE

Even if President Trump's Interview responses were copyrightable, this is a case where fair use is so evident from the face of the Complaint that immediate dismissal is appropriate. MTD 21-23.  Rather than identifying facts to rebut fair use, Plaintiff turns to misrepresentations of the undisputed record or to bad law.  Most glaring is President Trump's contention that "there is nothing before this Court to suggest the Defendants" added "extensive supplemental materials" to the Interviews.  Opp. 18.  The Work, however, indisputably uses the Interviews for the transformative and presumptively fair use purpose of "commenting" upon and "criticizing" President Trump's statements during the Interviews—particularly through Woodward's 227 "commentaries," Introduction, Epilogue, and other original contributions.  *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 143 S. Ct. 1258, 1282 (2023).  The presence of in-depth criticism of President Trump's eminently newsworthy statements about his presidency distinguishes this case from cases where tabloids exploited photographs of celebrities in a non-transformative manner.  *See* Opp. 19, citing *Monge v. Maya Magazines*, 688 F.3d 1164, 1173 (9th Cir. 2012).

President Trump further suggests that "every commercial use of copyrighted material is…presumptively…unfair."  Opp. 22 (quoting *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 450 (1984)).  But the Supreme Court rejected this position, holding that "Congress could not have intended…a rule" where "commerciality carried presumptive force against a finding of fairness…."  *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 584-85 (1994).  Virtually all news reporting and publishing is "commercial" and that has never been found to preclude fair

---

agreements between S&S and Woodward for *Rage* and the Work.  Am.Compl. ¶¶30-35, 41-43 (discussing publishing agreements).  Nor can President Trump establish that the billing factor is anything more than neutral.  Opp. 15-16.

use.  Finally, President Trump half-heartedly seeks to distinguish *Swatch* on the grounds that it was a summary judgment case, when in reality the Court dismissed the case on fair use grounds prior to any discovery.  *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 79-80 (2d Cir. 2014).  Nor does President Trump provide any basis for his *ipse dixit* assertion that *Swatch* "is inapposite…because of the completely different nature of the interview."  Opp. 17.  This contention misses Defendants' point that fair use permits extensive use of the Interviews in the Work because, as *Swatch* makes clear, "a speaker's demeanor, tone, and cadence can often elucidate his or her true beliefs far beyond what a stale transcript or summary can show." *Swatch*, 756 F.3d at 84.  *See also* MTD 21-22.

### IV.   THE STATE LAW CLAIMS ARE PREEMPTED

President Trump also fails to rebut Defendants' showing that his State Law claims are precluded by the independent doctrines of conflict preemption and express preemption under 17 U.S.C. §301.  His principal argument against conflict preemption is simply that the Government Works doctrine does not apply here.  Opp. 25.  But if it does, as Defendants have demonstrated, President Trump has failed to seriously dispute that enforcing his State Law Claims would thwart "the full purposes and objectives of Congress[']" statutory prohibition against allowing government officials to claim ownership of Government Works.  *Jackson v. Roberts (In re Jackson)*, 972 F.3d 25, 34 (2d Cir. 2020) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  Moreover, President Trump cannot evade conflict preemption by pretending that he is an ordinary "voiceover artist" to whom the Government Works exception does not apply.  Opp. 26.  Having failed to offer any substantive argument that State Law Claims based on the notion that President Trump "retain[ed] for himself the…rights to the narration" (Am.Compl. ¶48) do not conflict with the prohibition on private ownership of Government Works, President Trump has conceded the point.  *See, e.g.*, *Cole v. Blackwell Fuller Music*

*Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."); MTD 24-26.

In the alternative, President Trump's express preemption arguments under 17 U.S.C. §301 are also without merit. He provides no authority to rebut the decisions cited by Defendants holding that the Copyright Act preempts run-of-the-mill unjust enrichment and FDUPTA claims. MTD 26-27 (citing cases). And he fails to distinguish *Universal Instruments Corp. v. Micro Sys. Eng'g*, which also involved a claim that a use allegedly exceeded the scope of a license and held that the fact that two parties "are in contractual privity does nothing to change the fact that vindication of an exclusive right under the Copyright Act, read into a license by negative implication, is preempted by the Copyright Act." 924 F.3d 32, 49 (2d Cir. 2019); MTD 27-28.

