**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

PRESIDENT DONALD J. TRUMP, 45th President
of the United States of America, in his
individual capacity,

        Plaintiff,

v.

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD p.k.a.
BOB WOODWARD, an individual, and
PARAMOUNT GLOBAL, a Delaware
corporation f/k/a VIACOMCBS, INC., a
Delaware corporation, f/k/a Viacom Inc.,
successor by merger to CBSCorporation,
a Pennsylvania corporation f/k/a Westinghouse
Electric Corporation,

        Defendants.

_____/

**CASE NO.**  1:23-cv-06883-PGG

**JURY TRIAL DEMANDED**

**SECOND AMENDED COMPLAINT[1]**

    Plaintiff, President Donald J. Trump, 45th President of the United States of America

("President Trump"), by and through his attorneys, GS2 Law PLLC, upon personal knowledge and

upon information and belief as to all other matters, files this Second Amended Complaint against

the Defendants, Simon & Schuster, Inc. ("SSI"), Robert Woodward, professionally known as Bob

Woodward ("Woodward"), and Paramount Global, a Delaware corporation f/k/a VIACOMCBS,

Inc., a  Delaware corporation, f/k/a Viacom Inc., successor by merger to CBSCorporation, a

Pennsylvania corporation f/k/a Westinghouse Electric Corporation ("Paramount") (collectively,

"Defendants") and further alleges as follows:

---

[1] This Second Amended Complaint is being filed pursuant to this Court's Memo Endorsed Order
dated November 3, 2023. [D.E. 66].

**Nature of Action**

"I'm doing something here that I've never done before... Hearing Trump speak is a completely different experience to reading the transcripts or listening to snatches of interviews on television or the internet." This is the leading quote by journalist Bob Woodward on his website, bobwoodward.com. In walking this new path, Woodward, SSI and Paramount trampled upon the rights of President Trump which they either did not believe to exist or care to understand that such rights existed.

This case centers on the exploitation by Mr. Woodward, et al.  of the audio of President Trump gathered in connection with a series of interviews conducted by Mr. Woodward. Said audio was and is protected material, subject to various limitations on use and distribution—as a matter of copyright, license, contract, basic principles of the publishing industry, and core values of fairness and consent. In manipulating, and exploiting such material, Mr. Woodward has acted in concert with (i) SSI, a major publishing company which brings the work of many authors, including Woodward, to hundreds of countries and territories, and (ii) SSI's parent company, Paramount. Individually and collectively, these entities have failed to respect President Trump's copyright interests, his contractual rights, and the rights he holds as an interviewee,[2] through the

---

[2] The Defendants' actions are, *inter alia*, in direct contravention of the law laid out in the compendium of U.S. Copyright Office Practices, which sets forth a presumption that "the interviewer and the interviewee own the copyright in their respective questions and responses unless (i) the work is claimed as a joint work; (ii) the applicant provides a transfer statement indicating that the interviewer or the interviewee transferred his or her rights to the copyright claimant, or (iii) the applicant indicates that the interview was created or commissioned as a work made for hire. *See Compendium of U.S. Copyright Office Practices, 3d Ed.* (2021). Ostensibly, this has been applied and ratified in the granting of the copyright registration in the name of President Trump.

publication of an audiobook (and other works, as set forth below) predicated upon the subject audio—solely for their own financial gain and without any accounting or recompense to him.

Prior to commencing this litigation, President Trump and his counsel confronted Defendants with their wrongdoing; however, they brazenly refused to recognize President Trump's copyright and contractual rights. Instead, they proffered various flawed and irrelevant justifications which are unavailing and devoid of any legal merit. In order to reap more benefits from their ongoing violation of President Trump's rights, Defendants have converted the audio not only into an audiobook but also into derivative works, including a CD, paperback, and e-book—again, all at the expense of President Trump and without accounting to him.

The Defendants' ongoing concerted efforts to profit off the protected audio recordings and the works they have distributed derived from the protected audio recordings have caused President Trump to sustain substantial damages, necessitating the institution of this action.

Through this action, the President Trump has sought, *inter alia*, a declaration of his copyright interests in the subject audiobook, CD, paperback and e-book, and recovery of the damages sustained.  Notably, since inception of this action, the United States Copyright Office has registered Mr. Trump and Defendant Mr. Woodward as co-authors, i.e. co-claimants, of the work. The copyright has been assigned Registration Number SR0000975712 and bears an effective date of registration of February 28, 2023. On November 2, 2023, in a letter to this Court, the Defendants indicated they were withdrawing their argument that the Amended Complaint should be dismissed for failure to register a copyright.

