# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

PRESIDENT DONALD J. TRUMP, 45th President
of the United States of America, in his individual
capacity,

               Plaintiff,

     v.

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD p.k.a. BOB
WOODWARD, an individual, and PARAMOUNT
GLOBAL, a Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS Corporation, a
Pennsylvania corporation f/k/a Westinghouse
Electric Corporation,

               Defendants.

3:23-cv-06883-PGG

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF PRESIDENT TRUMP'S SECOND AMENDED COMPLAINT

**WILLIAMS & CONNOLLY\***
Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5800
Email: kbaine@wc.com
      thentoff@wc.com

*\*Of counsel to Robert Woodward*

**DAVIS WRIGHT TREMAINE LLP**
Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
      lindasteinman@dwt.com
      jackbrowning@dwt.com
      leenacharlton@dwt.com

*Counsel for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................. 2

   I.   THE GOVERNMENT WORKS DOCTRINE BARS PRESIDENT TRUMP'S
      COPYRIGHT CLAIMS.............................................................................................. 2

   II.  The Work Is Not a Joint Work............................................................................ 7

   III. Woodward is the Dominant Author of the Work.............................................. 8

   IV. PRESIDENT TRUMP'S COPYRIGHT CLAIMS ARE BARRED BY FAIR USE ....... 11

   V.  THE STATE LAW CLAIMS ARE PREEMPTED........................................................ 12

   VI. PRESIDENT TRUMP FAILS TO STATE A BREACH OF CONTRACT CLAIM....... 14

   VII. PARAMOUNT IS NOT A PROPER PARTY ............................................................. 14

CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16 Case Duse, LLC v. Merkin,*
   791 F. 3d 247 (2d Cir. 2015) ........................................................................7, 9, 10

*Abdin v. CBS Broad., Inc.,*
   971 F.3d 57 (2d Cir. 2020) ..............................................................................4

*Andy Warhol Found. for the Visual Arts v. Goldsmith,*
   143 S.Ct. 1258 (2023) ......................................................................................12

*Blassingame v. Trump,*
   2023 WL 8291481 (D.C. Cir. Dec. 1, 2023) ....................................................3

*Brandon v. New Power Generation,*
   2017 WL 1437560 (S.D. Fla. Apr. 3, 2017) ....................................................8

*Brown v. Entm'r Merchs. Ass'n,*
   564 U.S. 786 (2011) ........................................................................................10

*Campbell v. Acuff-Rose Music,*
   510 U.S. 569 (1994) ........................................................................................12

*Childress v. Taylor,*
   945 F.2d 500 (2d Cir. 1991) ............................................................................10

*Cmty. For Creative Non-Violence v. Reid,*
   490 U.S. 730 (1989) ..........................................................................................9

*Cole v. Blackwell Fuller Music Publ'g, LLC,*
   2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ................................................13

*Effie Film, LLC v. Pomerance,*
   909 F.Supp.2d 273 (S.D.N.Y. 2012) ................................................................5

*Garcia v. Google,*
   786 F.3d 733 (9th Cir. 2014) (en banc) ............................................................9

*Georgia v. Public.Resource.Org, Inc.,*
   140 S. Ct. 1498 (2020) ................................................................................10, 11

*Harper & Row Publishers, Inc. v. Nation Enters.,*
   471 U.S. 539 (1985) ..........................................................................................6

*Harper & Row Publishers, Inc. v. Nation Enters.*,
   723 F.2d 195 (2d Cir. 1983)....................................................................................6

*In re Digital Music Antitrust Litig.*,
   812 F.Supp.2d 390 (S.D.N.Y. 2011)....................................................................14

*Jackson v. Roberts (In re Jackson)*,
   972 F.3d 25 (2d Cir. 2020).....................................................................................13

*McLaren v. Chicos FAS Inc.*,
   2010 WL 4615772,  (S.D.N.Y. Nov. 9, 2010)........................................................7

*Meyers v. Waverly Fabrics*,
   65 N.Y.2d 75 (1985)..............................................................................................14

