**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, 45th and 47th President of the United States, in his individual capacity,<br><br>       *Plaintiff*,<br><br>    v.<br><br>SIMON & SCHUSTER, INC., ROBERT WOODWARD, and PARAMOUNT GLOBAL,<br><br>       *Defendants*. | Case No. 1:23-cv-06883-PGG |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

INTRODUCTION ................................................................................................................ 2

PROCEDURAL HISTORY................................................................................................... 3

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT .................................................................................................................... 4

    I.    THE TAC CURES THE PURPORTED DEFECTS IN THE DECLARATORY JUDGMENT-COPYRIGHT CLAIM.................................................................................................. 4

        A.    The TAC Plausibly Alleges Joint Authorship ................................................ 4

           i.    Subjective Intent ................................................................................. 4

           ii.    Objective Indicia of Intent................................................................... 5

        B.    The TAC Plausibly Alleges an Independent Copyright Interest in Responses ............. 7

    II.    THE TAC PLAUSIBLY ADDS A COPYRIGHT INFRINGEMENT CLAIM........................... 8

    III.    THE TAC PLAUSIBLY ALLEGES FALSE ENDORSEMENT UNDER THE LANHAM ACT 9

    IV.    THE TAC CURES THE PURPORTED PREEMPTION DEFECTS IN STATE CLAIMS.. 10

        A.    President Trump Sufficiently Pleads Claims For Unjust Enrichment (Count IV)......... 11

        B.    President Trump Sufficiently Pleads Claims For Breach of Contract/Quasi-Contract (Count V) ..................................................................................................... 12

        C.    President Trump Sufficiently Pleads Claims For Accounting and Implied Covenant Claims (Counts III and VI) ............................................................................... 13

        D.    President Trump Sufficiently Pleads Claims For Misappropriation (Counts VIII and IX) 14

           i.    Choice-of-Law – Generally Applicable Law ............................................. 14

           ii.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies.............. 15

           iii.    Elements and Analysis—The TAC States Claims For Misappropriation ................ 15

        E.    President Trump Sufficiently Pleads A Claim For Fraud/Fraudulent Inducement (Count X) 17

           i.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies.............. 17

           ii.    Elements and Analysis—The TAC States A Claim For Fraud/Fraudulent Inducement ................................................................................................. 18

        F.    President Trump Sufficiently Pleads A Claim For Constructive Fraud (Count XI)...... 21

           i.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies.............. 21

           ii.    Elements and Analysis—The TAC States A Claim For Constructive Fraud ........... 21

G.    President Trump Sufficiently Pleads A Claim For Negligent Misrepresentation ......... 24

    i.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies .............. 24

    ii.    Elements and Analysis—The TAC States A Claim For Negligent Misrepresentation 24

CONCLUSION ...................................................................................................................... 25

**TABLE OF AUTHORITIES**

**CASES**

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) ........................................................................................ 7

*Alexander v. South Carolina State* Conf. of NAACP,
  602 U.S. 1 (2024) ....................................................................................................... 4

*All Pro Sports Camp, Inc. v. Walt Disney Co.*,
  727 So.2d 363 (Fla. 5th DCA 1999) ........................................................................... 21

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ................................................................................. 15

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
  258 F. Supp. 2d 315 (S.D.N.Y. 2003) ......................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................... 3

*Atlantic Nat'l Bank v. Vest*,
  480 So.2d 1328 (Fla. 2d DCA 1985) ........................................................................... 22

*Bingham v. Bingham*,
  11 So.3d 374 (Fla. 3d DCA 2009) ............................................................................... 22

*Block v. First Blood Assocs.*,
  988 F.2d 344 (2d Cir. 1993) ........................................................................................ 3

*Boisson v. Banian, Ltd.*,
  273 F.3d 262 (2d Cir. 2001) ........................................................................................ 6

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004) ........................................................................... 10, 11, 13

*Brown v. Ames*,
  201 F.3d 654 (5th Cir. 2000) ..................................................................................... 17

*Canal+ Image UK Ltd. v. Lutvak*,
  773 F. Supp. 2d 419 (S.D.N.Y. 2011) ......................................................................... 13

*Childress v. Taylor*,
  945 F.2d 500 (2d Cir. 1991) ........................................................................................ 5

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992) ........................................................................... 11, 12, 13

*Conley v. Gibson*,
  355 U.S. 41 (1957) ....................................................................................................... 4

*Coton v. Televised Visual X-Ography, Inc.,*
    740 F.Supp.2d 1299 (M.D. Fla. Sept. 16, 2010) ...................................................... 15

*Cummings v. Soul Train Holdings LLC,*
    67 F. Supp.3d 599 (S.D.N.Y. 2014) ....................................................................... 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003) ................................................................................................ 9

*Dziegielewski v. Scalero,*
    352 So.3d 931 (Fla. 5th DCA 2022) ................................................................. 19, 24

*Electra v. 59 Murray Enters., Inc.,*
    987 F.3d 233 (2d Cir. 2021) .................................................................................... 9

*Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.,*
    194 F.3d 1211 (11th Cir. 1999) .............................................................................. 7

*Facenda v. N.F.L. Films, Inc.,*
    542 F.3d 1007 (3d Cir. 2008) ................................................................................. 9

*Foman v. Davis,*
    371 U.S. 178 (1962) ..................................................................................... 2, 3, 6

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) .................................................................................. 6

*Gerena v. Korb,*
    617 F.3d 197 (2d Cir. 2010) .................................................................................. 14

*H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.,*
    171 F.Supp.2d 135 (S.D.N.Y. 2001) ...................................................................... 18

*Intellivision v. Microsoft Corp.,*
    2008 WL 3884382 (S.D.N.Y. Aug. 20, 2008)........................................................... 18

*Jackson v. Odenat,*
    972 F.3d 25 (2d Cir. 2020) ................................................................................... 11

*Jacobs v. Vaillancourt,*
    634 So.2d 667 (Fla. 2d DCA 1994) ....................................................................... 22

*Jorgensen v. Epic/Sony Recs.,*
    351 F.3d 46 (2d Cir. 2003) ..................................................................................... 6

*Kesner v. Dow Jones & Co., Inc.,*
    515 F.Supp.3d 149 (S.D.N.Y. 2021) .................................................................. 14, 15

*Kinsey v. N.Y. Times Co.,*
    991 F.3d 171 (2d Cir. 2021) .................................................................................. 17

*Korman v. Iglesias,*
    736 F. Supp. 261 (S.D. Fla. 1990) ........................................................................ 20

*Lehrman v. Lovo, Inc.*,
   2025 U.S. Dist. LEXIS 13146 (S.D.N.Y. 2025) ........................................................... 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   739 F.3d 45 (2d Cir. 2013) ........................................................................................ 18

*Marshall v. New Kids on the Block P'ship*,
   780 F. Supp. 1005 (S.D.N.Y. 1991) ............................................................................. 8