## V.     THE STATE LAW CLAIMS FAIL TO STATE A CLAIM

President Trump's opposition reaffirms fatal flaws in his FDUTPA claim. Agreeing that "the statute applies only to commercial speech"—*i.e.*, "expression related solely to the economic interests of the speaker and its audience"—President Trump brands the Work nothing "short of commercial." Opp. 31. But the Supreme Court repeatedly has found that books are expressive content covered by the First Amendment, not commercial speech. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 790 (2011); *Fort Wayne Books v. Indiana*, 489 U.S. 46, 63 (1989) (rejecting pretrial seizure of films, "books or any other expressive materials"). Indeed, President Trump himself argues that the Interviews "were not information or functional, but rather a creative work." Opp. 20. Moreover, President Trump's unsupported assertion that he has "no obligation to identify…an 'actual consumer'" in his pleadings is contrary to the cited caselaw. *See* MTD 30-31; Opp. 30-31.

President Trump fares no better with breach of contract.  He does not dispute that the statute of frauds applies, but draws an illusory distinction between "allowances" and "prohibitions" to argue that Woodward could complete performance within one year.  Opp. 29. This semantic contrast is not supported by authority and does not override caselaw holding that the statute of frauds barred enforcement of an analogous limitation against certain uses of copyrighted material because "it cannot be performed within one year.…"  *Meyers v. Waverly Fabrics*, 65 N.Y.2d 75, 79 (1985).  President Trump also fails to address any of Defendants' arguments that his contract claims are inherently implausible.  MTD 28-29.  Finally, President Trump has abandoned his breach of covenant of fair dealing claim (Opp. 30, n. 14) and his promissory estoppel claim fails together with his doomed contract claim.  MTD 30.

## VI.    PARAMOUNT IS NOT A PROPER PARTY

President Trump fails to satisfy his burden of alleging that Paramount had a "direct involvement in" the alleged infringement.  *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 417–19 (S.D.N.Y. 2011).  As he tacitly concedes, the fact that Paramount is S&S's corporate parent does not suffice.  MTD 31-32.  President Trump misleadingly cites one out-of-state case to suggest that establishing "day-to-day control" of S&S is enough.  Opp. 32 (quoting *Bennett v. Am. Online*, 2007 WL 2178317, at *6 (E.D. Mich. July 27, 2007)).  But even *if* such caselaw applied, he has not alleged a single fact in his pleadings to support this bare-boned contention, precluding any reliance on *Bennett.*  At most, President Trump alleged that a parent-subsidiary relationship existed between the two entities, but that is categorically insufficient to demonstrate a "substantial and continuing connection" with the specific conduct alleged against S&S and Woodward.

14

## CONCLUSION

Defendants respectfully request that this Court dismiss the Amended Complaint with prejudice and award such other relief deemed just and proper.

Dated: September 11, 2023

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena M. Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
    lindasteinman@dwt.com
    jackbrowning@dwt.com
    leenacharlton@dwt.com

*Attorneys for Robert Woodward, Simon*
*& Schuster, Inc. and Paramount Global*

**WILLIAMS & CONNOLLY***

Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5800

Email: kbaine@wc.com
    thentoff@wc.com

**Of counsel to Robert Woodward*

15

**CERTIFICATION OF WORD COUNT**

I hereby certify that this Memorandum of Law in Support of Defendants Rule 12(b)(6) Motion to Dismiss complies with the Order granting permission to file an oversized document, not to exceed 4,500 words.  Dkt. 54.

According to the word-processing system used to prepare this Motion to Dismiss for Failure to State a Claim the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 4,461 words.

Dated: September 11, 2023                          _/s/ Elizabeth A. McNamara_
                                                                    Elizabeth A. McNamara

**CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2023, I caused copies of the foregoing to be sent to counsel of record via ECF.

*/s/ Elizabeth A. McNamara*
Attorney