## Parties

1.      Plaintiff, President Trump, is an individual who is a citizen and resident of Palm Beach County, Florida, and is otherwise *sui juris*.

2.      Defendant, SSI is headquartered in New York, New York, and has at all material times been a wholly-owned subsidiary of Paramount.

3.      Founded in 1924, SSI is the fourth-largest U.S. trade book publisher. It has over thirty (30) U.S. imprints (a trade or brand name for a specific group of editors) across three (3) publishing groups and publishes over 1,000 new titles annually in the U.S. In 2020, SSI earned over $760 million in U.S. publishing revenues.

4.      Defendant, Woodward is an individual who, upon information and belief, is a resident of Washington, D.C, and is otherwise *sui juris*.

5.      Paramount is an international media and entertainment company, headquartered in New York, New York.  Paramount is also registered as a foreign profit corporation in the State of Florida. The name and address of Paramount's registered agent is The Prentice-Hall Corporation System, Inc., 1201 Hays Street, Tallahassee, FL 32301.

## Nature of the Action and Relief Sought

6.      This action further seeks, *inter alia*, declaratory relief and attorney's fees as set forth hereinafter, as well as any and all further relief in accordance with the appropriate statutes and common law.

**Jurisdiction and Venue[3]**

7.     This action arises under the copyright laws of the United States, 17 U.S.C. § 101 et. seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201 et. seq., and is also predicated upon unjust enrichment and breach of contract.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States and raises claims seeking a declaratory judgment of the parties' right, title and interest of intellectual property materials pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* This action presents an actual case or controversy within the Court's jurisdiction under the Declaratory Judgment Act.

9.     As a separate and independent ground for subject matter jurisdiction, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) because President Trump is a citizen of Florida while each of the Defendants are not, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

10.     To the extent the Court does not have subject matter jurisdiction over any state law claim pursuant to the above, this Court has supplemental or pendent jurisdiction over any such remaining claims pursuant to 28 U.S.C. § 1367 because such claims are so closely related to President Trump's claims under the Copyright Act and under the Declaratory Judgment Act, 28 U.S.C. § 2201 and §2202, that they form part of the same case or controversy.

11.     This Court has personal jurisdiction over each of the Defendants. SSI has consented to

---

[3] This action was originally commenced in Northern District of Florida (Case No. 3:23-cv-02333-MCR-ZCB). By order of Hon. Casey M. Rodgers USDJ dated August 4, 2023, [Dkt. No. 48] venue was transferred to this district on the bases that the Southern District of New York is the most appropriate and convenient forum for the parties and witnesses and the one with the strongest connection to the dispute.

personal jurisdiction in this State and in this District, as it is a corporation that transacts business within this District through, among other things, its acquisition of content from and provision of publishing services to authors. SSI acquires publishing rights from authors and provide publishing services, including editing, marketing, sales, and distribution of books, throughout the United States. By its own admission, it is a "leading international publisher," a "global leader in publishing," "a major force in today's consumer publishing industry, dedicating to bringing an extensive cross section of first-class information and entertainment in all printed, digital, and audio formats to a worldwide audience of readers."[4] SSI has a pervasive, broad reach, as it has "has approximately 1500 employees and can distribute its titles in physical and digital editions in more than 100 countries and territories around the world." It "proudly brings the works of its authors to readers in more than 200 countries and territories."[5] SSI sells and distributes its publications via its employees and agents in New York and throughout the United States, including the works that are at issue in this action.

12.     SSI not only operates, conducts, and engages in business in New York, including this District, but also engages in substantial and not isolated activity with the state of New York, including this District. SSI's activities in New York are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state.

13.     Woodward regularly authors books which SSI regularly publishes on a global scale. Woodward is an investigative journalist who has written a number of books, including the one that

---

[4] https://about.simonandschuster.biz/corporate-overview/#:~:text=Simon%20%26%20Schuster%20has%20publishing%20and,presence%20in%20every%20major%20market; https://www.simonandschuster.biz/p/social-impact
[5] https://about.simonandschuster.biz/news/sales-for-bob-woodwards-rage/

underlies the subject claims against the Defendants.

14.     Woodward has consented to personal jurisdiction in this State and in this District, as he transacts business within the District through his investigative journalism and publication of literary materials. Woodward has gained "international attention," is considered a "legendary" investigative journalist, and markets himself as, *inter alia*, a keynote and fireside chat speaker available anywhere domestically in the United States for a fee of $45,000.00 to $55,000.00.[6] In November 2017, he released a series of video lessons titled *Bob Woodward Teaches Investigative Journalism* for streaming on the MasterClass streaming platform website. The course is available for purchase via the MasterClass website throughout the United States, including the State of New York and this District.