*Pac and South. Co. v Duncan*,
   792 F.2d 1013 (11th Cir. 1986) ............................................................................10

*Peter F. Gaito Architecture v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010).......................................................................................3

*Pub. Affairs Assocs. v. Rickover*,
   268 F.Supp.444 (D.D.C. 1967) ...............................................................................5

*Shah v. NYP Holdings, Inc.*,
   2023 WL 266511 (N.D. Ill. Jan. 18, 2023) .............................................................7

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944)...............................................................................................10

*Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014).....................................................................................12

*Syrus v. Bennett*,
   455 F.App'x. 806 (10th Cir. 2011) ..........................................................................8

*United States v. Navarro*,
   2023 WL 2424625 (D.D.C. Mar. 9, 2023)..............................................................6

*Universal Instruments Corp. v. Micro Sys. Eng'g*,
   924 F.3d 32 (2d Cir. 2019).....................................................................................13

**Statutes**

17 U.S.C.
   § 301...............................................................................................................12, 13
   §§ 401-03 ........................................................................................................5, 6

**Other Authorities**

Compendium of U.S. Copyright Practices.............................................................................2, 4, 11

Rule 12(b)(6).........................................................................................................................4, 7

## PRELIMINARY STATEMENT

The pleadings in this action, the undisputed facts evident from *The Trump Tapes* and Plaintiff's own admissions establish that President Trump's claims are without merit and should be dismissed.  Nothing in President Trump's opposition changes the reality that his contributions to the Interviews were government works.  He does not dispute that he was the sitting president when he submitted to on-the-record Interviews with Bob Woodward concerning his administration's policies.  Those Interviews did not focus on private matters like business, "golf" or "be[ing] an equestrian" (Opp. 4), but critical matters of State facing the Nation that President Trump was grappling with during his last year in office.  And the federal government was actively engaged in the Interviews because, as President Trump admits, at least two high-ranking officials in charge of the Administration's communications strategy participated in various sessions, the President directed additional administration officials to talk to Woodward, and the President provided Woodward with sensitive government documents.  By any measure, President Trump was acting in the course of his presidential duties when Woodward interviewed him, and his contributions are unprotectable government works.

Plaintiff's own words defeat any argument to the contrary: "more than any other public official, the President is expected to respond to questions from the media that affect his ability to maintain the trust of the American people and effectively carry out his official duties…. [S]peaking to the press and communicating with the public is clearly conduct 'of the kind [a President] is employed to perform.'"  Dkt. 73 ("MTD"), Ex. D, 8, 19.  Since President Trump cannot own (or profit from) government works, his Copyright Claims fail as a matter of law under any theory of ownership.  His State Law Claims are preempted because they inevitably thwart the Copyright Act's prohibition on private ownership of government works.

1

President Trump's copyright registration for the Work does not change these conclusions. His registration directly conflicts with Woodward and S&S' respective text and sound recording registrations for the Work, which reflect their positions in this Motion.   Supplemental Declaration of Elizabeth A. McNamara dated December 6 ("McNamara Suppl. Decl.") Exs. E-F.[1]  The Copyright Office does "not conduct its own factual investigation" and "does not have the authority to adjudicate adverse or conflicting claims." Compendium §§ 309.2, 602.4(C), 1808; Ex. G.  Instead, it is this Court's responsibility to determine whether President Trump has any copyright interest in the Work.   And, here, any presumption of validity conferred by Plaintiff's registration is soundly rebutted by the pleadings, the Work itself, and President Trump's concessions.   Faithful application of the law to this record, which no amount of discovery can change, requires dismissal.  Finally, as a matter of policy, a decision requiring journalists to obtain licenses from presidents before disseminating on-the-record interviews about government affairs would radically change the relationship of the free press to the government and harm our democracy.