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*,
   380 F.3d 624 (2d Cir. 2004) ........................................................................................ 6

*Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*,
   137 F.Supp.3d 430 (S.D.N.Y. 2015) ........................................................................... 14

*Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*,
   290 F.3d 98 (2d Cir. 2002) .......................................................................................... 6

*ML Genius Media Grp., Inc. v. Google LLC*,
   2020 WL 5553638 (S.D.N.Y. Sept. 16, 2020) ....................................................... 10, 12

*Molina v. Phoenix Sound, Inc.*,
   297 A.D.2d 595 (1st Dep't 2002) ............................................................................... 16

*Montz v. Pilgrim Films & Television, Inc.*,
   649 F.3d 975 (9th Cir. 2011) ..................................................................................... 12

*Passelaigue v. Getty Images (US), Inc.*,
   2018 WL 1156011 (S.D.N.Y. March 1, 2018) ............................................................. 17

*Polaroid Corp. v. Polarad Elecs. Corp.*,
   287 F.2d 492 (2d Cir. 1961) ........................................................................................ 9

*ProCD, Inc. v. Zeidenberg*,
   86 F.3d 1447 (7th Cir. 1996) ..................................................................................... 12

*Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*,
   49 F. Supp. 3d 385 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43 (2d Cir. 2016) ............... 18

*Ricciuti v. N.Y.C. Transit Auth.*,
   941 F.2d 119 (2d Cir. 1991) ........................................................................................ 4

*Roberts v. Bliss*,
   229 F. Supp. 3d 240 (S.D.N.Y. 2017) ........................................................................ 10

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ................................................................................. 14, 15

*Rutstein v. Viva 5 Grp., LLC*,
   766 F. Supp. 3d 1189 (M.D. Fla. 2025) ...................................................................... 21

*Salinger v. Random House,* Inc.,
   811 F.2d 90 (2d Cir. 1987) .......................................................................................... 8

*Schaeffer v. Village of Ossining,*
    58 F.3d 48 (2d Cir. 1995) ................................................................................... 14

*Southeast Bank, N.A. v. Lawrence,*
    66 N.Y.2d 910 (1985) ....................................................................................... 15

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber,*
    407 F.3d 34 (2d Cir. 2005) ................................................................................. 17

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,*
    808 F. Supp. 2d 634 (S.D.N.Y. 2011) ................................................................. 7

*Taquino v. Teledyne Monarch Rubber,*
    893 F.2d 1488 (5th Cir. 1990) ........................................................................... 12

*Tardif v. People for the Ethical Treatment of Animals,*
    2010 WL 3860733 (M.D. Fla. Sept. 29, 2010) ................................................. 22

*Thomson v. Larson,*
    147 F.3d 195 (2d Cir. 1998) ............................................................................ 4, 5

*Wrench LLC v. Taco Bell Corp.,*
    256 F.3d 446 (6th Cir. 2001) ............................................................................ 12

**STATUTES**

15 U.S.C. § 1125(a)(1)(A) .......................................................................................... 9

17 U.S.C. § 101 ............................................................................................... 2, 5, 6

17 U.S.C. § 301 ............................................................................................... 2, 10

17 U.S.C. § 410(c) .................................................................................................. 5

17 U.S.C. § 501 ..................................................................................................... 8

28 U.S.C. § 1404(a) ............................................................................................... 14

28 U.S.C. § 1406(a) ........................................................................................... 14, 15

Fla. Stat. § 540.08 ........................................................................................... 14, 16

**OTHER AUTHORITIES**

Compendium § 808.3(A) ...................................................................................... 6, 8

H.R. Rep. No. 94-1476 at 132, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748 (1976) ...... 21

**RULES**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 3

Fed. R. Civ. P. 15(a)(2) ..................................................................................... 2, 3

**TREATISES**

Restatement (Second) of Torts § 652C (1977) (October 2024 update) ......................................17

Restatement (Third) of Unfair Competition § 46, cmt. I (1995) (October 2024 update) .............17

**PRELIMINARY STATEMENT**

Plaintiff, President Donald J. Trump ("President Trump"), respectfully submits this memorandum of law in support of his motion for leave to file a Third Amended Complaint ("TAC") (attached as Exhibit 1). This case is unique because the Plaintiff, President Trump, is a world-renowned figure whose name, voice, and persona carry inherent commercial value, built over decades, through his business acumen, media presence, and political leadership. The President's voice is one of the most recognizable in the world. His expressive style, modulated through distinctive tone, timbre, pause, pace, and unconventional word choice, forms the core appeal of the derivative products.

There is no doubt that President Trump's voice was used extensively in the Audiobook and Derivative Works. Defendants, through Woodward, represented that the recordings would serve solely as the basis for a particular print derivative work "Rage." Defendants breached that representation by exploiting the recordings for unauthorized commercial gain in audio formats, as President Trump was prominently listed as a contributor and narrator, falsely implying his sponsorship and endorsement.  At least tens of millions of dollars have been generated from these works, yet President Trump has received not a cent in compensation or royalties. If this type of exploitation could happen to the President of the United States, it could happen to the many voice actors and creatives whose contributions could be equally disregarded, minimized, and appropriated.

These facts demonstrate a blatant exploitation that demands judicial redress. The TAC cures all suggested deficiencies identified in the Court's Opinion by pleading detailed allegations of mutual intent, fixation authority, originality, and extra elements distinguishing state claims

from copyright infringement, while adding claims under the Lanham Act (false endorsement), and Florida law (for misappropriation of the right of publicity, fraud/fraudulent inducement, constructive fraud (pleaded in the alternative) and negligent misrepresentation (also pleaded in the alternative)   These claims provide independent bases for relief that further vindicate President Trump's rights without the shadow of copyright preemption.[1]

## INTRODUCTION

Plaintiff President Donald J. Trump respectfully moves pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a Third Amended Complaint ("TAC"). The proposed TAC, attached hereto as Exhibit A, directly addresses and cures the purported deficiencies identified in the Court's July 18, 2025, Memorandum Opinion and Order (the "Opinion") granting Defendants' motion to dismiss the Second Amended Complaint ("SAC"). Leave to amend should be freely granted under Rule 15(a)(2), as the amendments are not futile, made in good faith, without undue delay or prejudice to Defendants, and in the interests of justice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Opinion dismissed the SAC as the Court ruled that Plaintiff did not plausibly allege:

i. Joint authorship under 17 U.S.C. § 101 due to insufficient mutual intent and objective indicia (Opinion at 17-28);

ii. An independent copyright interest in Plaintiff's interview responses for lack of fixation under his authority and non-copyrightability (Opinion at 29-46); and

iii. Non-preempted state law claims under 17 U.S.C. § 301, lacking "extra elements" making them qualitatively different from infringement claims (Opinion at 47-57).