15.     Woodward not only operates, conducts, and engages in business in New York, including this District, but also engages in substantial and not isolated activity with the state of New York, including this District. Woodward's activities in New York are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state. Additionally, Woodward has breached a contract in this state by failing to perform acts required by the contract to be performed in this state. *See* Fla. Stat. §§ 48.193(1)(a)(2).

16.     Paramount has consented to personal jurisdiction in this District, as it transacts business within the District through its then wholly-owned division, SSI. Additionally, Paramount's assets include SSI, and Paramount exerted direct control over the executive leadership of SSI. By SSI's

---

[6] https://gravityspeakers.com/speaker/bob-woodward/

own admission, it "enjoys a close relationship with parent company Paramount."[7] Paramount not only operates, conducts, and engages in business in New York, including this District, but also engages in substantial and not isolated activity with the state of New York, including this District. Paramount's activities in New York are extensive and pervasive, with significant business operations and revenue derived from established commercial relationships in this state.

17.     Each of these Defendants committed tortious acts and omissions in New York, and their tortious acts and omissions caused injury to President Trump in Florida. *See* Fla. Stat. §§ 48.193(1)(a)(7).

18.     The Defendants have purposefully engaged in the business of publishing, distributing, promoting, and selling various sources of literature throughout the United States, including New York, for which they have each derived significant income. The Defendants reasonably expected that such literature, including the materials that are the subject of this lawsuit, would be sold and distributed in New York.

19.     Each of the Defendants conducted or has conducted significant revenue-producing business, including interstate and intrastate commerce, in New York. Each can reasonably expect the sale and distribution of said literature to have consequences in New York. Each of the Defendants have transacted business in New York and each of the Defendants regularly do or solicit business in New York and derive substantial revenue from goods used or services rendered in New York, and reasonably should expect their unlawful conduct to have consequences in New York.

---

[7] https://about.simonandschuster.biz/corporate-overview/#:~:text=Simon%20%26%20Schuster%20has%20publishing%20and,presence%20in%20every%20major%20market.

20.     The commercial activities of each of the Defendants in the State of New York were not isolated, and each has maintained sufficient contacts with New York and/or transacted substantial revenue-producing business in New York to subject them to the jurisdiction of this Court.

21.     Moreover, each of the Defendants have sufficient minimum contacts with this jurisdiction that the exercise of personal jurisdiction over them will not offend traditional notions of fair play and substantial justice.

22.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events giving rise to the claim occurred here, and pursuant to 28 U.S.C. § 1400(a), as the Defendants may be found in this jurisdiction because they are subject to personal jurisdiction in this district.

## GENERAL ALLEGATIONS

### *Publishing Background of the Parties*

23.     SSI, controlled by Paramount, is the fourth-largest U.S. book publisher and is one of what the industry calls the "Big Five" U.S. publishers. Publishers such as SSI pay significant advances to authors whose books are expected to have commercial success.

24.     SSI is also able to offer authors the extensive editorial, production, marketing, and publicity support generally needed to produce a top-selling book, as well as the sales and distribution networks necessary to place books into readers' hands.

25.     The licenses obtained by SSI generally include the right to publish a book in various formats (print, e-book, audiobook) within a particular geographic area. SSI competes for these rights in a number of ways. In addition to paying authors advances and royalties, SSI provides

editorial, design, marketing, publicity and other services to authors. SSI also arranges for printing and distribution of books to wholesalers and retailers.

26.     Woodward is an author who has published numerous books. He has authored twenty-one books, which have all been published by SSI. These books have been widely sold across the United States, including but not limited to this district.

27.     Authors like Woodward are compensated in the form of royalties and advances. An advance is an up-front payment of royalties that are expected to accrue from future sales of the book.

28.     In the United States, books are sold through several retail sales channels, including online retailers such as Amazon, national bookstore chains such as Barnes & Noble and Books-A-Million, independent bookstores such as The Strand and Politics & Prose, big-box stores such as Target, Walmart and Costco, and specialty retailers such as Anthropologie and Bass Pro Shops.

29.     Books also are sold to retailers and institutional buyers (including schools and libraries) through wholesalers such as Ingram and Readerlink. Publishers set the cover or "list price" of a book and sell the books to retailers at a standard discount from the list price (a little less than half-off for most types of print books). SSI also may offer retailers marketing and other promotional discounts in addition to the standard discount applied to the list price.