## ARGUMENT

## I.    THE GOVERNMENT WORKS DOCTRINE BARS THE COPYRIGHT CLAIMS

President Trump does not dispute that "[c]opyright protection…is not available for any work of the United States Government."  Opp. 2, (quoting 17 U.S.C. §105(a)).  Nor does he dispute that, if his contributions are deemed to be a government work, his Copyright Claims fail regardless of whether he asserts a joint or divided copyright interest.  MTD 15.   Instead, he rebuts an argument Defendants never made: namely that his status as President acts as an "automatic trigger" for application of the government works doctrine.  Opp. 2-3.  But Plaintiff

---

[1] Citations to the McNamara Suppl. Declaration are noted as "Ex. __, __."

fails to grapple with the undisputed record apparent from the SAC and the Work, which conclusively establishes that he acted within the scope of his office during the Interviews. Consequently, the government works doctrine bars his Copyright Claims as a matter of law.

Throughout history, presidents have advanced and explained their policies through interviews with journalists. As the D.C. Circuit recently recognized, and President Trump previously confirmed, the "bully pulpit" is "an everyday tool of the presidency." *Blassingame v. Trump*, 2023 WL 8291481, at *10 (D.C. Cir. Dec. 1, 2023); Ex. D, 8, 19. And here Plaintiff sat for Interviews with Woodward, a political journalist who has covered every president since Nixon. Although President Trump downplays the significance of "who was present during the interviews" (Opp. 3), there is no dispute that a host of *federal employees* actively participated in the Interviews, including senior communications officers whose job it was to control the White House's messaging. MTD 12. Nor does President Trump dispute that he directed Administration officials to supplement his responses by sitting for follow-up interviews with Woodward. *Id*. Or that President Trump gave Woodward sensitive government documents, including official correspondence with Kim Jong Un. *Id*. He admits that he conducted certain Interviews in the Oval Office—the epicenter of executive power—and was almost always in the White House while speaking to Woodward. *Id*.; Garson Decl. ¶20. There is also no dispute that the Interviews focused on President Trump's actions as president, not his personal or business affairs. MTD 12. Since the elements of a government work are self-evident from the face of the SAC, the Work, and President Trump's own declaration, President Trump cannot state a valid copyright claim. *Peter F. Gaito Architecture v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) ("[T]he works…supersede and control contrary descriptions of them…including any contrary allegations…in the pleadings.").

3

Nothing in Plaintiff's opposition defeats the conclusion that the government works doctrine applies as a matter of law.  Neither his SAC—Plaintiff's third attempt—nor his opposition—his fourth—identifies any facts supporting the conclusory and implausible allegation that the Interviews were "not provided in the scope of President Trump's employment by the federal government." SAC ¶37.  Having tried and failed to state a claim so many times, Plaintiff has conclusively demonstrated that his claims are meritless and should be dismissed with prejudice.  Plaintiff tries to argue that the Work cannot be considered on a Rule 12(b)(6) motion because it "was the result of various editing processes."  Opp. 5-6.  This non-sequitur fails because the basic, relevant facts established by the Work—such as the identities of Interview participants or the Interviews' focus on the administration's policies—are beyond dispute and cannot be affected by disclosure of the full Interview tapes.  Not surprisingly, courts grant 12(b)(6) motions to dismiss meritless copyright claims based on facts found in published editions of the works in suit, without requiring disclosure of underlying drafts.  *See*, *e.g.*, *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 64 (2d Cir. 2020) (affirming dismissal based on as-broadcast episodes of *Star Trek Discovery*).

President Trump tries to fill the factual gap in his pleadings with his copyright registration (Opp. 6-7), but this administrative document does not defeat the government works doctrine.  Plaintiff's argument rests on the false assumption that the Copyright Office adjudicates legal issues and affirmatively decided his contributions were not government works.  To the contrary, the Copyright Office expressly avoids substantive legal analysis when registering works.  Its Compendium states that, "[o]rdinarily, the Office does not conduct investigations or make findings of fact to confirm the truth of any statement made in an application" and "does not adjudicate factual or legal disputes involving claims to copyright." Compendium §§309.2,