---

[1] President Trump acknowledges that the Court previously dismissed, in President Trump's view in error, his federal claims for failure to state a claim and held that his claims arising under state law are preempted by the Copyright Act.  ECF 83.  He nevertheless repleads those claims to preserve those issues on appeal.

The TAC addresses these issues through new, specific factual allegations drawn from the record, emphasizing mutual collaboration (TAC ¶¶5-9), Plaintiff's control over fixation (TAC ¶¶5–9), originality of responses with detailed categories (TAC ¶¶116–129), and additional elements of deceit, fiduciary duties, and breach of trust (TAC ¶¶130, 149, 165, 169, 176(c)). These amendments render the claims plausible under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), warranting leave to amend.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on January 30, 2023, in the Northern District of Florida, ECF 1, asserting copyright declaratory judgment and state law claims. The case was transferred to this Court on July 19, 2023. ECF 48. Plaintiff filed the Amended Complaint on April 10, 2023, and the SAC on November 13, 2023. Defendants moved to dismiss the SAC under Rule 12(b)(6). On July 18, 2025, the Court granted the motion but expressly granted leave to amend, noting that "it cannot be said at this stage that any amendment would be futile." (Opinion at 58.) Plaintiff now seeks to file the TAC to cure the purported identified defects and add the Lanham Act and Florida law claims.

## LEGAL STANDARD

Under Rule 15(a)(2), leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendments are favored to promote resolution on the merits, absent futility, undue delay, bad faith, or prejudice. *Foman*, 371 U.S. at 182; *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). Futility is assessed under the Rule 12(b)(6) standard: the amended pleading must state a plausible claim, accepting facts as true and drawing inferences in plaintiff's favor. *Ashcroft*, 556 U.S. at 678; *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d

119, 123 (2d Cir. 1991) ("the court should not dismiss the complaint for failure to state a claim

"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Here, there is no undue delay, as the filing was made promptly post-Opinion and in

accordance with the so-ordered extension of the court; no bad faith, as the amendments are

directly responsive to the Opinion; no prejudice, as discovery has not yet commenced, and

Defendants can respond. Justice requires amendment to allow merits adjudication on this case,

which turns on its novel facts and circumstances.

**ARGUMENT**

**I.    THE TAC CURES THE PURPORTED DEFECTS IN THE DECLARATORY JUDGMENT-COPYRIGHT CLAIM**

   **A.    The TAC Plausibly Alleges Joint Authorship**

The Opinion found no joint authorship[2] in the underlying work due to purported

insufficient pleading of mutual intent for an "integrated unit" citing *Thomson v. Larson*, 147 F.3d

195, 199 (2d Cir. 1998), discounting subjective intent as contradictory and making arguably

factual determinations on objective indicia such as control, billing and registrations as being

unfavorable to President Trump's position (Opinion at 17-28).

The TAC adds detailed allegations of mutual intent and indicia:

   i.    Subjective Intent

---

[2] As a matter of concern, the Defendants have never made the entire raw recordings available to the Plaintiff, and the Court made a determination on a work absent the full transcript. That the recordings have never been made available should lead to adverse inferences being drawn against the Defense. *See Alexander v. South Carolina State* Conf. of NAACP, 602 U.S. 1, 36 (2024) ("factfinder may draw an adverse inference when a party fails to produce highly probative evidence that [the party] could easily obtain if in fact such evidence exists.")

The amended paragraphs plead explicit mutual intent from the outset: "The Interviews were conducted with the mutual intent that the contributions of President Trump and Woodward be merged into an inseparable or interdependent unitary whole qualifying as a joint work under 17 U.S.C. § 101, from which Woodward would produce one print derivative" (TAC ¶5). The amended pleading details discussions on "format, topics, and integration" for a "cohesive narrative" (TAC ¶6), inferable from conduct following the dicta in *Childress v. Taylor*, 945 F.2d 500, 505 (2d Cir. 1991). These amendments allay the Court's fears of inconsistencies by providing fresh, consistent facts that do not rely on prior pleadings. President Trump's "active participation" and "guidance on recording" (TAC ¶7) reflect shared purpose, rendering intent eminently plausible.

ii.   Objective Indicia of Intent

The allegations emphasize President Trump's "control over interview settings" and "guidance on equipment" (TAC ¶92), showing shared decision-making in accordance with *Thomson*, 147 F.3d at 202-03. Further, the TAC demonstrates the extensive responses as being standalone "core content" often guiding the narrative and being integrated with questions, (TAC ¶6) demonstrating their interdependence. Credit or billing as "Narrated" or "Read by" is reframed in its proper context as powerful corroborative evidence of co-authorship, which is admitted by the Defendants (TAC ¶¶52-3).

The joint registration (TAC ¶17, 144), issued by the U.S. Copyright Office on February 28, 2023 (Registration No. SR0000975712), listing President Trump and Woodward as co-authors, creates prima facie evidence of the copyright's validity and the facts stated therein, including joint ownership (17 U.S.C. § 410(c)). This presumption shifts the burden to Defendants to rebut

with evidence, making dismissal improper at this stage. See *Boisson v. Banian, Ltd*., 273 F.3d 262, 268 (2d Cir. 2001) (presumption applies to ownership and validity). As the Second Circuit held in *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc*., 380 F.3d 624, 643 (2d Cir. 2004), copyright registrations provide prima facie evidence, but where conflicts arise, such as competing claims of authorship or ownership, courts must conduct factual inquiries to resolve them. In *Graham*, registrations listing Martha Graham as author presumed her ownership, but evidence of work-for-hire status required remand for fact-finding. Similarly, here, the registration presumes joint authorship based on the Office's review (Compendium § 808.3(A), recognizing interviewer-interviewee co-ownership absent transfer).

Defendants' assertion of Woodward's sole authorship creates a conflict, but under *Graham*, resolution of this issue demands discovery and evidence, not summary dismissal (*see also Medforms, Inc. v. Healthcare Mgmt. Sols., Inc*., 290 F.3d 98, 109 (2d Cir. 2002) (registration "constitutes prima facie evidence of the valid ownership of a copyright," requiring rebuttal with "persuasive evidence" rather than dismissal); *Jorgensen v. Epic/Sony Recs*., 351 F.3d 46, 56 (2d Cir. 2003) (presumption rebuttable but "persuasive evidence" needed, precluding dismissal where facts are disputed). This presumption bolsters the TAC's amended allegations of mutual intent (TAC ¶5, 82, 87) and objective indicia (TAC ¶¶6-8), curing the Opinion's concerns (Opinion at 25-28). In a vital update to the SAC, the TAC's registration evidence makes joint authorship plausible, as conflicts "requiring facts" preclude a judicial holding of futility. *See Foman*, 371 U.S. at 182.