30.     President Trump is personally and professional familiar with the book publishing industry, having authored and co-authored many titles, including, but not limited to the following (most of which have become best sellers):

- *Trump: The Art of the Deal*
- *Why We Want You To Be Rich: Two Men One Message*
- *Trump: Think Like a Billionaire: Everything You Need to Know About Success, Real Estate, and Life*

- *Trump Never Give Up: How I Turned My Biggest Challenges into Success*
- *Great Again: How to Fix Our Crippled America*
- *Think Big: Make It Happen in Business and Life*
- *Midas Touch: Why Some Entrepreneurs Get Rich-And Why Most Don't*
- *Trump: How to Get Rich*
- *Trump: The Art of the Comeback*
- *Trump: The Best Real Estate Advice I Ever Received: 100 Top Experts Share Their Strategies*
- *Trump: Surviving at the Top*
- *Time to Get Tough: Make America Great Again!*
- *Trump: The Way to the Top: The Best Business Advice I Ever Received*
- *Trump: The Best Golf Advice I Ever Received*
- *Think BIG and Kick Ass in Business and Life CD*
- *Trump 101: The Way to Success*
- *Donald J. Trump - Think like a Champion*

31.    President Trump has recently published and sold the highly successful book, "Our Journey Together."

32.    As a published author with a publishing contract for future books with Winning Team Publishing, President Trump has the clear right and capability to publish his own words and his own voice.

***The Defendants' Publications regarding President Trump***

33.    SSI, Paramount, and Woodward have had a great deal of commercial and financial success with publications about President Trump.

34.    The Defendants collected large revenues generated from *Fear: Trump in the Whitehouse*[8] ("Fear"), which was published September 10, 2019. *Fear* sold over 2 million copies in the first

---

[8] ISBN13: 9781501175527

three months of publication[9], breaking the 94-year first-week sales record of SSI, and became the #1 New York Times Bestseller and #1 International Bestseller.[10]

35.     Woodward then sought President Trump's consent to be recorded for a series of interviews with President Trump and repeatedly informed him that such interviews were for the sole purpose of a *book*. That book, entitled *Rage*, was released on September 14, 2021.[11]

36.     Woodward conducted interviews with President Trump for *Rage* at the White House, President Trump's home of Mar-a-Lago in Palm Beach, Florida, and over the phone between December 2019 and late July 2020, as follows:

(a) Thursday, December 5, 2019
(b) Friday, December 13, 2019
(c) Monday, December 30, 2019
(d)  Monday, January 20, 2020
(e) Wednesday, January 22, 2020
(f) Friday, February 7, 2020
(g) Wednesday, February 19, 2020
(h) Thursday, March 19, 2020
(i) Saturday, March 28, 2020
(j) Sunday, April 5, 2020
(k) Monday, April 13, 2020
(l)  Wednesday, May 6, 2020
(m) Friday, May 22, 2020
(n) Wednesday, June 3, 2020
(o) Friday, June 19, 2020
(p) Monday, June 22, 2020
(q) Wednesday, July 8, 2020
(r) Tuesday, July 21, 2020
(s) Friday, August 14, 2020

---

[9] https://www.bobwoodward.com/books/fo3ts5c6ljss8h25q3j2x92thehuey
[10] https://www.simonandschuster.com/books/Fear/Bob-Woodward/9781501175527
[11] ISBN13: 9781982131746

(each, an "Interview," and collectively, the "Interviews" or "Interview Sound Recordings"). According to Woodward, he also interviewed President Trump "in 2016 when he was a presidential candidate."[12]

37.    The Interviews were not provided in the scope of President Trump's employment by the federal government. The Interviews were prepared at President Trump's own volition and outside of his official duties.

38.    Woodward decided to capitalize upon President Trump's voice by releasing the Interview Sound Recordings of their interviews with President Trump in the form of an audiobook.

39.    SSI and Woodward conspired to, and did, collate and cobble together more than eight hours of "raw" interviews with President Trump. Without President Trump's permission, on October 25, 2022, Defendants released the recordings as an audiobook dubbed *The Trump Tapes: Bob Woodward's Twenty Interviews with President Donald Trump* ("Audiobook").[13]

40.    The Defendants unilaterally proceeded with such publication knowing that President Trump's voice is one of the most recognizable voices in the world and hearing his words from his mouth or as directly articulated by him, is much more valuable and marketable than Woodward's interpretation of the interviews in *Rage*.