602.4(C), 1808.[2]    And it explicitly forewarns that "a registration does not extend to uncopyrightable materials that appears in a work of authorship," even if the registration does not identify uncopyrightable material. *Id*. at §504.1; MTD 14 (citing case law). Plaintiff cites no authority requiring the Court to defer to his registration on this point because there is none. It is the role of the Court—not the Copyright Office—to adjudicate the parties' competing claims. Even assuming *arguendo* that President Trump's registration did create a presumption against the application of the government works doctrine, it is easily rebutted by the facts that President Trump has already admitted. *See* II, *infra* (citing decisions rejecting registration's presumption of copyright validity and granting 12(b)(6) motion to dismiss).

Plaintiff fares no better with the law. He relies on *Pub. Affairs Assocs. v. Rickover,* 268 F.Supp.444 (D.D.C. 1967) to demand discovery. But *Rickover*, a case decided before *Iqbal/Twombly*, involved facts suggesting Admiral Rickover created his speeches in his private capacity, and the court was unable to determine whether he was acting as a government official from the pleadings or speeches themselves. *Id*. at 450. Here, the public character of President Trump's conduct is apparent from his own admissions in the SAC and elsewhere, as well as hundreds of pages in the Work. As the court stated in *Rickover*, "the duties of a high Government official should not be narrowly interpreted," and this Court should not define the scope of President Trump's office more narrowly than he himself has defined it. *Rickover*, 268 F.Supp. at 448-49; Ex. D, 8, 19.[3]    Equally unavailing is President Trump's out-of-context

---

[2] The Copyright Office reiterated in correspondence with S&S that "it does not have the authority to adjudicate adverse or conflicting claims submitted for registration." Ex. G. This correspondence, and the copyright registrations themselves, are subject to judicial notice as "action[s] of government bodies." *Effie Film, LLC v. Pomerance*, 909 F.Supp.2d 273, 298-99 (S.D.N.Y. 2012).

[3] There is also nothing "internally incongruous" about Woodward claiming a copyright in the Work (Opp. Br. 5) because Woodward consistently has argued that he is the sole owner of the copyrightable aspects of the Work (although President Trump's contributions are public-domain government works that can be excluded from Woodward's registration). Ex. E. Further, Plaintiff is wrong about 17 U.S.C. §403, which

quotation of a few lines from *Harper & Row Publishers, Inc. v. Nation Enters.*, 723 F.2d 195, 206 (2d Cir. 1983).  That decision, which was reversed by the Supreme Court, *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985), concerned a memoir President Ford wrote *after* leaving office.  The issue there was whether a former president can copyright memoirs recalling conversations that went unrecorded during his presidency.  Here, by contrast, the Interviews are government works because Woodward recorded them while Trump was in office and speaking as the sitting President.

Finally, President Trump claims that the Presidential Records Act ("PRA") defeats dismissal because it acts "as a functional exception to the Copyright Act and its government works" doctrine and permits presidents to retain ownership of purely "personal records" like "diaries [or] journals."  Opp. 12.  But the PRA covers the ownership of physical materials, a wholly distinct legal concept from copyright.  Nothing in the PRA or the Copyright Act indicates that the former operates as an exception to the latter.  The PRA was passed in response to President Nixon's efforts to hide misconduct by claiming private ownership of his papers and, consistent with the government works ethos, it ensures that all Presidential records are owned by the government.  *See, e.g.*, *United States v. Navarro*, 2023 WL 2424625, at *11 (D.D.C. Mar. 9, 2023).  The PRA does not authorize President Trump to profit from his contributions to interviews with journalists.  Nor can he seriously argue that his Interviews with a political journalist, conducted in the presence of administration officials, are "the functional equivalent of a diary or journal"—documents written by and for oneself.  Opp. 8.

In sum, the government works doctrine requires dismissal of the Copyright Claims.

---

relates to the burden of proof on innocent infringement and does not require disclosure of government works to enforce a copyright.  Opp. 5; 17 U.S.C. §§401-03.