**B.**    **The TAC Plausibly Alleges an Independent Copyright Interest in Responses**

The Court's Opinion denied protection for purported lack of fixation under Plaintiff's authority (17 U.S.C. § 101; *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015)) and non-copyrightability as inseparable "ideas" in a "unified whole" (*16 Casa Duse, LLC v. Merkin*, 791 F.3d 247 (2d Cir. 2015); Opinion at 29-46).

The TAC remedies this Court's concerns by directly alleging Plaintiff's "consenting to and directing the recordings," including his providing "guidance on recording equipment and settings " (TAC ¶¶92, 114). This is distinguishable from *Garcia* (no control by Plaintiff) and satisfies *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634 (S.D.N.Y. 2011).

The TAC's discussion of independent copyright in responses (TAC ¶¶55, 116-129) emphasizes the originality of President Trump's spoken contributions, with a specific analysis in ¶119 on the uniqueness of his voice and modulation elements (e.g., tone, timbre, pause, pace, word choice) ("vocal expressiveness"). The TAC's vocal expressiveness allegations addresses the Court's concern that President Trump's interview responses are not separately copyrightable as mere "ideas" in a "unified whole" (Opinion at 42-46), by highlighting vocal expressiveness as creative fixation under *Swatch* (spoken elements like "manner of expression" protectable) and *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211 (11th Cir. 1999) (extemporaneous speech fixed with creativity is copyrightable). See TAC ¶¶55 and 116 *et seq*. for unique creative elements broken down into categories.

President Trump's voice is analyzed as "globally recognizable," a "key draw" for commercial success (TAC ¶120), supported by Woodward's own statements (e.g., "the most recognizable voice in the world[]"; TAC ¶123). This aligns with right of publicity precedents like

*Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988) (voice imitation protectable if distinctive), persuasive in the Second Circuit, emphasizing brand value beyond mere words. President Trump's vocal expressiveness makes his responses independently expressive and fixable, proving separate ownership (Compendium § 808.3(A)).

## II.    THE TAC PLAUSIBLY ADDS A COPYRIGHT INFRINGEMENT CLAIM

In addition to the concerns identified by the Court in the declaratory judgment claim, President Trump seeks leave to add a claim for copyright infringement pursuant to 17 U.S.C. § 501. *See* TAC ¶¶142-148.

The SAC did not plead a standalone infringement claim, relying instead on declaratory relief. The Court, therefore, did not address infringement as such. The TAC augments this by alleging ownership of a valid copyright as Plaintiff is the joint author of their interviews (the "Interview Sound Recordings"), as confirmed by U.S. Copyright Office Registration No. SR0000975712, or, in the alternative, the sole author of his responses.   Further, the TAC alleges copying by the Defendants in that they reproduced the Interview Sound Recordings verbatim in the Audiobook, CD, and e-book, distributed those works for profit, and prepared derivative works therefrom, all without Plaintiff's authorization. *See Salinger v. Random House,* Inc., 811 F.2d 90 (2d Cir. 1987), where unauthorized reproduction of unpublished letters was held to be infringing. Further, even assuming *arguendo* that Woodward had a limited license to use the recording, which he did not, the TAC alleges with particularity that such a license was restricted to *Rage*. By releasing The Trump Tapes and derivative audio products, releases Defendants profited from, Defendants exceeded that scope, and such excess use constitutes infringement. *See Marshall v. New Kids on the Block P'ship*, 780 F. Supp. 1005, 1008 (S.D.N.Y. 1991).

These allegations state a prima facie case under the Copyright Act, distinct from declaratory relief and from state law theories. Because the Court has not yet considered this cause of action, and because the TAC pleads all elements plausibly, amendment is not futile and improper.

### III.      THE TAC PLAUSIBLY ALLEGES FALSE ENDORSEMENT UNDER THE LANHAM ACT

President Trump seeks leave to add a claim for false endorsement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count VIII), which was not alleged in the SAC and thus not addressed in the Opinion. TAC ¶¶178-184. This federal claim is viable and non-futile, providing an independent basis for relief that avoids the copyright preemption issues entirely. The Lanham Act prohibits use of a person's identity in commerce that falsely implies endorsement or affiliation, likely causing consumer confusion. See *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 257 (2d Cir. 2021).

The TAC plausibly alleges:

  i.   Use of Identity in Commerce: Defendants used President Trump's voice, name, and credit as "narrator" in interstate commerce for profit (TAC ¶¶62-63, 85-86), satisfying the commerce element. *See Electra*, 987 F.3d at 257.

  ii.  Likelihood of Confusion: Crediting Trump implies endorsement (TAC ¶¶52-53), especially given his "recognizable voice" and "brand value" (TAC ¶¶12, 122-23). Consumers could believe he sponsored the products, as alleged (TAC ¶182), raising confusion under *Polaroid* factors (strong mark, similarity; *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)).

  iii. Falsity: No consent for audio use (TAC ¶53); limited to *Rage* (TAC ¶53), admitted by Woodward, making the endorsement false (TAC ¶69; *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007 (3d Cir. 2008) (voice use implying endorsement)).

The claim survives *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) (no authorship passing off), as it focuses on endorsement confusion. See *Roberts v. Bliss*, 229 F.

Supp. 3d 240, 251 (S.D.N.Y. 2017) and the recently decided case of *Lehrman v. Lovo, Inc.*, 2025 U.S. Dist. LEXIS 13146 (S.D.N.Y. 2025). This claim is clearly non-futile and underscores the TAC's copyright arguments, further justifying amendment.

**IV.      THE TAC CURES THE PURPORTED PREEMPTION DEFECTS IN STATE CLAIMS**

This Court held, in our view in error, that Plaintiff's state law claims—unjust enrichment (Counts III-V), breach of contract/quasi-contract (Count VI), accounting (Count II), and breach of the implied covenant of good faith and fair dealing (Count VII)—were preempted by the Copyright Act, 17 U.S.C. § 301, because, while falling within the subject matter of copyright (fixed sound recordings), they lacked "extra elements" rendering them "qualitatively different" from copyright infringement claims. (Opinion at 47-57 (citing *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004)).

Specifically, the Court decided that (i) the unjust enrichment claims were equivalent to infringement, as they alleged mere unauthorized use without additional elements like awareness or inequity (Opinion at 52-53 (distinguishing *Briarpatch*, 373 F.3d at 306, where no such elements were pled)), (ii) the breach of contract/quasi-contract claims are preempted because the implied license's scope did not impose restrictions "beyond" copyright rights, such as a specific promise or covenant (Opinion at 54-56 (citing *ML Genius Media Grp., Inc. v. Google LLC*, 2020 WL 5553638 (S.D.N.Y. Sept. 16, 2020),)) but finding no analogous extra promise); (iii) the accounting claim was equivalent, seeking only infringement-like remedies without fiduciary or other duties (Opinion at 56) and (iv) the implied covenant claim lacked qualitative difference, as it merely restated unauthorized use without elements like breach of trust or good faith obligations (Opinion at 56-57).