41.    Indeed, amid the publication of *The Trump Tapes,* Woodward began advertising President Trump's voice, stating that "[h]earing Trump speak is a completely different experience to

---

[12] https://www.simonandschuster.com/p/the-trump-tapes
[13] ISBN13: 9781797124735

reading the transcripts or listening to snatches of interviews on television or the internet,"[14] and describing President Trump's voice as "the most recognizable voice in the world, perhaps."[15]

42.     Moreover, Paramount, SSI, and Woodward proceeded with such publication despite knowing that President Trump had consented to being recorded only for the purposes of "the book," namely *Rage*, and never consented to release of any audio recording, inclusive of the Interview Sound Recordings.  The same has been released, but without accounting to President Trump.

43.     SSI credits on the Audiobook on Fig 1 below admit President Trump's rights in stating "Read by Donald J. Trump and Bob Woodward." And yet, to date, President Trump has received no compensation in connection with said work.

---

[14] https://www.simonandschuster.com/books/The-Trump-Tapes/Bob-Woodward/9781797124735
[15] https://www.youtube.com/watch?v=CzA2YX1y8E4







# The Trump Tapes

Bob Woodward's Twenty Interviews with President Donald Trump

By Bob Woodward

Read by Donald J. Trump and Bob Woodward

Unabridged Audio Download

LIST PRICE $24.99
PRICE MAY VARY BY RETAILER

 

*Fig 1*

44.     Online sites where the Audiobook can be purchased credit President Trump as author and "Narrator," recognizing that he has rights in the publication. See Fig 2. And yet, to date, President Trump has received no compensation in connection with said work.



Fig. 2

45.     On November 11, 2022, Paramount, SSI, and Woodward released a CD version of the Audiobook.[16] On January 17, 2023, SSI and Woodward released a paperback[17] and e-book[18] version of the Audiobook (the CD, paperback, and e-book collectively are referred to herein as "Derivative Works"). And yet, to date, President Trump has received no compensation in connection with said work.

---

[16] ISBN13: 9781797124728
[17] ISBN13: 9781668028148
[18] ISBN13: 9781668030981

***Woodward Sought and President Trump Granted a License of Limited Scope***

46.     During the Interviews, President Trump repeatedly stated to Woodward, in the presence of others, that he was agreeing to be recorded for the _sole purpose_ of Woodward being able to write a single book. Woodward agreed he had only a limited license as to these recordings.

47.     President Trump made Woodward aware on multiple occasions, both on and off the record, of the nature of the limited license to any recordings, therefore retaining for himself the commercialization and all other rights to the narration. At no time did President Trump ever relinquish such rights or license.

48.     Notably, the Interviews reflect that Woodward was prone to exercising his own discretion in recording President Trump, despite the foregoing limitations instituted by President Trump regarding recording. For instance, several minutes into Interview 8, Woodward says "I'm going to turn on my recorder," failing to tell President Trump that the recording had already begun.

49.     Interview 4 recorded at Mar-A-Lago on December 30, 2019, clearly manifests the understanding between President Trump and Woodward that Woodward's rights were limited and that the parties intended that the copyright of any recordings would remain with President Trump. At 3:34:37, Woodward confirms the recording is being taken for "the book," and both President Trump and Hogan Gidley confirm the scope and limitations of the license:

> **Woodward**: On the record for the book, unless you—
> **Trump**:       For the book only, right? Only for the book.
> **Woodward**: The book only, yeah, I'm not—
> **Trump**: For the book only, right? So there's no—
> **Gidley**: Right. So there's no stories coming out, okay.

50.     Similarly, at minute 2:25 of Interview 9, Woodward starts the interview acknowledging the mutual understanding of the scope and limitation of the license:

**Woodward**: This again is for the book to come out before the Election.

51.     At no time did Woodward request from President Trump that he expand the subject license or furnish a release to use the Interview Sound Recordings for an audiobook or any other derivative work, as is customary in the book publishing and recording industries. President Trump told Woodward numerous times that the Interviews were to be used by Woodward—and Woodward only—for the sole purpose of accurately quoting President Trump for the "written word," i.e., *Rage*, and not for any other purpose, including providing, marketing, or selling the Interviews to the public, press or the media, in any way, shape, or form.

52.     President Trump never conveyed any copyright in his material, nor did he ever expand the scope of the license given.

53.     Woodward appears to have had no intention to release an audiobook when initially recording President Trump; such a decision arose much later, as a profit-making exercise. Woodward has admitted as such in stating that it was not in keeping with industry standards to release such interview tapes; and yet, he "decided to take this unusual step of releasing these recordings after relistening in full to all 20 interviews."[19]

54.     If Woodward intended to create an oral history in which he could claim sole rights, despite the Compendium, then according to best industry practices, he would have had President Trump as the participant sign over his rights as part of the standard procedures of conducting the interview, after each recording or at the end of the last interview. Woodward did not adhere to this standard and, as such, failed to acquire sole rights.