## II.    THE WORK IS NOT A JOINT WORK

The Copyright Claims independently fail because President Trump does not plausibly claim that he is the Work's "joint author."  Plaintiff agrees that joint authors must show that "each of the putative co-authors...fully intended to be co-authors," *16 Case Duse, LLC v. Merkin*, 791 F. 3d 247, 255-56 (2d Cir. 2015), and that this intent must be formed at the time each party created his or her contribution.  MTD 16.  There can be no dispute that neither Woodward nor President Trump intended to be co-authors of the Work, especially when the Interviews were conducted.  Plaintiff affirmatively and expressly disavowed any such intent in two prior pleadings.  Dkt. 1, ¶47; Dkt. 32, ¶53.  The SAC  does *not* allege that either party mutually intended to create a joint work.  And the SAC confirms the exact opposite: it alleges that (i) Woodward "consistently claimed and still maintains" he is the sole owner (*id*. at ¶63); and (ii) neither President Trump nor Woodward conceived of the possibility of an audiobook at the time of the Interviews.  *Id*. at ¶¶35, 42, 53; *see also* MTD 15-17.

Plaintiff nevertheless argues he need not plead the elements of joint authorship because, once again, his copyright registration suffices.  He cites no law for this dubious proposition, which is utterly unsustainable now that both sides hold conflicting copyright registrations in the Work.  At best, President Trump's copyright registration "creates a rebuttable presumption" of joint authorship (Opp. Br. 10), and that presumption is destroyed by his affirmative pleadings that there never was any intent to be joint authors of an audiobook.  Courts grant Rule 12(b)(6) dismissal motions when the undisputed record overcomes the presumption of validity.  In *McLaren v. Chicos FAS Inc.*, a copyright plaintiff sought "to rely on the presumption of validity that attaches to a certificate of copyright [registration]," but the presumption was "rebutted" on a motion to dismiss "by showing that the registration is invalid as a matter of law…."  2010 WL 4615772, at *4 (S.D.N.Y. Nov. 9, 2010); *See also Shah v. NYP Holdings, Inc.*, 2023 WL 266511,

at *2-3 (N.D. Ill. Jan. 18, 2023) (holding that presumption of valid joint copyright was overcome on 12(b)(6) motion because plaintiff's "allegations fail to reveal any intent…to be joint authors"); *Syrus v. Bennett*, 455 F.App'x. 806, 809 (10th Cir. 2011) (holding that presumption of validity was overcome on the pleadings and affirming 12(b)(6) dismissal); *Brandon v. New Power Generation*, 2017 WL 1437560, at *5 (S.D. Fla. Apr. 3, 2017) (granting motion to dismiss notwithstanding copyright registration).

The Court should likewise reject Plaintiff's plea to ignore his own affirmatively pleaded factual admissions from previous complaints on the ground that there is no "direct contradiction" with the SAC. Opp. 10-13. It is difficult to imagine a more direct contradiction than pleadings asserting that "President Trump never sought to create a work of joint authorship, and in the hours of the Interviews, there is neither allusion to nor confirmation of such" (Dkt. 1, ¶47; Dkt. 32, ¶53) and the SAC's new allegation that "President Trump is, at minimum, the joint author…" SAC ¶65. As the Second Circuit has held, courts can and should reject such gamesmanship. MTD 16-17. And discovery would not be useful given what the record already establishes. President Trump's intent at the time of the Interviews was known to him when he filed this action. He represented to the Court, twice, that he "never sought to create a work of joint authorship" (Dkt. 1, ¶47; Dkt. 32, ¶53), and the SAC says nothing to the contrary. Since President Trump already knows his state of mind and conceded that he never intended to create a joint work, no amount of fact discovery can alter the conclusion that he is not a joint author.

For the reasons set forth above, President Trump's joint authorship claim is without merit.