The TAC cures these purported defects by incorporating new factual allegations that introduce "extra elements" of deceit, fiduciary duties, and specific promises arising from the parties' collaborative relationship and manipulative conduct. These elements follow the Second Circuit's "restrictive view" of equivalence, where claims are not preempted if they include factors like awareness, intent, promise, or fiduciary obligations that "alter the action's nature" beyond mere reproduction or distribution rights. *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716-17 (2d Cir. 1992) (intent and awareness as extra elements); *Jackson v. Odenat*, 972 F.3d 25, 44 (2d Cir. 2020) (same). The amendments ensure the claims are "qualitatively different" by pleading conduct that implicates trust, deception, and relational duties not inherent in copyright infringement.

A.    **President Trump Sufficiently Pleads Claims For Unjust Enrichment (Count IV)**

This Court dismissed the President's claims for unjust enrichment as preempted, basing that decision on a view that he alleged only "wrongful use of the interview recordings" without extra elements like inequity or awareness (Opinion at 52-53). The TAC adds allegations of "manipulative alterations and deceitful context removal" to "mislead listeners and support a biased narrative" (TAC ¶160). This introduces deceit and inequity, transforming the claims into ones requiring proof of intentional misrepresentation and unfair exploitation beyond unauthorized copying. Such elements qualify as "extra" under *Jackson*, 972 F.3d at 44 (awareness and intent alter nature), and distinguish *Briarpatch*, 373 F.3d at 306 (preempting mere benefit conferral without inequity). By pleading Defendants' knowledge of the collaborative intent and deliberate deception, the TAC plausibly alleges a claim focused on concrete breaches, not only rights equivalence.

-11-

**B.** **President Trump Sufficiently Pleads Claims For Breach of Contract/Quasi-Contract (Count V)**

This Court held that the President's breach of contract/quasi-contract claims were preempted because the implied license's scope did not "vindicate a right beyond" copyright, lacking a specific promise (Opinion at 54-56). The revised TAC alleges "specific promises of fair use" breached by "deceitful representations" and manipulative edits (TAC ¶166, 169), adding promise/trust. *See ML Genius Media Grp.*, 2020 WL 5553638, at *7 (non-preempted where license implies restrictions like fair dealing beyond copyright). The TAC ties breaches to the mutual collaboration (TAC ¶165), creating obligations of trust and specificity not subsumed by infringement. This aligns with *Comput. Assocs. Int'l, Inc.*, 982 F.2d at 717 (promises alter scope and nature), rendering the claim non-equivalent.

The viability of this claim is further supported by the circuit split on copyright preemption of contract claims, with the Second Circuit's unsettled law favoring non-preemption in cases like this. Courts are divided as some hold contract claims preempted if equivalent to copyright rights with *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) (preempting implied contract for idea use) being a prime example. The majority view, adopted in the Fifth, Seventh, and Ninth Circuits, finds no preemption because contracts involve an "extra element" of a private promise enforceable between parties. *See ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1454-55 (7th Cir. 1996) (Easterbrook, J.) (contracts create private rights not equivalent to copyright's public monopoly); *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (breach requires promise, not just use); *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 979-80 (9th Cir. 2011) (*en banc*) (implied contracts for ideas not preempted due to bilateral expectation)). The Second Circuit has not squarely resolved this issue, but its "restrictive view" of equivalence in

*Briarpatch Ltd., L.P.*, 373 F.3d at 306, and its emphasis on "extra elements[,]" like promises in *Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 430 (S.D.N.Y. 2011) (oral limitations enforceable), suggest it would follow the majority view, especially where, as here, the contract includes relational duties arising from collaboration (TAC ¶87, 114) and fair use assurances. This unsettled law weighs heavily against futility, as the TAC's allegations plausibly place the claim outside preemption under the majority view, likely including the Second Circuit, warranting merits review in this case.

C.    **President Trump Sufficiently Pleads Claims For Accounting and Implied Covenant Claims (Counts III and VI)**

This Court preempted the President's claims for accounting as seeking only infringement remedies (Opinion at 56) and implied covenant as restating unauthorized use (Opinion at 56-57). The TAC links accounting to a "fiduciary relationship created by their joint authorship and collaborative intent[]" (TAC ¶149), requiring proof of relational duties (*Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 329 (S.D.N.Y. 2003) (fiduciary elements non-preempted)). For implied covenant, it alleges breaches via "deceit and breach of trust" (TAC ¶176(c)), adding good faith obligations from the agreement (*Comput. Assocs.*, 982 F.2d at 717). These fiduciary and trust elements "alter the action's nature," as they demand allegations of relational betrayal not required for infringement, curing the equivalence issue.

In sum, the TAC's additions follow the Second Circuit's directive to view equivalence restrictively (*Briarpatch*, 373 F.3d at 306), ensuring the state claims survive preemption by focusing on deceit, promises, and duties arising from the parties' specific interactions.

### D. President Trump Sufficiently Pleads Claims For Misappropriation (Counts VIII and IX)

President Trump seeks leave to add two claims for misappropriation of his right of publicity, one claim under Fla. Stat. § 540.08 and the other claim under Florida common law. *See* TAC ¶¶185-196.

### i. Choice-of-Law – Generally Applicable Law

In a federal-question case, a court, when adjudicating supplemental claims, will apply state-law choice-of-law rules. *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 137 F.Supp.3d 430, 456 (S.D.N.Y. 2015); *Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir. 1989). The court, furthermore, will normally "apply the law of the state in which [it] sit[s]." *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010).

Where, however, as here, an action is transferred from one district to another, *see* ECF 49 (transfer order), the transferee court "must determine whether to apply the law of the transferor state, or the law of the transferee state in which it sits." *Id.* When a court "receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue . . . it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option." *Id.*; *see Schaeffer v. Village of Ossining,* 58 F.3d 48, 50 (2d Cir. 1995) (transferee laws apply after transfer under § 1406(a)); *Kesner v. Dow Jones & Co., Inc.*, 515 F.Supp.3d 149, 167 (S.D.N.Y. 2021) (transferee court applied transferee state's choice-of-law rules when action was transferred from the Southern District of Florida, based on improper venue).[3]

---

[3] In contrast, "when a case is transferred . . . under §1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction." *Gerena*, 617 F.3d at 204. Here, however, the Northern District of Florida transferred this action primarily under § 1406(a), while merely applying § 1404(a) in the alternative. ECF 48 at 5-13.