---

[19] https://www.simonandschuster.com/books/The-Trump-Tapes/Bob-Woodward/9781797124735

55.     While Woodward and SSI have admitted openly that President Trump has a copyright interest in the work by crediting him as a reader on the Audiobook and the CD, they have never accounted to him in any manner whatsoever for the Audiobook and the Derivative Works.

**Sales and Issuance of Certificate of Registration**

56.     Published sources indicate *Fear* sold more than two (2) million copies, which is the minimum number of copies that the Audiotape and derivative works is estimated to sell or have sold. Based upon the purchase price of the Audiotape, $24.99, the damages President Trump has sustained due to the actions of the Defendants as set forth herein are estimated to be at least $49,980,000.00, exclusive of punitive damages, attorney's fees, and costs.

57.     During the course of this lawsuit, the United States Copyright Office has registered Mr. Trump and Defendant Mr. Woodward as co-authors, i.e. co-claimants, of the work. The sound recording and text has been assigned a copyright Registration Number SR0000975712 and bears an effective date of registration of February 28, 2023. A true and correct copy of the Certificate of Registration is attached hereto as **Exhibit A**.

**COUNT I**
**DECLARATORY RELIEF REGARDING OWNERSHIP OF COPYRIGHTS**
**(Pursuant to 28 U.S.C. §§ 2201, et seq.)**
**(SSI, WOODWARD, PARAMOUNT)**

58.     President Trump repeats and reincorporates by reference the allegations in Paragraphs 1 through 57 as though fully set forth herein.

59.     This claim arises under the declaratory judgment provision of 28 U.S.C. § 2201 and § 2202 and under the Copyright Laws of the United States, 17 U.S.C. §§ 101 et. seq.

60.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of declaratory relief.

61.     An actual and justifiable controversy exists sufficient for this Court to declare the rights and remedies of the parties in that there is a dispute between President Trump and the Defendants concerning their respective rights and interests in the Interview Sound Recordings, Audiobook, and Derivative Works at issue.

62.     President Trump maintains he has an authorship and copyright interest in the Interview Sound Recordings, Audiobook, and Derivative Works, which rights have been recognized by the Copyright Office during this litigation. *See* Certificate of Registration at Exhibit A (acknowledging joint authorship status).

63.     Meanwhile, Woodward has consistently claimed, and still maintains, that he is the original and sole author and copyright owner thereof.

64.     Simultaneously, Woodward claims that the statutory preclusion against the copyright of government works apply here as justification for non-payment.

65.     A judicial declaration is necessary so that President Trump may ascertain his rights regarding the rights and interests in the Interview Sound Recordings, Audiobook, and Derivative Works.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP respectfully requests that the Court grant the following relief against the Defendants in this matter:

(a)   Enter declaratory judgment adjudging that President Trump is, at minimum, the joint author and copyright owner in the Interview Sound Recordings, Audiobook, and Derivative Works at issue, as reflected in the Certificate of Registration attached hereto, and therefore is entitled to the pro rata revenues arising from the exploitation of such works;

(b) In the alternative, enter declaratory judgment adjudging that President Trump has a copyright interest in his responses in the Interview Sound Recordings, Audiobook, and Derivative Works at issue, in accordance with, *inter alia*, the established practices of the U.S. Copyright office (Compendium Third Edition) and therefore is entitled to the pro rata revenues arising from the exploitation of such works;

(c) Award of compensatory, punitive damages and disgorgement of Defendants of at minimum, $49,980,000.00;

(d) Order the Defendants to pay to President Trump all fees, expenses, and costs associated with this action;

(e) Order the Defendants to pay to President Trump all pre- and post-judgment interest on his damages; and

(f) Award such other and further relief as the Court deems just, proper, and equitable.

## COUNT II
## ACCOUNTING
## (SSI, WOODWARD, PARAMOUNT)

66.     President Trump realleges and incorporates the allegations in Paragraphs 1 through 65 above as though fully set forth herein.

67.     Defendants have been and are engaged in the intentional and continued exploitation of the Interview Sound Recordings, Audiobook, and Derivative Works at issue.

68.     Defendants unjustly have the sole and exclusive control over the books and records that establish the revenues and royalties, as applicable, for the Interview Sound Recordings, Audiobook, and Derivative Works at issue are to be calculated.

69.     Based upon Defendants' position of exclusive control over such books and records, the Defendants owe to President Trump a duty to account and pay all applicable revenues on sales in connection with the Interview Sound Recordings, Audiobook, and Derivative Works at issue.