## III.    WOODWARD IS THE WORK'S DOMINANT AUTHOR

President Trump also fails to rebut Defendants' showing, based on the undisputed record, that Plaintiff does not own a copyright interest in his answers because Woodward is the Work's

true author.  As a threshold matter, President Trump cannot bifurcate the dominant author analysis and perform it separately for the Interviews and the Work.  Courts in the Second Circuit determine the ownership of "raw…footage" (like the Interview recordings) by determining who "exercised…more decision making authority" in "the context of the project as a whole."  *16 Casa Duse*, 791 F.3d at 260.  The critical question, therefore, is who is the dominant author of the Work.[4]

The Court should conclude that Woodward is the dominant author for all the reasons set forth in the moving brief.  MTD 19-23.  President Trump demeans Woodward's making of the Interview recordings as a "secretarial" act (Opp. 16), but this elides the Supreme Court's "general rule" that "the author is the party who *actually creates the work*, that is, the person who *translates an idea* into a *fixed, tangible expression* entitled to copyright protection."  *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (emphasis added) (citing 17 U.S.C. §102).[5]  And while President Trump points to nebulous concepts like the "uniqueness of his voice," such contributions cannot position him as the "dominant author."  *Garcia v. Google,* 786 F.3d 733, 743-44 (9th Cir. 2014) (en banc) (holding that actress had no copyrightable interest in her performance in a film).[6]  No amount of discovery will change any of this.

President Trump discounts *16 Casa Duse* because it dealt with "filmmaking, not interviews" (Opp. 16), but no law distinguishes between movies, books or news reporting. *See,*

---

[4] The raw recordings were also never published or registered, so they cannot serve as a basis for the Copyright Claims.  MTD n.9.  Contrary to President Trump's suggestion (Opp. Br. 1), Defendants never waived their right to assert that claims based on Interview tapes (as opposed to the Work) fail for lack of registration.

[5] The Work also documents Woodward's thought process in structuring the Interviews.  Ex. A 1-3, MTD 4.

[6] On the other "dominant author" factors, Plaintiff does not deny the obvious fact that he was not a party to the agreements that gave rise to the Interviews, *i.e.*, the publishing agreements between S&S and Woodward for *Rage* and the Work.  SAC ¶¶30-35, 41-43.

*e.g.*, *Brown v. Entm'r Merchs. Ass'n*, 564 U.S. 786, 789 (2011) (declining to apply different standards to books, plays, videogames and movies).  *16 Casa Duse* thus encompasses all "collaborative works," regardless of medium, and books based on the author's interviews with third-parties are collaborative by definition.  More specifically, Woodward interviewed dozens of people, including President Trump, for *Rage* and the purpose of the exercise was to gather material from different sources to create a singular book.  MTD 4-7.  And, contrary to President Trump's suggestion that the copyright in the Interviews is divisible (Opp. 16-17), the questions and responses in raw interview transcripts are "inseparable" parts "of a unitary whole" because "they have little or no independent meaning standing alone."  *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991) (holding that "written text[s]" like a play are "often" comprised of "inseparable" parts); *cf. Pac and South. Co. v Duncan*, 792 F.2d 1013, 1014 n.1 (11th Cir. 1986). When "multiple individuals lay claim to the copyright in a single [non-joint] work, the dispositive inquiry is which of the putative authors is the 'dominant author.'"  *16 Casa Druse*, 791 F.3d at 260 (quoting *Childress*, 945 F.2d at 508); MTD __.

President Trump hides behind the Compendium (Opp. 14), but he overstates the deference owed to a "non-binding administrative manual."  *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020).[7]  The Compendium is only entitled to *Skidmore* deference— not even the higher *Chevron* standard—and courts thus "must follow it only to the extent it has the power to persuade."  *Id*.  Further, the Compendium admits that its persuasiveness on any given point "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give

---

[7] Plaintiff also incorrectly suggests that his registration gives rise to a presumption that he owns a copyright in his Interview answers.  His registration was obtained as joint author of the entire Work, not the exclusive copyright holder in his answers, and he provides no authority holding that the registration entitles him to a presumption of validity on every conceivable ownership theory.

it the power to persuade."  Compendium at p. 2 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Here, President Trump does not even try to argue that the Compendium's default rules on interviews are worth adopting, let alone why they should apply in the context of government works, nor can he seriously argue that the guidance is applicable here.  Critically, President Trump ignores Defendants' arguments that segregating copyright interests between questions and answers contravenes at least two categories of binding law: (i) precedents defining the dominant author as the sole author of a unitary creative project where there is no joint authorship, and (ii) the statutory prohibition on private ownership of Government Works.  MTD 9-23.  Nor does Plaintiff mention Defendants' strong policy rationales against stifling news reporting by granting public figures ownership interests in their interviews.  *Id*. at 21.