Here, the Northern District of Florida transferred the action to the Southern District of New York, primarily on the ground of improper venue under § 1406(a).  *See* ECF 48.  This Court, accordingly, will apply New York choice-of-law rules to determine the substantive law that applies to President Trump's supplemental claims.  *Kesner*, 515 F.Supp.3d at 167.

        ii.        <u>Under New York Choice-of-Law Rules, Florida Substantive Law Applies</u>

Under New York choice-of-law rules, a court, when adjudicating a claim of misappropriation of the right of publicity, will apply the law of the plaintiff's domicile. *See, e.g.*, *Southeast Bank, N.A. v. Lawrence*, 66 N.Y.2d 910, 912 (1985) ("questions concerning personal property rights are to be determined by reference to the substantive law of the [claimant]'s domicile" and "rights of publicity constitute personalty"); *Rogers v. Grimaldi,* 875 F.2d 994, 1002 (2d Cir. 1989) ("[plaintiff] is an Oregon domiciliary . . . thus Oregon law governs th[e] claim[]" for "right of publicity"); *see also Cummings v. Soul Train Holdings LLC*, 67 F. Supp.3d 599, 602 (S.D.N.Y. 2014) (court applied the state laws of plaintiff's domicile to publicity claim).

Here, at all relevant times, President Trump had a domicile in Florida.  Accordingly, Florida substantive law applies to these claims.

        iii.        <u>Elements and Analysis—The TAC States Claims For Misappropriation</u>

Florida recognizes a statutory and a common-law claim for misappropriation; the elements for both "are substantially identical."  *Coton v. Televised Visual X-Ography, Inc.*, 740 F.Supp.2d 1299, 1313 (M.D. Fla. Sept. 16, 2010) (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1320 n.1 (11th Cir. 2006)).[4]

---

[4] The remedies provided for in "th[e] [statutory claim] shall be in addition to and not in limitation of the remedies and rights of any person under the common law against the invasion of her or his privacy."  Fla. Stat. § 540.08(7).

Fla. Stat. § 540.08 provides, in pertinent part:

No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by . . . [s]uch person . . . . In the event the consent required . . . is not obtained, the person whose name, portrait, photograph, or other likeness is so used[] . . . may bring an action to enjoin such unauthorized publication, printing, display or other public use, and to recover damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages.

Accordingly, this statutory claim has four elements, each of which the TAC adequately pleads. Thus:

*First*, starting in or about October 25, 2022, Defendants "publish[ed]" *The Trump Tapes*, and later "print[ed]" the accompanying book. *Second*, Defendants did so using President Trump's "name, portrait, photograph," and "other likeness[.]" *Third*, Defendants did so "for purposes of trade" and/or for "commercial [and] advertising purpose[s]." *Fourth*, Defendants did so "without the express written or oral consent to such use" by President Trump. Accordingly, President Trump has a right "to recover damages for loss [and/]or injury sustained by reason thereof, including an amount which would have been a reasonable royalty and punitive or exemplary damages." *See* TAC ¶¶59-60, 185-196.

The Court previously dismissed President Trump's state-law claims on the ground of preemption under the Copyright Act. ECF 83 at 47-57. Claims for misappropriation of the right of publicity, however, are generally not preempted by the Copyright Act. *See, e.g.*, *Molina v. Phoenix Sound, Inc.*, 297 A.D.2d 595, 598-99 (1st Dep't 2002) ("we find the nature of the action is nonequivalent and the doctrine of [copyright] preemption does not apply[,]" because New York's

"statute[,]" which is similar to the Florida statute at issue here, "contains the additional element of use of one's image for advertising or trade purposes without written consent[]"); *Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011, at *6 (S.D.N.Y. March 1, 2018).[5]

### E. President Trump Sufficiently Pleads A Claim For Fraud/Fraudulent Inducement (Count X)

President Trump seeks leave to add a claim for fraud/fraudulent inducement. TAC ¶¶197-205.

#### i. Under New York Choice-of-Law Rules, Florida Substantive Law Applies

As discussed above, *supra*, pp. 14-15, and incorporated here by reference, the Court will apply New York choice-of-law rules. Under those rules, as shown below, Florida substantive law applies to this claim.

"New York courts confronted with a choice of law issue in torts conduct an 'interest analysis,' assessing which of the competing jurisdictions has the greatest interest in seeing its law applied to the matter at issue." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 50 (2d Cir. 2005) (citation modified); *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) ("In tort cases, New York applies the law of the state with the most significant interest in the litigation[]") (cleaned-up).

---

[5] Authorities outside New York also hold that claims for "infringement of the right of publicity are [] not generally preempted by federal law[,]" such as the Copyright Act. *See, e.g.,* Restatement (Third) of Unfair Competition § 46, cmt. I (1995) (October 2024 update); *Brown v. Ames*, 201 F.3d 654 (5th Cir. 2000) (misappropriation claims are not preempted by the Copyright Act); Restatement (Second) of Torts § 652C (1977) (October 2024 update) (citing cases).

"[T]he interest analysis is applied differently depending on whether the rules in question are conduct-regulating rules that 'people use as a guide to governing their primary conduct,' or loss-allocating rules that 'prohibit, assign, or limit liability after the tort occurs.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 49 (2d Cir. 2013).

The law of fraud is generally conduct-regulating. *Reed Constr. Data Inc. v. McGraw-Hill Cos., Inc.*, 49 F. Supp. 3d 385, 425 (S.D.N.Y. 2014), *aff'd*, 638 F. App'x 43 (2d Cir. 2016). "In cases involving conduct-regulating laws, like fraudulent inducement, [w]here the parties are domiciled in different states, the locus of the tort will almost always be determinative." *H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.*, 171 F.Supp.2d 135, 142 (S.D.N.Y. 2001). "New York courts consider the locus of a fraud to be the place where the injury was inflicted and not the place where the fraudulent act originated." *Id*. "[A] cause of action for fraud arises where the loss is sustained and that loss from fraud is deemed to be suffered where its economic impact is felt, normally, *the plaintiff's residence*[.]" *Intellivision v. Microsoft Corp.*, 2008 WL 3884382, at *5 (S.D.N.Y. Aug. 20, 2008) (cleaned-up) (emphasis added).

Here, "the parties are domiciled in different states[.]" *Id.*; *see* ECF 70 ¶¶1-5. Therefore, "[t]he locus of the tort will" be "determinative[.]" *H.S.W. Enters., Inc.*, 171 F. Supp. 2d at 142. Here, the locus of the tort is Florida: President Trump "suffered" injury "in [Florida,] where [he is] domiciled[.]" *Id*. Accordingly, "the law of [Florida] applies[.]" *Id*.

    ii.    Elements and Analysis—The TAC States A Claim For
           Fraud/Fraudulent Inducement

Under Florida law, "[t]here are four elements of fraudulent inducement . . . (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induced another to act on it; and (4) consequent

injury by the party acting in reliance on the representation." *Dziegielewski v. Scalero*, 352 So.3d

931, 934 (Fla. 5th DCA 2022) (cleaned up).

Here, the TAC sufficiently alleges those four elements:

*First,* on the dates and in the places alleged, see TAC ¶¶66–78, Woodward represented

to President Trump that the Interview Sound Recordings would be used solely for the limited

purpose of Woodward's forthcoming book, later published as Rage (the "Representations").[6]

These Representations were false.