70.     Upon information and belief, Defendants have not properly accounted to President Trump for income earned on the Interview Sound Recordings, Audiobook, and Derivative Works at issue.

71.     An accounting is necessary because Defendants have erroneously and unlawfully failed to recognize President Trump's rights and must account to him for the income derived from exploitation of the Interview Sound Recordings, Audiobook, and Derivative Works at issue.

72.     An accounting is also necessary and appropriate under the circumstances since the precise amount of money due to President Trump is unknown and cannot be ascertained without an accounting.

73.     President Trump has no adequate remedy at law.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter an order declaring that the actions of the Defendants, SIMON & SCHUSTER, INC., ROBERT WOODWARD, and PARAMOUNT GLOBAL entitle President Trump to an accounting of all income and profits derived from the Interview Sound Recordings, Audiobook, and Derivative Works, for compensatory damages, prejudgment interest, post-judgment interest, attorney's fees, costs of the action, and such other relief as the Court deems appropriate.

## COUNT III
## UNJUST ENRICHMENT
## (WOODWARD)

74.     President Trump realleges and incorporates the allegations above in Paragraphs 1 through 57 as though fully set forth herein.

75.     This is an action for unjust enrichment against Woodward, pled in the alternative to the breach of contract claim set forth herein.

76.     President Trump has conferred a benefit upon Woodward by engaging with him in the Interviews and allowing recordation of the Interview Sound Recordings in connection with a singular book, which benefit Woodward accepted.

77.     Woodward has exploited the Interview Sound Recordings to enrich himself, as he converted the Interview Sound Recordings into an unauthorized Audiobook and Derivative Works through which he has derived and received the benefit of revenues, fees, royalties, and other consideration.

78.     Woodward has directly profited, and continues to profit, from such benefit without accounting to and compensating President Trump, and without the authority or consent of the President Trump.

79.     Woodward has failed to acknowledge or cite to President Trump's contributions to the Audiobook and all Derivative Works, instead harvesting all the benefit for himself and his publisher, SSI.

80.     It is inequitable and not in good conscience that the Woodward continue to reap such benefits from President Trump without compensating President Trump for the value of monies received in connection with the Audiobook and all Derivative Works.

81.     Woodward's receipt of the benefits and privilege that President Trump has conferred without paying the revenues and other charges owing to President Trump in return for those benefits and privileges constitutes unjust enrichment and has damaged President Trump.

82.     It would be entirely inequitable for Woodward to retain any benefit without paying the value of any monies, including but not limited to revenues and other fees, generated from the Audiobook and all Derivative Works.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter a judgment against the Defendant, ROBERT WOODWARD, for damages, together with costs, pre-judgment interest, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT
## (SSI)

83.     President Trump realleges and incorporates the allegations above in Paragraphs 1 through 57 as though fully set forth herein.

84.     This is an action for unjust enrichment against SSI.

85.     President Trump has conferred a benefit upon SSI through SSI's acquisition of the Interview Sound Recordings, which benefit SSI accepted.

86.     SSI has exploited the Interview Sound Recordings to enrich itself, as it converted and facilitated the conversion of the Interview Sound Recordings into an unauthorized Audiobook and Derivative Works through which SSI has derived and received the benefit of revenues, fees, royalties, and other consideration.

87.     SSI has directly profited, and continues to profit, from such benefit without accounting to and compensating President Trump, and without the authority or consent of the President Trump.

88.     SSI has failed to acknowledge or cite to President Trump's contributions to the Audiobook and all Derivative Works, instead harvesting all the benefit for itself, its parent company Paramount, and its author Woodward.

89.     It is inequitable and not in good conscience that SSI continue to reap such benefits from President Trump without compensating President Trump for the value of monies received in connection with the Audiobook and all Derivative Works.

90.     SSI's receipt of the benefits and privilege that President Trump has conferred without paying the revenues and other charges owing to President Trump in return for those benefits and privileges constitutes unjust enrichment and has damaged President Trump.

91.     It would be entirely inequitable for SSI to retain any benefit without paying the value of any monies, including but not limited to revenues and other fees, generated from the Audiobook and all Derivative Works.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter a judgment against the Defendant, SIMON & SCHUSTER, INC. for damages, together with costs, pre-judgment interest, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT V
## UNJUST ENRICHMENT
## (PARAMOUNT)

92.    President Trump realleges and incorporates the allegations above in Paragraphs 1 through 57 as though fully set forth herein.

93.    This is an action for unjust enrichment against Paramount.

94.    President Trump has conferred a benefit upon Paramount through SSI's acquisition of the Interview Sound Recordings, which benefit Paramount accepted.