"Because…precedents answer the question before us,…any competing guidance in the Compendium [is] unpersuasive" and need not be followed.  *Public.Resource.Org.*, 140 S.Ct. at 1510.  The Court should reject President Trump's claim to be the sole owner of his Interview responses.

## IV.    PRESIDENT TRUMP'S COPYRIGHT CLAIMS ARE BARRED BY FAIR USE

Even if President Trump could establish copyright ownership, this is a case where fair use is so obvious that immediate dismissal is appropriate.  MTD 23-25.  His opposition relies on misrepresentations of the record and bad law.  Most glaring is the contention that "there is nothing before this Court to suggest the Defendants" added "extensive supplemental materials" to the Interviews.  Opp. 19.  The Work, however, indisputably uses the Interviews for the transformative and presumptively fair-use purpose of "commenting" upon and "criticizing" President Trump's statements during the Interviews—particularly through Woodward's 227

"commentaries," Introduction, Epilogue, and other original contributions. *Andy Warhol Found. for the Visual Arts v. Goldsmith*, 143 S.Ct. 1258, 1282 (2023). The in-depth commentary on President Trump's newsworthy statements about his presidency distinguishes this case from cases where tabloids exploited celebrity photographs in a non-transformative manner. Opp. 20 (citing *Monge v. Maya Magazines*, 688 F.3d 1164, 1173 (9th Cir. 2012)).

President Trump further suggests that "every commercial use of copyrighted material is…presumptively…unfair." Opp. 22 (quoting *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417, 450 (1984)). But the Supreme Court rejected this position: "Congress could not have intended…a rule" where "commerciality carried presumptive force against a finding of fairness…." *Campbell v. Acuff-Rose Music*, 510 U.S. 569, 584-85 (1994). Virtually all news reporting is "commercial" and that has never been found to preclude fair use. Finally, Plaintiff seeks to distinguish *Swatch* because it was a summary judgment case (Opp. 26), but summary judgment was granted to formalize a tentative judgment on the pleadings that dismissed the case for fair use, without discovery. *Swatch Grp. Mgmt. Servs. v. Bloomberg L.P.*, 756 F.3d 73, 79-80 (2d Cir. 2014). Nor does he provide any basis for his *ipse dixit* assertion that *Swatch* "is inapposite…because of the completely different nature of the interview." Opp. 17. This contention misses Defendants' point that fair use permits extensive use of the Interviews in the Work because, as per *Swatch*, "a speaker's demeanor, tone, and cadence can often elucidate his or her true beliefs far beyond what a stale transcript or summary can show." *Swatch*, 756 F.3d at 84.

## V.    THE STATE LAW CLAIMS ARE PREEMPTED

President Trump also fails to rebut Defendants' showing that his State Law claims are precluded by the independent doctrines of conflict preemption and express preemption under 17 U.S.C. §301. His principal argument against conflict preemption is simply that the Government

Works doctrine does not apply here.  Opp. 25.  But if it does, as Defendants have demonstrated, President Trump has failed to seriously dispute that enforcing his State Law Claims would thwart "the full purposes and objectives of Congress[']" statutory prohibition against allowing government officials to claim ownership of Government Works.  *Jackson v. Roberts (In re Jackson)*, 972 F.3d 25, 34 (2d Cir. 2020) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)).  Moreover, Plaintiff cannot evade conflict preemption by pretending that he is an ordinary "voiceover artist" to whom the Government Works exception does not apply. Opp. 26.