---

[6] Woodward repeatedly represented to President Trump—before and throughout the interviews—that the recordings were solely "for the book," "for next year," and "for history," meaning his forthcoming project that became *Rage*. For example, he told President Trump, "These talks are just for my understanding as I work on this history of your presidency" (¶67, citing *The Trump Tapes*, p. 14). On December 5, 2019, inside the Oval Office, Woodward expressly said their discussion was "on the record for the book" and emphasized "for next year" (¶68, citing *The Trump Tapes*, p. 47). That same month, he reiterated, "remember, this is for next year, for the book" (¶69, citing *The Trump Tapes*, p. 84), and even wrote in *Rage* itself: "This is on the record for the book" (¶69, citing *Rage*, p. 182). On December 13, 2019, again in the Oval Office, Woodward stressed that his question was "for the book, sir" (¶70, citing *The Trump Tapes*, p. 90). On December 30, 2019, at Mar-a-Lago, Woodward announced, "On the record for the book," to which President Trump immediately responded, "For the book only, right?"—and Woodward confirmed, "Book only, yeah" (¶71, citing *The Trump Tapes*, p. 137). During that same interview, when President Trump asked him to stop recording, Woodward complied: "I shut off my tape recorder as requested" (¶72, citing *The Trump Tapes*, p. 173). The pattern continued into 2020, with Woodward stating on February 7, "I'm turning my recorder on here as I always do . . . to make sure I get everything right" (¶73, citing *The Trump Tapes*, p. 201), and on February 19, aboard Air Force One, reiterating "this is all for the history—this is all for the serious history" (¶74, citing *The Trump Tapes*, pp. 216–17). He repeated the same assurances in subsequent calls, including May 6, 2020 ("I'm going to turn my recorder on") (¶75, citing *The Trump Tapes*, p. 311), June 3, 2020 ("for the history . . . I'm turning on my recorder") (¶75, citing *The Trump Tapes*, p. 330), and July 8, 2020, when President Trump asked, "You have your tape on, Bob?" and Woodward replied, "Yes" (¶76, citing *The Trump Tapes*, p. 378). That same day, Woodward confirmed: "This will be our 17th conversation—for this book" (¶76, citing *The Trump Tapes*, p. 376). In the final August 14, 2020, interview, Woodward reiterated that "This will be the history that we start the first draft of" (¶77, citing *The Trump Tapes*, p. 412). Woodward himself admits the point at the outset: "In the fall of 2019 through August 2020, I interviewed President Trump 19 times for my second book on his presidency, *Rage*" (¶78, citing *The Trump Tapes*, p. 1). It is important to note, that these representations are merely examples, in that Defendants edited the recordings, and to date, have not produced to President Trump, the raw unedited recordings.

Those Representations concerned facts material to President Trump's agreement to sit

for the interviews with Woodward and allow his voice to be recorded.

*Second*, Woodward knew that these Representations were false when made.

*Third*, Woodward made the Representations with the intent to induce President Trump

to agree to participate in and be recorded during the interviews.

*Fourth*, President Trump justifiably relied on the Representations, and as a direct and

proximate result, he suffered injury and damages. *See* TAC ¶¶197-205.

The Court previously dismissed President Trump's state-law claims on the ground of

preemption under the Copyright Act. ECF 83 at 47-57. Fraud claims, however, are generally not

preempted by the Copyright Act. *See Korman v. Iglesias*, 736 F. Supp. 261, 264 (S.D. Fla. 1990);

---

Indeed, throughout their interactions, President Trump and Woodward explicitly discussed the status, progress, and timing of the book project—*Rage*—further confirming that the interview recordings were solely for that purpose. President Trump asked whether "my guys [are] taking good care of you," instructed aides to provide "A plus" treatment, and expressed hope Woodward could "actually write a good book" (¶97, citing *The Trump Tapes*, p. 320). Woodward requested verbatim transcripts of Trump–Xi calls because he was writing a "serious history," and President Trump assured him he had "an order out" to obtain them (¶98, citing *The Trump Tapes*, p. 322). President Trump further stated, "we'll give it a shot," "If I have a fair book, it's going to be a great book," and "It would be an honor to get a good book from you" (¶99, citing *The Trump Tapes*, p. 337). Woodward updated President Trump that he was "making progress. Trying to finish a first draft," prompting the President to check whether his staff was "being good and responsive" and to again offer help securing the Xi transcripts (¶100, citing *The Trump Tapes*, p. 339). Indeed, Woodward contemporaneously noted that by June 3, 2020, he had transmitted a 401-page draft manuscript to his editor (¶101, citing *The Trump Tapes*, p. 338). Publication timing was openly tied to the election calendar: when President Trump asked, "What's your timing?" Woodward replied, "I want to come out in September or October" 2020, to which the President quipped, "If it's a bad book, you're right in front of my election" (¶102, citing *The Trump Tapes*, pp. 289–90). In a separate call with First Lady Melania Trump, when the President asked, "When is it coming out?" Woodward answered, "September," and the President responded, "we have to send you an update" (¶103, citing *The Trump Tapes*, p. 359). As the project neared completion, President Trump asked, "Did you cover that in the book?" and Woodward confirmed that "probably 20 percent of the book" consisted of the President's own words from their interviews, describing *Rage* as "the history that we start the first draft of" (¶104, citing *The Trump Tapes*, p. 411).

*All Pro Sports Camp, Inc. v. Walt Disney Co.*, 727 So.2d 363, 367 (Fla. 5th DCA 1999) (negligent misrepresentation, fraud and deceit, [and] constructive or equitable fraud . . . all require proof of 'extra elements' in lieu of or in addition to the acts which constitute copyright infringement[;] [a]ccordingly, they are not preempted by federal copyright law[]"); *see also* H.R. Rep. No. 94-1476 at 132, *reprinted in* 1976 U.S.C.C.A.N. 5659, 5748 (1976) ("[Federal copyright law] is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.")

### F.    President Trump Sufficiently Pleads A Claim For Constructive Fraud (Count XI)

President Trump seeks leave to add a claim for constructive fraud, TAC ¶¶206-215, in the alternative to his claim for fraud/fraudulent inducement.

#### i.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies

As discussed above, *supra*, pp. 14-15, and incorporated here by reference, the Court will apply New York choice-of-law rules.  Under those rules, as demonstrated above with respect to fraud/fraudulent inducement, New York choice-of-law rules lead to the application of Florida substantive law.  The same conclusion applies to this claim for constructive fraud.