95.    Paramount has exploited the Interview Sound Recordings to enrich itself, as it converted and facilitated the conversion of the Interview Sound Recordings into an unauthorized Audiobook and Derivative Works through which Paramount has derived and received the benefit of revenues, fees, royalties, and other consideration.

96.    Paramount has directly profited, and continues to profit, from such benefit without accounting to and compensating President Trump, and without the authority or consent of the President Trump.

97.    Paramount has failed to acknowledge or cite to President Trump's contributions to the Audiobook and all Derivative Works, instead harvesting all the benefit for itself, its parent company Paramount, and its author Woodward.

98.    It is inequitable and not in good conscience that Paramount continue to reap such benefits from President Trump without compensating President Trump for the value of monies received in connection with the Audiobook and all Derivative Works.

99.     Paramount's receipt of the benefits and privilege that President Trump has conferred without paying the revenues and other charges owing to President Trump in return for those benefits and privileges constitutes unjust enrichment and has damaged President Trump.

100.    It would be entirely inequitable for Paramount to retain any benefit without paying the value of any monies, including but not limited to revenues and other fees, generated from the Audiobook and all Derivative Works.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter a judgment against the Defendant, PARAMOUNT GLOBAL for damages, together with costs, pre-judgment interest, attorney's fees, and such other and further relief that this Court deems just and proper.

## COUNT VI
## BREACH OF CONTRACT
## (WOODWARD)

101.    President Trump realleges and incorporates the allegations above in Paragraphs 1 through 57 as though fully set forth herein.

102.    President Trump entered into an agreement whereby Woodward represented, warranted, and agreed that the Interview Sound Recordings could be utilized only for the purposes of writing a singular book.

103.    Woodward agreed he had a limited license to utilize the Interview Sound Recordings.

104.    Woodward assented and agreed to the terms of the limitations in such license.

105.    President Trump performed and gave the requested Interviews such that Woodward could write a singular book.

106.    Woodward breached the terms of the license upon publication of the Audiobook.

107.    Woodward further breached the terms of the license upon publication of the Derivative Works.

108.    Woodward has caused harm to President Trump arising from such breaches of the license.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter a judgment against the Defendant, ROBERT WOODWARD, for damages, together with costs, pre-judgment interest, attorney's fees, and such other and further relief that this Court deems just and proper.

**COUNT VII**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(WOODWARD)**

109.    President Trump realleges and incorporates the allegations above in Paragraphs 1 through 57 as though fully set forth herein.

110.    All contracts in Florida, including the license, impose an implied covenant of good faith and fair dealing upon the parties thereto. This covenant requires that the parties cooperate so that each party may obtain full benefit under the contract.

111.    Woodward impliedly promised to act in good faith and deal fairly in the course of performance of contractual obligations set forth herein.

112.    Woodward breached this covenant in numerous and diverse ways, by, *inter alia*,

    a.  Participating and otherwise being complicit in the publication of the Interview Sound Recordings via the Audiobook and the Derivative Works with knowledge of the agreement between him and President Trump regarding the limitations of any license granted to publish portions of the same;

    b.   Publication of the Interview Sound Recordings to capitalize and benefit from President Trump's voice to the detriment of President Trump's ability to publish his own voice given his position as author.

    c.   Publication of the Interview Sound Recordings with alteration in the spoken words and removal of context, to cast a poor light on President Trump and to mislead and deceive other customers into viewing him in a poor light.

113.     As a direct and proximate result thereof, Woodward has breached the implied covenants of good faith and fair dealing in the agreement between him and President Trump, and President Trump has suffered damage in an amount to be proven at trial.

WHEREFORE, the Plaintiff, President DONALD J. TRUMP, respectfully requests that this Court enter a judgment against the Defendant, ROBERT WOODWARD, for damages, together with costs, pre-judgment interest, attorney's fees, and such other and further relief that this Court deems just and proper.

## JURY DEMAND

President Trump hereby requests a trial by jury on all issues so triable.

## PUNITIVE DAMAGES

President Trump reserves the right to amend any of these causes of action and seek punitive damages if such is warranted after discovery.

Dated: November 13, 2023

                                                    **GS2 LAW PLLC**
By: _/s/ Robert Garson_
Robert Garson, (RG-1521)
Yanina Zilberman, *Pro Hac Vice Pending*
20803 Biscayne Blvd., #405
Aventura, Florida 33180
(305) 780-5212
rg@gs2law.com; yz@gs2law.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I caused a true and correct copy of this Amended

Complaint to be served by in this action.

                                               /s/ Robert Garson