Having failed to offer a substantive argument that State Law Claims asserting President Trump "retain[ed] for himself the…rights to the narration" (SAC ¶47) do not conflict with the prohibition on private ownership of government works, President Trump has conceded the point. *See, e.g.*, *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument."); MTD 25-27.

Plaintiff's express preemption arguments under 17 U.S.C. §301 are also meritless.  He provides no authority to rebut the decisions cited by Defendants holding that the Copyright Act preempts run-of-the-mill unjust enrichment claims.  MTD 28 (citing cases).  And he fails to distinguish *Universal Instruments Corp. v. Micro Sys. Eng'g*, which also involved a claim that a use allegedly exceeded the scope of a license and held that the fact that two parties "are in contractual privity does nothing to change the fact that vindication of an exclusive right under the Copyright Act, read into a license by negative implication, is preempted by the Copyright Act."  924 F.3d 32, 49 (2d Cir. 2019).

13

## VI.    PRESIDENT TRUMP FAILS TO STATE A BREACH OF CONTRACT CLAIM

President Trump fares no better with breach of contract.  He does not dispute that the statute of frauds applies, but draws an illusory distinction between "allowances" and "prohibitions" to argue that Woodward could complete performance within one year.  Opp. 29.  This semantic contrast is not supported by authority and does not override caselaw holding that the statute of frauds bars enforcement of an analogous limitation against certain uses of copyrighted material because "it cannot be performed within one year…."  *Meyers v. Waverly Fabrics*, 65 N.Y.2d 75, 79 (1985).  Plaintiff also fails to address any of Defendants' arguments that his contract claims are inherently implausible.  MTD 29.  Finally, President Trump has abandoned his breach of covenant of fair dealing claim (Opp. 30, n. 14) and his promissory estoppel claim fails together with his doomed contract claim.  MTD 30.

## VII.    PARAMOUNT IS NOT A PROPER PARTY

President Trump fails to plausibly allege that Paramount had a "direct involvement in" the alleged infringement.  *In re Digital Music Antitrust Litig.*, 812 F.Supp.2d 390, 417–19 (S.D.N.Y. 2011).  As he tacitly concedes, the fact that Paramount was S&S's corporate parent does not suffice.  Plaintiff misleadingly cites one out-of-state case to suggest that establishing "day-to-day control" of S&S is enough.  Opp. 32 (quoting *Bennett v. Am. Online*, 2007 WL 2178317, at *6 (E.D. Mich. July 27, 2007)).  But even *if* such caselaw applied, he has not alleged a single fact *in his pleadings* to support this bare-boned contention.  At most, Plaintiff alleged that a parent-subsidiary relationship existed between the two entities, but that is categorically insufficient to demonstrate a "substantial and continuing connection" with the specific conduct alleged against S&S and Woodward.  MTD 31.

14

**CONCLUSION**

Defendants respectfully request that the Court dismiss the SAC with prejudice and award

other relief deemed just and proper.

Dated:  December 6, 2023

**DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena M. Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
        lindasteinman@dwt.com
        jackbrowning@dwt.com
        leenacharlton@dwt.com

*Attorneys for Robert Woodward, Simon*
*& Schuster, Inc. and Paramount Global*

**WILLIAMS & CONNOLLY\***

Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5800

Email: kbaine@wc.com
        thentoff@wc.com

*\*Of counsel to Robert Woodward*

15

## CERTIFICATION OF WORD COUNT

I hereby certify that this Memorandum of Law in Support of Defendants Rule 12(b)(6) Motion to Dismiss complies with the Order granting permission to file an oversized document, not to exceed 4,500 words.  Dkt. 54.

According to the word-processing system used to prepare this Motion to Dismiss for Failure to State a Claim the total word count for all printed text exclusive of the material omitted under Rule 7.1 is 4,500 words.

Dated: December 6, 2023

*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2023, I caused copies of the foregoing to be sent to counsel of record via ECF.

/s/ Elizabeth A. McNamara
Attorney