#### ii.    Elements and Analysis—The TAC States A Claim For Constructive Fraud

Under Florida law, the primary difference between fraud and constructive fraud is the absence of a scienter requirement for the latter.  This claim requires, instead of scienter, that "a confidential or fiduciary relationship has been abused or [that] an unconscionable advantage has been taken."  *Rutstein v. Viva 5 Grp., LLC*, 766 F. Supp. 3d 1189, 1198 (M.D. Fla. 2025) (cleaned up).

Constructive fraud "may be based on a misrepresentation or concealment, or the fraud may consist of taking an improper advantage of the fiduciary relationship at the expense of the confiding party. . . . Florida courts have recognized that constructive fraud may exist independently of an intent to defraud." *Tardif v. People for the Ethical Treatment of Animals*, 2010 WL 3860733, at *6 (M.D. Fla. Sept. 29, 2010) (cleaned up). The contours of a fiduciary relationship under Florida law are:

> If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. Fiduciary relationships may be implied in law and such relationships are premised upon the specific factual situation surrounding the transaction and the relationship of the parties. Courts have found a fiduciary relation implied in law when confidence is reposed by one party and a trust accepted by the other. To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party.

*Bingham v. Bingham,* 11 So.3d 374, 387 (Fla. 3d DCA 2009) (cleaned up).

A fiduciary relationship may exist wherever one person trusts in and relies upon another. *See Jacobs v. Vaillancourt,* 634 So.2d 667, 670 (Fla. 2d DCA 1994) ("The relations and duties involved need not be legal, but may be moral, social, domestic, and merely personal[]"); *Atlantic Nat'l Bank v. Vest,* 480 So.2d 1328, 1332 (Fla. 2d DCA 1985) ("The informal type of fiduciary relationship may exist under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one, who in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence[]").

As set forth above, *supra* pp. 17-21, and incorporated herein by reference, the TAC sufficiently pleads the elements of fraud/fraudulent inducement. TAC ¶¶197-205. The question,

therefore, is whether the TAC adequately pleads—in lieu of scienter—a confidential or fiduciary relationship between Woodward and President Trump. The answer is yes.  Thus:

President Trump reposed and placed great confidence in Woodward, evidenced by President Trump granting  Woodward extensive recorded interviews based on Woodward's assurance that the recordings would be used solely for *Rage*.[7]  Woodward accepted that trust, undertook to comply with the agreed limitation, and later exploited the relationship by using the raw recordings for *The Trump Tapes*, thereby taking an unconscionable or otherwise improper advantage, which was done for pecuniary gain.  *See* TAC ¶¶206-215.

The Court previously dismissed President Trump's state law claims on the ground of preemption under the Copyright Act. ECF 83 at 47-57. As discussed, *supra*, with respect to fraud/fraudulent inducement and incorporated here by reference, this claim for constructive fraud is not preempted by the Copyright Act.

---

[7] President Trump repeatedly demonstrated the extraordinary trust and confidence he reposed in Woodward, granting him unusual access and treating him with respect reserved for confidants. Early in their exchanges, President Trump told Woodward, "Ok. I trust you. I have a lot of respect for this guy" (¶105, citing *The Trump Tapes*, p. 47), and even introduced him to the First Lady as "one of the great legends of all time . . . . He's doing a book on me" (¶105, citing *The Trump Tapes*, p. 359). President Trump praised Woodward directly, saying, "Thanks, Bob. You're the greatest" (¶106, citing *The Trump Tapes*, p. 337), and further emphasized, "Good, Bob. I like it. I have great confidence in you" (¶106, citing *The Trump Tapes*, p. 209). That trust extended to highly sensitive matters: President Trump offered Woodward access to his private correspondence with Chairman Kim of North Korea, cautioning, "I'll let you read the letters. Just treat them respectfully . . . Nobody else has them . . . And don't say I gave them to you, okay?" (¶107, citing *The Trump Tapes*, p. 93).  He directed the White House itself to facilitate Woodward's reporting, instructing his staff, "Coordinate . . . so that Bob can speak to anybody he wants to," "See me whenever you want," and "See me any time you want . . . . Jared's got a whole list of whatever you need and people that you could speak to" (¶108, citing *The Trump Tapes*, p. 213).  President Trump further told Jared Kushner, "Bob's legit.  He wanted to do a book about me 25 years ago," prompting Kushner to reply, "What I heard from the president is basically that I now work for you" (¶109, citing *The Trump Tapes*, pp. 220–21).

**G.**    <u>**President Trump Sufficiently Pleads A Claim For Negligent Misrepresentation**</u>

President Trump seeks leave to add a claim for negligent misrepresentation, TAC ¶¶216-224, in the alternative to his claims for fraud/fraudulent inducement and/or constructive fraud.

i.    <u>Under New York Choice-of-Law Rules, Florida Substantive Law Applies</u>

As discussed above, *supra*, pp. 14-15, and incorporated here by reference, the Court will apply New York choice-of-law rules.  Under those rules, as demonstrated above with respect to fraud/fraudulent inducement and constructive fraud, New York choice-of-law rules lead to the application of Florida substantive law.  The same conclusion applies to this claim for negligent misrepresentation.

ii.    <u>Elements and Analysis—The TAC States A Claim For Negligent Misrepresentation</u>

"[I]n order to allege a viable cause of action for negligent misrepresentation" under Florida law, "a plaintiff must allege in his complaint that: (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation."  *Dziegielewski*, 352 So.3d at 934 (cleaned up).

Here, the TAC sufficiently pleads those four elements.  Thus:

*First*, Woodward made misrepresentations as to material facts when he stated several times that the recordings of his interviews with President Trump would be used solely for the upcoming book, *Rage*.  *See* TAC ¶¶66-78. Those statements were false because Simon & Schuster, Inc. and Woodward later published *The Trump Tapes*, containing the same recordings,

for commercial sale and use.  *Second*, Woodward was negligent in making the statement because he should have known that the representations were false.  *Third*, Woodward made the misrepresentations with the intent of inducing President Trump to rely on them by consenting to participate in the recorded interviews.  *Fourth*, President Trump acted in justifiable reliance upon Woodward's misrepresentations, and injury resulted.  *See* TAC ¶¶216-224.

The Court previously dismissed President Trump's state-law claims on the ground of preemption under the Copyright Act.  ECF 83 at 47-57.  As discussed, *supra*, with respect to fraud/fraudulent inducement and incorporated here by reference, this claim for negligent misrepresentation is not preempted by the Copyright Act.

**CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant leave to file the Third Amended Complaint.

Dated: September 11, 2025

Respectfully submitted,

GS2LAW PLLC

By: _____

Robert Garson (RG 1521)
Kenneth A. Caruso (Of Counsel)
David Labkowski (Of Counsel)
Yanina Zilberman (*Pro Hac Vice*)
20801 Biscayne Blvd, Suite 506
Aventura, FL, 33180
rg@gs2law.com

*Attorneys for Plaintiff,*
*President Donald J. Trump,*
*45th and 47th President of the*
*United States, in his individual*
*capacity*