# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

PRESIDENT DONALD J. TRUMP, 45th President
of the United States of America, in his individual
capacity,

                              Plaintiff,

            v.                                          Case No. 1:23-cv-06883-PGG

SIMON & SCHUSTER, INC., a New York
corporation, ROBERT WOODWARD p.k.a. BOB
WOODWARD, an individual, and PARAMOUNT
GLOBAL, a Delaware corporation, f/k/a Viacom
Inc., successor by merger to CBS Corporation, a
Pennsylvania corporation f/k/a Westinghouse
Electric Corporation,

                              Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

**WILLIAMS & CONNOLLY\***
Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5800
Email: kbaine@wc.com
        thentoff@wc.com

\*Of counsel to Robert Woodward

**DAVIS WRIGHT TREMAINE LLP**
Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena M. Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
        lindasteinman@dwt.com
        jackbrowning@dwt.com
        leenacharlton@dwt.com

*Counsel for Defendants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

I.    PRESIDENT TRUMP CANNOT PLEAD A VALID COPYRIGHT CLAIM (TAC
COUNTS 1 and 2) ................................................................................................................ 4

   A.   The TAC Fails to Establish Joint Authorship ...................................................... 4

      1.   Subjective Indicia of Intent to Be a Joint Author .......................................... 5

      2.   Objective Indicia of Joint Authorship .............................................................. 7

      3.   This Court Already Addressed and Rejected President Trump's Copyright Registration
Allegations ...................................................................................................... 8

   B.   The TAC Fails to Establish that President Trump is the Sole Owner of his Interview
Responses ............................................................................................................... 9

      1.   The TAC Does Not Establish that President Trump Was Responsible for the Fixation
of the Interview Recordings .......................................................................... 9

      2.   President Trump's Interview Responses Are Not Independently Copyrightable ......... 10

   C.   The TAC's Copyright Infringement Claim Fails as a Matter of Law ............................... 12

II.   THE TAC FAILS TO STATE A CLAIM UNDER THE LANHAM ACT (TAC Count 7) 13

III.  THE TAC'S STATE LAW CLAIMS ARE PREEMPTED ............................................. 15

   A.   Breach of Contract/Quasi-Contract, Breach of Implied Covenant of Good Faith and
Negligent Misrepresentation (TAC Counts 5, 6 and 13) ....................................... 17

   B.   Accounting (TAC Count 3) .............................................................................. 18

   C.   Unjust Enrichment (TAC Count 4) .................................................................. 19

   D.   Misappropriation and Right of Publicity (TAC Count 8 under Fla. Stat. § 540.08 and
Count 9 under Florida common law) .................................................................... 19

   E.   Fraud and Fraudulent Inducement (TAC Count 10) and Constructive Fraud (Count 11) 21

IV.   PRESIDENT TRUMP'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW ..... 21

   A.   Breach of Contract, Quasi-Contract and Breach of Implied Covenant of Good Faith (TAC
Counts 5 and 6) .................................................................................................. 22

   B.   Unjust Enrichment, Accounting, and Constructive Fraud (TAC Counts 3, 4 and 11) ..... 22

   C.   Misappropriation/Right of Publicity (TAC Counts 8 and 9) ........................................... 23

   D.   Fraud/Fraudulent Inducement (TAC Counts 10) ............................................................ 24

   E.   Negligent Misrepresentation (Count 12) .......................................................... 25

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 ....................................................................................................................23

*Aqua Creations USA Inc. v. Hilton Hotels Corp.*,
  2011 WL 1239793 (S.D.N.Y. Mar. 28, 2021), *aff'd*, 487 F. App'x 627 (2d Cir. 2012) ...........4

*Baiul v. NBC Sports*,
  2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016)...........................................................................18

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
  373 F.3d 296 (2d Cir. 2004)...............................................................................................16, 17

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc.,
  98 F.3d 13 (2d Cir. 1996)........................................................................................................21

*Brown v. Showtime Networks, Inc.*,
  394 F. Supp. 3d 418 (S.D.N.Y. 2019).....................................................................................14

*Canal+ Image UK Ltd. v. Lutvak*,
  773 F. Supp. 2d 419 (S.D.N.Y. 2011).....................................................................................17

*Childress v Taylor*,
  945 F.2d 500 (2d Cir. 1991)......................................................................................................2

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*,
  886 F.2d 490 (2d Cir. 1989)....................................................................................................14

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989)...................................................................................................................9

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
  982 F.2d 693 (2d Cir. 1992)...............................................................................................16, 19

*Coton v. Televised Visual X-Ography, Inc.*,
  740 F. Supp. 2d 1299 (M.D. Fla. 2010)..................................................................................24

*Cummings v. Soul Train Holdings LLC*,
  67 F. Supp. 3d 599 (S.D.N.Y. 2014)..................................................................................14, 15

*Down to Earth Organics, LLC v. Efron*,
  2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ........................................................................14

*Electra v. 59 Murray Enters., Inc.*,
    987 F.3d 233 (2d Cir. 2021)....................................................................................13

*Est. of Hemingway v. Random House, Inc.*,
    23 N.Y.2d 341 (1968) ............................................................................................13

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)..................................................................................13

*Falwell v. Penthouse Int'l, Ltd.*,
    521 F. Supp. 1204 (W.D. Va. 1981) .......................................................................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)................................................................................................12

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) ..................................................................................10

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010).....................................................................21

*Gasey v. Kalakuta Sunrise, LLC*,
    422 F. Supp. 3d 807 (S.D.N.Y. 2019).....................................................................23

*Gurvey v. Cowan, Liebowitz & Latman, P.C.*,
    757 F. App'x 62 (2d Cir. 2018) ................................................................................4

*Hara v. Netflix, Inc.*,
    146 F. 4th 872 (9th Cir. 2025) ................................................................................14

*In re Digit. Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011).....................................................................12

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020)........................................................................16, 17, 20

*Intellivision v. Microsoft Corp.*,
    2008 WL 3884382 (S.D.N.Y. Aug. 20, 2008).........................................................19

*Jack Daniel's Props., Inc. v. VIP Prods., LLC*,
    599 U.S. 140 (2023)................................................................................................14

*Joseph v. Buffalo News, Inc.*,
    792 F. App'x. 60 (2d Cir. 2019) ...............................................................................3

*Kant v. Columbia Univ.*,
    2010 WL 807442 (S.D.N.Y. Mar. 9, 2010) ..............................................................4

*Lehrman v. Lovo, Inc.*,
  2025 WL 1902547 (S.D.N.Y. July 10, 2025) ..........................................................................13

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
  868 F. Supp. 2d 172 (S.D.N.Y. 2012)....................................................................................15

*McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*,
  2023 WL 5211054 (S.D.N.Y. Aug. 13, 2023).........................................................................18

*Melendez v. Sirius XM Radio, Inc.*,
  50 F.4th 294 (2d Cir. 2022) ............................................................................................3, 20

*Midler v. Ford Motor Co.*,
  849 F.2d 460 (9th Cir. 1988) .................................................................................................12

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*,
  576 F. Supp. 3d 1192 (S.D. Fla. 2021), *amended on reconsideration in part,* 2022 WL
  845468 (S.D. Fla. Mar. 22, 2022) .........................................................................................21

*Miller v. Holtzbrinck Publishers, L.L.C.*,
  377 F. App'x 72 (2d Cir. 2010)..............................................................................21, 24, 25

*ML Genius Holdings LLC v. Google LLC*,
  2022 WL 710744 (2d Cir. 2022)......................................................................................16, 18

*Molina v. Phoenix Sound, Inc.*,
  297 A.D.2d 595 (1st Dep't 2002) .....................................................................................20, 24

*Morris v. N.Y. State Dep't of Tax'n & Fin.*,
  82 N.Y.2d 135 (1993)...........................................................................................................12

*Mourabit v. Klein*,
  816 F. App'x 574 (2d Cir. 2020) ...........................................................................................10

*Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*,
  898 F.3d 243 (2d Cir. 2018).....................................................................................................3

*New Kids On the Block v. News Am. Publ'g Inc.*,
  745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd on other grounds,* 971 F.2d 302 (9th Cir. 1992)..15

*Newsome v. Brown*,
  209 F. App'x 11 (2d Cir. 2006) .............................................................................................12

*O'Grady v. BlueCrest Cap. Mgmt. LLP*,
  111 F. Supp. 3d 494 (S.D.N.Y. 2015).....................................................................................22

*Passelaigue v. Getty Images (US), Inc.*,
  2018 WL 1156011 (S.D.N.Y. Mar. 1, 2018) ....................................................................20, 24

*Perry v. Mary Ann Liebert, Inc.*,
   785 F. App'x 470 (2d Cir. 2019) ...........................................................................................3

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989).......................................................................................13, 14, 15

*Thomson v. Larson*,
   147 F.3d 195 (2d Cir. 1998).....................................................................................................7

*Turnipseed v. Simply Orange Juice Co.*,
   2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ............................................................................3

*Tyne v. Time Warner Ent. Co.*,
   901 So. 2d 802 (Fla. 2005)..............................................................................................23, 24

*U.S. v. United Foods, Inc.*,
   533 U.S. 405 (2001)...............................................................................................................23

*United States v. Bestfoods*,
   524 U.S. 51 (1998).................................................................................................................12

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
   924 F.3d 32 (2d Cir. 2019).....................................................................................................17

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ............................................................................................................14

Fla. Stat. § 540.08 .................................................................................................................19, 23

**Rules**

Fed. R. Civ. P. 15(a)(2).................................................................................................................3

Defendants Simon & Schuster, Inc., Robert Woodward and Paramount Global, Inc. (collectively, the "Defendants") respectfully submit this opposition to President Donald J. Trump's Motion for Leave to File Third Amended Complaint.  Dkt. 89 ("Mot.").

## PRELIMINARY STATEMENT

President Trump commenced this action with the unprecedented claim that he owns the copyright in Bob Woodward's presidential interviews.  He has already amended his complaint twice, making directly contradictory allegations about whether he did (or did not) somehow intend the interviews to be a joint work.  And this Court dismissed his Second Amended Complaint ("SAC") based on a thorough and careful consideration of its allegations, observing that it is "unlikely that [President Trump] can adequately plead a plausible copyright interest in *The Trump Tapes* or any non-preempted state law claim[.]"  Dkt. 83 at 58 (the "Order").  Now, in his proposed Third Amended Complaint ("TAC"), President Trump directly contradicts his earlier pleadings once again, includes manufactured quotes falsely attributed to Woodward that appear nowhere in *The Trump Tapes* (the "Book"), asserts a cause of action that he previously conceded had no merit, and otherwise fails to correct the defects in his SAC.  This Court explicitly warned Plaintiff that "[l]itigation is not a game[.]"  *Id*. at 20 n.10.  It is now time to bring this "game" to an end.  This Court should deny President Trump leave to amend his pleadings for the third time.

Plaintiff's proposed TAC fails to plead any plausible copyright claim.  Once the TAC's contradictory allegations of "mutual intent [to create] a joint work," Mot. at 5, are disregarded, as they must be, all that remains are rehashed claims that this Court has already considered and rejected in its dismissal Order.  President Trump claims, for instance, that his joint author copyright registration for *The Trump Tapes* is a "a vital update to the SAC," *id.* at 5-6, but that registration is nothing new because this Court addressed it at length in its Order and held that it was insufficient to establish copyright ownership.  Order at 24-29.  Similarly, Plaintiff introduces the implausible

notion that he provided Woodward with "guidance on recording equipment" to bootstrap his argument that he has an independent copyright in his interview answers.  TAC ¶ 92.  But this allegation—which appears to refer to President Trump checking whether Woodward was recording their conversation—merely indicates consent to the interviews, which was never in dispute.  The new allegations do not change the dispositive fact that President Trump's responses to Woodward's questions have "little or no independent meaning standing alone" and "must be treated as what they are: a unified integrated work."  Order at 43 (citing *Childress v Taylor*, 945 F.2d 500, 505 (2d Cir. 1991)).

On President Trump's state law claims, the TAC asserts the same factual allegations—*i.e.*, that Woodward allegedly made a promise that the interviews would be used for *Rage* only—that were alleged and rejected in the Order, only now slightly rephrased in terms of "deception," "fraud" and "relational duties."  *See, e.g.*, Mot. at 11.  These superficial and semantic changes do not fix the fatal preemption problem this Court identified in its Order, which is that state law claims based on Woodward's alleged misuse of the interview tapes "necessarily … seek[] to vindicate … rights under the Copyright Act."  Order at 56.  Finally, the TAC's various new causes of action—including copyright infringement, false endorsement under the Lanham Act, misappropriation, and fraud—are all futile because they are preempted, fail to state a valid claim, or both.

For all these reasons, set forth in greater detail below, this Court should deny President Trump leave to amend his pleadings and dismiss this action with prejudice.[1]

---

[1] If this Court grants President Trump's leave to amend, Defendants reserve and do not waive their rights to argue, among other things, that President Trump's contributions to the Book were government works not subject to copyright law and that the Book's use of the interviews was fair use.

## ARGUMENT

President Trump requires "the court's leave" to amend his complaint a third time. Fed. R. Civ. P. 15(a)(2). "Although … leave to amend a complaint 'shall be freely given when justice so requires,' … it is within the sound discretion of the district court whether to grant or deny [it]." *Joseph v. Buffalo News, Inc.*, 792 F. App'x. 60, 63 (2d Cir. 2019) (citation omitted). This Court "may deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Id*. (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). Here, after multiple prior efforts, Plaintiff's proposed TAC still fails to allege a single plausible claim, and it should be dismissed as futile.

It is established law that "a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *8 (S.D.N.Y. Mar. 4, 2022); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment.") (internal quotation marks omitted). Applying this standard, courts routinely deny leave to amend copyright and precluded state law claims when the proposed amendments would be futile. *See, e.g.*, *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 309 (2d Cir. 2022) (affirming denial of leave to amend).[2]

Here, President Trump should not be given leave to amend because he "has already amended [his] complaint twice, and despite having been given notice of the defects in its pleading,

---

[2] *See also Shull v. TBTF Prods. Inc.,* , 2021 WL 3027181, at *4 (affirming denial of leave to amend copyright and Lanham Act claims); *Joseph,* 792 F. App'x at 63 (affirming denial of leave to amend copyright claim); *Perry v. Mary Ann Liebert, Inc.*, 785 F. App'x 470, 473 (2d Cir. 2019) (affirming denial of leave to amend copyright claim).

[he] has not succeeded in curing those defects" and "further amendment would be futile." *Aqua Creations USA Inc. v. Hilton Hotels Corp.*, 2011 WL 1239793, at *8 n.7 (S.D.N.Y. Mar. 28, 2021), *aff'd*, 487 F. App'x 627 (2d Cir. 2012); Order at 57-58.[3]

## I.    PRESIDENT TRUMP CANNOT PLEAD A VALID COPYRIGHT CLAIM (TAC COUNTS 1 AND 2)

This Court dismissed the SAC's declaratory judgment claim (Count I) because President Trump failed to establish an ownership interest in the Book's copyright—either as a joint author or sole author of his interview responses.  Order at 17-46.  The TAC's new allegations do nothing to change this result.

### A.    The TAC Fails to Establish Joint Authorship

As this Court recognized in its Order, the "touchstone" of joint authorship is the "intent to create an 'integrated unit.'" *Id.* at 17-18.  After conducting a thorough analysis of the relevant factors—*i.e.*, subjective and objective indicia of intent and President Trump's copyright registration—this Court held that "the SAC does not plausibly allege that the parties 'fully intended to be co-authors' of a joint work.'" *Id.* at 23.  The TAC does not cure any of the defects that required dismissal of President Trump's joint authorship claim.

---

[3] Plaintiff's proposed TAC also constitutes bad faith pleading and the motion should be denied on that independent ground as well.  As set forth below, Plaintiff once again alleges directly contradictory facts concerning his intent to create a joint work or lack thereof.  And he does so after this Court made clear that such gamesmanship will not be tolerated.  Order at 20 n.10.  A motion for leave to amend can be denied for bad faith when there are "clear contradictions" between a plaintiff's proposed amendments and earlier pleadings.  *Gurvey v. Cowan, Liebowitz & Latman, P.C.*, 757 F. App'x 62, 65 (2d Cir. 2018).  Accordingly, when deciding whether to permit an amendment, courts "are free to consider direct contradictions between earlier pleadings and a proposed amended pleading…, particularly when the proposed amendments concern facts clearly within the plaintiff's knowledge when previous complaints were filed."  *Kant v. Columbia Univ.*, 2010 WL 807442, at *7 (S.D.N.Y. Mar. 9, 2010).  Then, compounding this concern, Plaintiff's proposed TAC includes quotations falsely attributed to Bob Woodward that appear nowhere in the Book, possibly as a result of artificial intelligence hallucinations.  *See infra*, 6.

### 1.    Subjective Indicia of Intent to Be a Joint Author

Woodward's intent is not disputed. Both the SAC and TAC allege that Woodward "consistently claimed, and still maintains, that he is the original and sole author" of the Book. SAC ¶ 63; TAC ¶ 138.[4] Since a joint work requires mutual intent, that allegation alone precludes joint authorship. But that is not all. Plaintiff has likewise consistently alleged, as this Court found, that he "never understood or intended that any audiobook of the interviews or related work would be created, and that he never consented to any such use" of Woodward's interviews. Order at 19 (citing SAC ¶¶ 35, 42, 49, 51) (*e.g.*, the "interviews were for the sole purpose of the book"). The TAC reiterates these same allegations making clear that President Trump "never agreed, understood, or intended that the interviews would be used for any purpose other than Woodward's upcoming book *Rage.*" Order at 20; *see* TAC ¶¶ 51, 53, 61, 66.

Although these unambiguous allegations prove that President Trump and Woodward never intended to be co-authors of the Book, the TAC again makes the contradictory claim that the interviews were "conducted with the mutual intent" to merge them into an "inseparable or interdependent whole qualifying as a joint work." TAC ¶ 5.[5] Of course, Plaintiff pled the "exact opposite" in his original and amended complaints. Cmplt. ¶ 47 ("President Trump never sought to create a work of joint authorship"); Am. Cmplt. ¶ 53 (same); Order at 20 n.10. And this Court

---

[4] Woodward's clear belief that he was the sole author and owner of the interviews is substantiated throughout the Book. Tellingly, the very first line of the proposed TAC uses ellipses to remove the following highlighted language from Woodward's quote "I'm doing something here that I've never done before, *presenting the lengthy raw interviews of my work.*" *Compare* Book at 1 *with* TAC ¶ 1. Thus, in the opening pages of the Book, Woodward emphasized that the interviews were *his* work.

[5] The SAC only alleged a conclusion that President Trump was "the joint author" of the interviews and the Book. SAC ¶ 65(a). Now, the allegations of the TAC go a step further and claim some shared intent to have the interviews "create a cohesive narrative for the book *Rage,* reflecting shared authorship." TAC ¶ 6. The idea that President Trump was a joint author of the Woodward's independently researched book *Rage* that was highly critical of the President is preposterous.

already rejected this gamesmanship in its Order, which made clear that "[l]itigation is not a game, and where—as here—a complaint's allegations directly contradict allegations set forth in earlier pleadings, courts may disregard the contradictory allegations in resolving a motion to dismiss." Order at 20 n.10. The TAC not only blithely ignores this clear instruction, it fails to even acknowledge that it explicitly contradicts President Trump's earlier pleadings. *See* Mot. at 4-5. Nor does Plaintiff dispute this Court's holding that his state of mind concerning joint authorship "was clearly within his knowledge at the time he filed the earlier pleadings." Order at 20-21 n.10.

Plaintiff attempts to overcome this contradiction by alleging that "Woodward expressly admits that the mutual intent of the recordings" were for *Rage* alone and proceeds to identify a number of "Example Quote[s]" evidencing Woodward's supposed admission. TAC ¶ 82 (*e.g.*, "Woodward: 'At the time of the interviews, there was no agreement or discussion with Trump that the raw interview themselves would be released beyond the use in Rage.'"). One problem: *none* of the so-called Woodward "quotes" identified in the TAC exist and, contrary to the TAC's citations, the Book does not even have pages "xi" or "xiii." *Id.* And these are not the only examples of false quotes attributed to Woodward that appear nowhere in the Book. *See also* TAC ¶¶ 90, 93. At the very least, these nonexistent quotations should be disregarded. Since the TAC's contradictory pleadings and false quotations are clear gamesmanship, there is no reason for this Court to diverge from its prior holding in the Order that these new claims of mutual intent to create a joint work should be rejected out of hand.

In sum, President Trump's admission that neither he nor Woodward ever intended to create a joint work is a dagger through the heart of joint authorship that precludes this claim as a matter of law.

### 2.   Objective Indicia of Joint Authorship

No amount of repleading can change the undisputed 12(b)(6) record proving that "only Defendants exercised authority and control over the content of [the Book]." Order at 22. Both the SAC and TAC acknowledge that it was Simon & Schuster and Woodward who "collate[d] and cobble[d] together more than eight hours of 'raw' interviews with President Trump." SAC ¶ 39; TAC ¶ 59. Similarly, the Book establishes that Defendants, not Plaintiff, "edited out excessive repetition, irrelevant material, background noise, and unintelligible audio," created "227 new commentaries" for the Book, and otherwise "exercised decision-making authority over the creation" of the Book. Order at 6, 21-22 (citing Book at 2). And on the cover of the work, Woodward is identified prominently in bold red lettering as the sole author of the Book. As this Court found, "the billing and credit factor weighs against a finding of joint authorship." Order at 23.

The TAC does not include any allegations that change these obvious conclusions. Instead, President Trump attempts to manufacture an element of control over the Book by alleging that he "provided guidance on recording equipment and settings," and "direction on subject matter" of the interviews, "steering conversations toward particular themes[.]" TAC ¶¶ 89, 92. But this vague allegation appears to refer to nothing more than the fact that he initiated some of the calls and on one occasion asked whether Woodward was recording. *Id.* ¶ 76.[6] These allegations are incidental to President Trump's role as an interviewee, not evidence of authorship. Moreover, the notion that

---

[6] President Trump argues his new allegations "reframe" his identification as a reader on "*The Trump Tapes*," Mot. at 5, but this Court rejected this very argument. Order at 22 (citing *Thomson v. Larson*, 147 F.3d 195, 199 (2d Cir. 1998). The work credits only Woodward as the author. Indeed, the TAC itself once again recognizes that Defendants did not "acknowledge or cite to President Trump's contributions to [the work]." SAC ¶ 79; TAC ¶ 158.

President Trump exercised any control over the ultimate content of this Book or any other work is belied by his own statements. *See, e.g.*, Book at 285, 323-24, 359, 377 ("He's doing a book on me. It'll probably be atrocious, but that's okay;" "And in the end you'll probably write a lousy book;" "You're probably going to screw me;" "All I ask for is fairness. And, you know, I'm sure I won't get it, but that's okay.").

In the end, the objective evidence, together with the clear subjective intent of the parties, makes it abundantly clear that there was no joint authorship of the Book.

### 3. This Court Already Addressed and Rejected President Trump's Copyright Registration Allegations

Finally, President Trump argues that the express allegations he added to the TAC about his copyright registration are a "vital update to the SAC," but this Court thoroughly considered and rejected this registration as a basis for establishing joint authorship. *See* Order at 24-28; Mot. at 6. This Court found that any presumption arising from the registration was rebuttable and concluded that "[w]here—as here—a court is faced with conflicting … copyright registrations, it must make an independent determination as to ownership, and may conclude that no competing registration has *prima facie* validity." Order at 24-27.[7] This Court likewise rejected Plaintiff's argument, which he now repeats, that a court cannot determine what weight to give a copyright registration on a motion to dismiss and must "conduct factual inquiries" to resolve any conflict. *Id.* at 27; Mot. at 6. Applying the correct law, this Court held that the registration was not enough to make a *prima facie* showing of joint authorship because it contradicted the "SAC's allegations, which make clear that Plaintiff and Woodward did not 'fully intend to be co-authors[.]'" Order at 28-29.

---

[7] This Court took judicial notice of Defendants' own competing copyright registration, which identified Woodward as the sole copyright owner of the Book. Order at 2 n.4.

President Trump makes no serious effort to explain why the mere reference to his registration in the TAC would lead to a different result. This is nothing more than a belated request to reargue a point that this Court has already seriously considered and ruled upon and is not a legitimate basis to allow a futile amendment.

### B. The TAC Fails to Establish that President Trump is the Sole Owner of his Interview Responses

This Court held that the SAC did not plausibly allege President Trump's sole copyright interest in "his stand-alone responses to Woodward's questions as presented in [the Book]" because (1) "Plaintiff does not plead that he 'fixed' his answers into 'a tangible medium of expression,' or that such fixation occurred 'under [his] authority'; and (2) his responses to Woodward's questions do not themselves constitute a work of authorship entitled to copyright protection." Order at 32-33. The TAC fails to cure either of these defects.

#### 1. The TAC Does Not Establish that President Trump Was Responsible for the Fixation of the Interview Recordings

As this Court recognized, "[a] person who does not 'fix' the work 'in a tangible medium of expression' is … generally not regarded as an 'author' of the work …" Order at 33 (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)). This Court then determined that "Woodward recorded the interviews at issue." Order at 33. In his proposed TAC, President Trump does not contest that indisputable fact.

Rather, he suggests that "[t]he TAC remedies this Court's concerns by directly alleging Plaintiff's 'consenting to and directing the recordings'"—by which President Trump presumably means that he initiated some of the calls. Mot. at 7 (citing TAC ¶¶ 92, 114). But there is no dispute that President Trump consented to Woodward's taping of the interviews, and this Court held that this was insufficient to establish fixation. *See* Order at 33-38. In its detailed analysis, this Court contrasted cases where an author authorizes fixation by, for instance, creating their own work and

permitting it to be photographed, *see Mourabit v. Klein*, 816 F. App'x 574 (2d Cir. 2020), with cases where a plaintiff merely consents to being recorded as part of another author's work. *See Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015).  This Court correctly analogized this case to *Garcia*, where an actress was denied a copyright interest in her performance in a movie because, while she consented to being filmed, she "never agreed to the film's ultimate rendition or how she was portrayed."  Order at 37 (quoting *Garcia*, 786 F.3d at 734).  Under this standard, the TAC's allegation that President Trump "consented" to Woodward's recording is irrelevant and his claim that he "directed" the recordings is belied by the undisputed fact that he fully understood that he never had control over how he would be portrayed; nor did he play any role in the release of the Book.  SAC ¶ 42; TAC ¶ 60.  Indeed, as this Court found, "courts have repeatedly held that the fact that someone has made meaningful contributions to a work does not mean that they have a copyright interest in that work." Order at 39.

President Trump makes no serious effort to explain why the TAC would lead to a different result beyond making an *ipse dixit* assertion that "[t]his is distinguishable from *Garcia* (no control)," which is wrong and should be disregarded.  Mot. at 7.  And, since the TAC confirms that Woodward taped and controlled the interviews, President Trump's claim to own a copyright in his responses fails for lack of fixation.  *See* Order at 39.

### 2.    President Trump's Interview Responses Are Not Independently Copyrightable

Even if the Court were to accept President Trump's "fixation" allegations, his claim to an independent copyright interest in his interview responses still fails.  This Court held, after a thorough analysis, that the interviews are "a unified, integrated work" and, because "Plaintiff's contributions to that unified integrated work 'are inseparable from the work,' they 'cannot separately obtain copyright protection.'"  Order at 43 (quoting *16 Casa Duse, LLC v. Merkin*, 791

F.3d 247, 257 (2d Cir. 2015)).  As this Court found, "[s]tripping out the answers from an interviewer's questions is not only inconsistent with the animating principles of the Copyright Act; it also ignores the fundamental reality that an interview is a unified, integrated work and not a collection of disjointed and unrelated random thoughts and phrases."  *Id*.  This conclusion is made evident by considering President Trump's answers separate and apart from Woodward's questions: the result, as this Court recognized, is "often unintelligible gibberish." *Id.* at 43 n.16; Appendix.

President Trump suggests that new allegations in the TAC relating to the "originality of President Trump's" contributions (citing examples like the use of phrases "witch hunt" or the "best ever") and the "uniqueness" of his "voice and modulation elements (*e.g.*, tone, timbre, pause, pace, word choice)" are sufficient to "address the Court's concern that President Trump's interview responses are not separately copyrightable as mere 'ideas' in a 'unified whole.'" Mot. at 7.[8]  Yet, this Court correctly recognized that there is no heightened copyright protection for even original thoughts.  *See* Order at 30-32 (citing *Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204 (W.D. Va. 1981)) ("However different or unique plaintiff's thoughts or opinions may be, the expression of those opinions or thoughts is too general and abstract" to be given copyright protection).  Indeed, President Trump's allegations about the "uniqueness" of his vocal delivery go to a point that the Court already found in his favor, which is that "Plaintiff made non-de minimis contributions to [the Book]."  Order at 42.  Even so, these allegations are irrelevant to the dispositive issue of whether President Trump can copyright and separately own his interview responses, which the

---

[8] President Trump also cites the Copyright Compendium permitting separate registration of questions and answers in further support of his claim to an independent copyright, Mot. at 8, but this Court addressed that provision of the Compendium at length in its Decision and held it to be unpersuasive. Order at 43-46.

Court emphatically held he could not do because they were integrated into a single unitary work and would become "gibberish" if disaggregated. *Id*. at 43 n.16.[9]

### C.   The TAC's Copyright Infringement Claim Fails as a Matter of Law

The TAC adds a new claim for copyright infringement, TAC ¶¶ 141-47, and alleges that "amendment is not futile and improper" because the "Court has not yet considered this cause of action[.]" Mot. at 9.  But this claim is futile for the obvious reason that ownership of a valid copyright is a necessary element of any copyright infringement claim, *see Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  This Court has already held that President Trump is not a joint author or the owner of a copyright in his interview responses, and nothing in the proposed TAC changes this Court's findings.  *See* Order at 42.  In addition, to the extent that President Trump claims to be a joint author, his infringement claim fails because "co-authors cannot be liable to one another for copyright infringement."  *Newsome v. Brown*, 209 F. App'x 11, 12 (2d Cir. 2006).[10]

---

[9] President Trump repeatedly invokes the copyright protection accorded Martin Luther King's *I Have a Dream* speech as somehow analogous to his interview responses. *See* Mot. at 7.  Setting aside the literary distinctions between King's iconic speech and President Trump's responses to Woodward's questions, from a copyright perspective the *I Have a Dream* speech is an independent fully protectable work authored exclusively by King while Trump's interview responses are embedded in a unitary work premised upon Woodward's questions.  President Trump's citation to *Midler* is also irrelevant because that was a right of publicity case about a car commercial imitating her voice, not a copyright action.  *See Midler v. Ford Motor Co.*, 849 F.2d 460, 463 (9th Cir. 1988).

[10] Leave to amend should not be granted concerning claims against Paramount because there are no plausible allegations that Paramount engaged in unlawful conduct.  "[A] parent corporation...is not liable for the acts of its subsidiaries," unless the corporate veil may be pierced. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  The only allegation of Paramount's involvement is that its "assets include [S&S]," and it "exerted direct control over the executive leadership" thereof.  TAC ¶ 29.  These allegations are insufficient to establish liability. *See In re Digit. Music Antitrust Litig.*, 812 F. Supp. 2d 390, 418 (S.D.N.Y. 2011) (dismissing parent companies with "no direct involvement"); *id.* (owners must "exercise[] complete domination of the corporation in respect to the transaction attacked.") (citing *Morris v. N.Y. State Dep't of Tax'n & Fin.,* 82 N.Y.2d 135, 141 (1993)).

## II.     THE TAC FAILS TO STATE A CLAIM UNDER THE LANHAM ACT (TAC COUNT 7)

On the heels of his meritless copyright claims, the TAC turns to the Lanham Act.  President Trump alleges false endorsement based on the use of his "voice, name [and] image" in a Book titled "The Trump Tapes:  Bob Woodward's Twenty Interviews with President Donald Trump," which the TAC claims "falsely implies President Trump's affiliation, sponsorship, approval, or endorsement of the products."  TAC ¶¶ 178-184; Mot. at 9-10.[11]  But Plaintiff has cited no authority for his bold claim that it is unlawful to use his name and likeness to accurately describe a collection of actual interviews with President Trump constituting "The Historical Record" of his presidency.  Book at iii.  The Lanham Act was drafted to *avoid* infringing the First Amendment.  As the Second Circuit found, where the "slight risk that such use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression,… the Lanham Act is not applicable."  *Rogers v. Grimaldi*, 875 F.2d 994, 1000 (2d Cir. 1989) (citing *Est. of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341, 350 (1968) (holding that estate of Ernest Hemingway had no cause of action for "'palming off'… against author of biographical memoir entitled 'Papa Hemingway.'")).[12]

---

[11] Plaintiff persists in claiming that he was credited on the work as its "narrator," again citing to a Barnes & Noble ad for the work. TAC ¶¶ 62, 181. But, in the context of evaluating subjective intent, this Court already rejected this evidence, noting that the "views of third parties are irrelevant" to the analysis. Order at 23 n.11.

[12] Plaintiff's authorities do not support application of the Lanham Act in this case. *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (affirming dismissal of plaintiffs' Lanham Act claim for use of unrecognizable image in advertising for strip club); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1011 (3d Cir. 2008) (where plaintiff's voiceover work was repurposed post-mortem to endorse a video game in an infomercial and was deemed commercial speech); *Lehrman v. Lovo, Inc.*, 2025 WL 1902547, at *9 (S.D.N.Y. July 10, 2025) (dismissing voice actors' claim when "what each plaintiff seeks to protect *from imitation*—his or her voice" (emphasis added)) (quotation omitted).

Even assuming the Lanham Act could apply, the TAC's proposed false endorsement claim fails as a matter of law.[13]  As a first step, courts "distinguish between the use of a trademark as a source identifier versus for some other expressive function" because non-source identifying uses enjoy "heightened First Amendment scrutiny of the *Rogers* balancing test." *Down to Earth Organics, LLC v. Efron*, 2024 WL 1376532, at \*4 (S.D.N.Y. Mar. 31, 2024) (citing *Jack Daniel's Props., Inc. v. VIP Prods., LLC*, 599 U.S. 140, 143 (2023)).[14]  Here, there is no serious question that the Book—which is a collection of Woodward's presidential interviews—is a fully protected expressive work.  *See Down to Earth Organics*, 2024 WL 1376532, at \*5 (holding that documentary series was expressive speech because it "clearly does more than merely propose a commercial transaction"); *Brown v. Showtime Networks, Inc*., 394 F. Supp. 3d 418, 442–44 (S.D.N.Y. 2019) (holding that documentary featuring the singer Bobby Brown was an expressive work); *Hara v. Netflix, Inc*., 146 F. 4th 872, 877–78 (9th Cir. 2025) (applying *Rogers* to Lanham Act claim about use of trademark in an animated TV series).

Under the *Rogers* test, the TAC's Lanham Act claim is doomed to fail "as long as the defendant's use of the mark or other identifying material is (1) 'artistically relevant' to the work and (2) not 'explicitly misleading' as to the source of content of the work." *Brown*, 394 F. Supp. 3d at 442–44 (citing *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490, 495

---

[13] "A claim for false endorsement under section 43(a)(1)(A) must allege that the defendant, (1) in commerce, (2) made a false and misleading representation of fact, (3) in connection with goods or services (4) that is likely to cause consumer confusion as to origin, sponsorship, or approval of the goods or services." *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 605 (S.D.N.Y. 2014) (citation omitted).

[14] While the Supreme Court precluded the use of the *Rogers* test in cases involving "source identifiers"—*i.e.*, "things that function to 'indicate the source' of goods, and so to 'distinguish' them from one's 'manufactured or sold by others'"—it did not reject the application of the *Rogers* test to expressive works and, in this context, *Rogers* remains good Second Circuit law.  *Down to Earth Organics*, 2024 WL 1376532, at \*4 n.4.

(2d Cir. 1989)). Both elements are easily met. "The threshold for 'artistic relevance' is purposely low and will be satisfied unless the use 'has *no* artistic relevance to the underlying work whatsoever.'" *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172, 178 (S.D.N.Y. 2012) (citing *Rogers*, 875 F.2d at 999 (first prong of test requires an "appropriately low threshold of minimal artistic relevance")). Here, it cannot be seriously argued that President Trump's name, voice and likeness are somehow not relevant to *The Trump Tapes*—a collection of Woodward's actual interviews with the President. Nor is the Book "explicitly misleading" as to its source or content. Defendants accurately and prominently describe Woodward as the Book's author and S&S as the publisher. *See, e.g.*, Book at iii. Plaintiff does not allege (nor could he) that the Book or its promotional materials make an "overt claim" that President Trump authored or endorsed the Book, which would require dismissal of his Lanham Act claim as a matter of law.[15]

In sum, the First Amendment and the *Rogers* test establish the utter futility of President Trump's proposed Lanham Act false endorsement claim.

## III.   THE TAC'S STATE LAW CLAIMS ARE PREEMPTED

As set forth below, any amendment is futile because the state law claims in the proposed TAC are preempted by the Copyright Act. This Court earlier ruled that Plaintiff's state law claims for breach of contract, accounting, and unjust enrichment were preempted. Ignoring that careful ruling based on Second Circuit precedent, the TAC realleges the same claims without any material changes, and adds several new equally flawed state law claims. Like variations on a theme, all of

---

[15] *See New Kids On the Block v. News Am. Publ'g Inc.*, 745 F. Supp. 1540, 1545 (C.D. Cal. 1990) (rejecting "theory of implicit endorsement" and holding that "the Lanham Act does not apply unless the defendants falsely and explicitly represented that New Kids sponsored or endorsed the use of the 900 number" at issue), *aff'd on other grounds*, 971 F.2d 302 (9th Cir. 1992); *Cummings*, 67 F. Supp. 3d at 606 (rejecting Lanham Act claim where plaintiff musician's complaint only amounted to allegations that his inclusion in the *Best of Soul Train* program and related promotional materials "implicitly suggest[ed] endorsement or sponsorship").

the state law claims in the TAC are based on the same core set of facts as the copyright claims—
*i.e.*, the same interviews, the same alleged promise by Woodward that the interviews were "for the print book" only, and the same alleged complaint that Woodward exceeded the scope of his permitted use of the interview materials "without fair use justification." TAC ¶ 46. Indeed, Plaintiff admits as much when asserting that "all remaining claims … are so closely related to President Trump's claims under the Copyright Act, Lanham Act, and under the Declaratory Judgment Act … that they form part of the same case or controversy." TAC ¶ 26. And it is precisely because the crux of all the state law claims are equivalent to the copyright claims that Plaintiff's state law claims are all preempted.

As the Court earlier held, "[t]he first prong of the preemption analysis is satisfied as to each of Plaintiff's state law claims because the gravamen of each claim is that Defendants have made wrongful use of the interview recordings, which is a matter 'within the subject matter of copyright.'" Order at 51. President Trump does not address this element in his Motion and appears to concede this point.

Turning to the second prong, in order to escape preemption, Plaintiff must allege an "extra element" "instead of or in addition to the acts of reproduction, performance, distribution or display." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (citing 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B], at 1–14–15). "The critical inquiry is whether such extra elements … change the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *ML Genius Holdings LLC v. Google LLC,* 2022 WL 710744, at *3 (2d Cir. 2022) (citing *In re Jackson*, 972 F.3d 25, 43 (2d Cir. 2020)); s*ee also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). The Second Circuit "take[s] a restrictive view of what extra elements transform an otherwise equivalent claim

16

into one that is qualitatively different from a copyright infringement claim." *Briarpatch*, 373 F.3d at 306; *see also Canal+ Image UK Ltd. v. Lutvak*, 773 F. Supp. 2d 419, 444 (S.D.N.Y. 2011) ("The Second Circuit's 'restrictive' posture seems directed at ensuring that elements are not treated as talismans. . . ). The "extra element" inquiry is not "mechanical." *In re Jackson*, 972 F.3d at 44 n.17. Rather, courts "look at 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" *Briarpatch*, 373 F.3d at 306 (quotation omitted); s*ee also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 49 (2d Cir. 2019).

Under these standards, the TAC's state law claims—which simply repeat or recast the allegations of the SAC—fail to demonstrate the extra element needed to survive preemption. As this Court correctly held, "[i]n seeking to control the release and distribution of his interview responses, Plaintiff is seeking to vindicate a copyright interest in his interview responses." Order at 55. Moreover, for the reasons stated below, the TAC fails to state a claim for each of President Trump's old and new state law cases of action.

### A. Breach of Contract/Quasi-Contract, Breach of Implied Covenant of Good Faith and Negligent Misrepresentation (TAC Counts 5, 6 and 13)

This Court held that the SAC's breach of contract claim was preempted because "Plaintiff's claim that Woodward exceeded the scope of his limited license by releasing the [Book] necessarily means that he is seeking to vindicate his rights under the Copyright Act." Order at 56 (citing *Universal Instruments Corp.*, 924 F.3d at 44).

The TAC does not allege any new facts capable of overcoming preemption. In fact, the TAC confirms that the breach of contract claim arises from Woodward purportedly "exceeding the limited license for Rage and infringing his exclusive rights [under the Copyright Act]," TAC ¶ 132, which this Court has already held to be preempted. *See also* TAC ¶¶ 165-168. President

Trump also adds a negative gloss on these claims by alleging that the contractual claims arise from Woodward's "manipulative edits and deceitful representations" about his intent.  TAC ¶ 169.  But, at most, this goes to Woodward's intent, and the law is clear that "'elements such as awareness or intent' do not save a claim from preemption because they 'alter the action's scope but not its nature.'"  *ML Genius Holdings*, 2022 WL 710744, at \*3 (quoting *Altai*, 982 F.2d at 717).

President Trump's new quasi-contract and negligent misrepresentation causes of action are preempted because they are duplicative and also based on allegations that Woodward exceeded the scope of his permitted use.  *See* TAC ¶¶ 163-170, 216-224.  Finally, the TAC inexplicably pleads a breach of an implied covenant of good faith and fair dealing even though he previously conceded that this claim was "based upon the same facts" as the breach of contract claim and "that, under New York law, there is no separate cause of action."  Order at 48 n.20.  In addition to being impermissibly duplicative, the covenant of good faith and fair dealing claim is preempted because it is based on the same nucleus of facts as the preempted breach of contract claim.

### B.    Accounting (TAC Count 3)

As this Court has noted already, "[n]umerous courts in this District have held that 'claims for an accounting based on the defendant's alleged misappropriation and exploitation of a copyright work are preempted by the Copyright Act."  Order at 57.  Plaintiff attempts to recast his accounting claim as based on Defendants' "use of President Trump's voice, name and persona," TAC ¶ 149, but it is still plainly premised on "Defendants' alleged 'intentional and continued exploitation of the Interview Sound Recordings, Audiobook, and Derivative Works'" Order at 57; TAC ¶ 149.  Because this claim is not qualitatively different from the copyright claims, it must be dismissed.  Order at 29 (citing *Baiul v. NBC Sports*, 2016 WL 1587250, at \*9-10 (S.D.N.Y. Apr. 19, 2016)); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, 2023 WL 5211054, \*10-11

(S.D.N.Y. Aug. 13, 2023) (accounting claim preempted where based on alleged misappropriation and exploitation of copyrighted works).

### C.    Unjust Enrichment (TAC Count 4)

The proposed amendments to Plaintiff's earlier-dismissed unjust enrichment claim are purely superficial and do not defeat preemption.  In another example of game-playing, Plaintiff has resurrected allegations from his First Amended Complaint, which he dropped in the SAC, that Defendants engaged in "manipulative alterations and deceitful context removal" and alleges that these establish the extra elements of "inequity and awareness."  Mot. at 11; TAC ¶ 160; FAC ¶ 58-62; SAC ¶ 111.  But these allegations are merely a gloss on the preempted facts and, at most, suggest that Woodward acted in bad faith.  As the Court has already held, allegations relating to "the understanding of each of the participants" and their "legitimate expectations" are "not relevant to the [preemption] analysis" because they "alter the action's scope but not its nature."  Order at 27 n.22 (citing *Altai*, 982 F.2d at 717).  As such, the unjust enrichment claim remains preempted.

### D.    Misappropriation and Right of Publicity (TAC Count 8 under Fla. Stat. § 540.08 and Count 9 under Florida common law)[16]

Plaintiff's misappropriation and right of publicity claims are expressly and impliedly preempted under Second Circuit law.  These claims, in essence, allege that the Book unlawfully reproduced or otherwise used President Trump's "name, portrait, photograph and/or other likeness."  TAC ¶¶ 187-188.  But such claims are preempted because they do "not seek to vindicate

---

[16] Plaintiff applies Florida law to his state law claims.  While this would be addressed more fully in Defendants' response if Plaintiff is granted leave to amend, the choice of law analysis appears flawed as Plaintiff has conflated residence and domicile in his analysis.  *See* Mot. at 18-19; *see also, e.g.*, *Intellivision v. Microsoft Corp.*, 2008 WL 3884382, at *5 (S.D.N.Y. Aug. 20, 2008) ("[A] cause of action for fraud arises where the loss is sustained and that loss from fraud is deemed to be suffered where its economic impact is felt, normally, the plaintiff's residence.").  While Plaintiff is domiciled in Florida, he resided in Washington D.C. at all relevant times.

any substantial state interests distinct from those furthered by the copyright law." *In re Jackson*, 972 F.3d at 39 (affirming dismissal of right of publicity claims under express and implied preemption doctrines). Simply put, misappropriation claims are preempted when they "aim[] at stopping the reproduction of copyrightable works that embody [the plaintiff's] identity" rather than "the independent use of his identity to sell unrelated goods or services without his permission." *Melendez,* 50 F.4th 294. Here, President Trump simply seeks to prevent the copying of material using his name, voice or likeness in a Book, which falls squarely within the ambit of the Copyright Act.

President Trump argues that the TAC has pleaded an extra element because the use of his name and likeness was "'for purposes of trade' and/or for 'commercial [and] advertising purposes," Mot. at 16, but this argument fails for multiple reasons. *First*, the Book is editorial speech (not commercial speech or advertising) and, therefore, this element is irrelevant.[17] *Second*, "Second Circuit precedent establishes that a 'commercial purposes' element does not sufficiently 'change[] the nature of [a misappropriation claim] so that it is qualitatively different from a copyright infringement claim.'" *In re Jackson*, 972 F.3d at 53 (citation omitted). And where, as here, a misappropriation claim "is a thinly disguised effort to attack [the defendant's] use of [copyrighted material]," the claim is preempted as a matter of law. *Id*. at 54.

---

[17] The cases cited by President Trump are easily distinguishable because they involved advertisements for commercial products, not editorial speech relating to a book. *See, e.g.*, *Molina v. Phoenix Sound, Inc.*, 297 A.D.2d 595, 598–99 (1st Dep't 2002) (plaintiff's photograph on a flyer advertising an adult nightclub); *Passelaigue v. Getty Images (US), Inc.*, 2018 WL 1156011, at *6 (S.D.N.Y. Mar. 1, 2018) (model's likeness used "for purposes of advertising or trade").

### E.    Fraud and Fraudulent Inducement (TAC Count 10) and Constructive Fraud (Count 11)

Plaintiff's fraud claim is preempted because it is based on the same factual predicate as his precluded breach of contract, constructive fraud and negligent misrepresentation claims—*i.e.*, that Woodward allegedly promised "the Interview Sound Recordings would be used solely for the limited purpose of … *Rage*."  TAC ¶ 198.  *See Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1218 (S.D. Fla. 2021) (holding that a "fraud claim was preempted by the copyright infringement claim because the core of the allegations was the same for both claims…."), *amended on reconsideration in part,* 2022 WL 845468 (S.D. Fla. Mar. 22, 2022).

The constructive fraud claim is also preempted because it is based on the allegation that Woodward exceeded the scope of his license.  *See* TAC ¶ 210 ("President Trump reposed trust and confidence in Woodward, and Woodward accepted that trust and confidence by undertaking to use the Interview Sound Recordings only for the limited purpose authorized by President Trump."). The same goes for the negligent misrepresentation claim, *see* TAC ¶¶ 216-224, which is preempted because it is "based on a duty not to infringe upon the intellectual property rights of the plaintiff" and "merely restate[s] the plaintiff's copyright infringement claim."  *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 227–28 (S.D.N.Y. 2010).[18]

## IV.    PRESIDENT TRUMP'S STATE LAW CLAIMS FAIL AS A MATTER OF LAW

In addition to being preempted, President Trump's state law claims are defective for multiple reasons that would require immediate dismissal and render the TAC futile.

---

[18] President Trump suggests that "[f]raud claims … are generally not preempted by the Copyright Act," but this is only true when the plaintiff has alleged extra elements that President Trump has failed to allege here.  *See infra Miller v. Holtzbrinck Publishers*, *L.L.C*., 377 F. App'x 72, 74 (2d Cir. 2010) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

### A.   Breach of Contract, Quasi-Contract and Breach of Implied Covenant of Good Faith (TAC Counts 5 and 6)

The TAC's breach of contract claims fail as a matter of law for the reasons Defendants raised in their motion to dismiss. *First*, "there are no plausible allegations that there was a meeting of the minds where Woodward agreed President Trump 'owned' the interviews and granted Woodward a 'limited license' to use" them. *See* Dkt. 73 ("MTD") at 30. Indeed, many of Plaintiff's new allegations (and the Book itself) support the opposite conclusion. Throughout the interviews, Woodward stresses that they were "for the history," "on the record," "for history, for the book," "this is all for the history—this is all for the serious history," and that he was "work[ing] on this history of your presidency." TAC ¶¶ 66-68, 71, 74, 75; *see also* Mot. at 19 n.6.[19] These statements indicate that the interviews would *not* be limited to *Rage* at all and confirm the lack of a meeting of the minds. *Second*, President Trump's alleged verbal prohibition on using the interviews for any other purpose in perpetuity violated the statute of frauds. *See* MTD at 30. *Third*, the duplicative breach of the covenant of good faith and fair dealing claim fails because it "merely … restate[s] his breach of contract claim in other dress." *Id*. (citing *O'Grady v. BlueCrest Cap. Mgmt. LLP*, 111 F. Supp. 3d 494, 504 (S.D.N.Y. 2015)).

### B.   Unjust Enrichment, Accounting, and Constructive Fraud (TAC Counts 3, 4 and 11)

The TAC's unjust enrichment, accounting and constructive fraud claims all fail for lack of a plausible allegation of fiduciary duty. The TAC alleges that there was a "fiduciary relationship" between President Trump and Woodward "created by their joint authorship and collaborative

---

[19] And Plaintiff's new allegations supposedly reflecting Woodward's admission that he never sought permission to use the interviews beyond in *Rage*—e.g., "These interviews were originally conducted for my 2020 book, Rage"—are quotes created out of whole cloth and should be ignored by this Court. TAC ¶ 82.

intent …" *See* TAC ¶ 149. *See also id*. ¶¶ 131, 160. But President Trump's allegations of a mutual intent to create a joint work directly contradict his earlier pleadings and should be disregarded for the reasons set forth above. *See supra* Section I.A.1. Moreover, even if President Trump and Woodward were joint authors—which they decidedly were not—that does not create a fiduciary relationship. *Gasey v. Kalakuta Sunrise, LLC,* 422 F. Supp. 3d 807, 819 (S.D.N.Y. 2019) ("[T]here are traditionally no fiduciary duties owed between joint authors"). President Trump alleges nothing else to support the wholly implausible conclusion that President Trump and Woodward were somehow in a fiduciary relationship. All of his claims based on that missing element fail.

### C.    Misappropriation/Right of Publicity (TAC Counts 8 and 9)

President Trump has failed to plead misappropriation of his likeness either under Florida's right of publicity statute or its common law. The relevant Florida statute expressly states that the law does not apply to "[t]he publication… or use of the name or likeness of any person in any … book … or publication as part of any bona fide news report or presentation having a current and legitimate public interest and where such name or likeness is not used for advertising purposes." Fla. Stat. § 540.08(4)(a).[20] The common law cause of action for misappropriation is "substantially identical," and thus must have a similar exception for editorial speech on matters of legitimate public interest. *See Almeida*, 456 F.3d at 1320 n.1. Put simply, right of publicity claims rest on commercial exploitation of one's name or likeness, but the Book is not commercial speech. *U.S. v. United Foods, Inc.*, 533 U.S. 405, 409 (2001) (commercial speech is "speech that does no more

---

[20] "[T]he use of an image in a publication is not for a 'commercial purpose' under section 540.08 merely because the publication is offered for sale." *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006); *see also Tyne*, 901 So. 2d at 806 (selling a book "in no way distinguishes this book from almost all other books, magazines or newspapers and simply does not amount to the kind of commercial exploitation prohibited by the statute.").

than propose a commercial transaction"). As with his Lanham Act claim, there is no serious dispute that the interviews of a sitting President of the United States and, together with Woodward's commentary concerning the interviews, address issues of utmost "current and legitimate public interest." Accordingly, the First Amendment fully protects the Book against misappropriation claims. *Tyne v. Time Warner Ent. Co.*, 901 So. 2d 802, 806 (Fla. 2005) (citing cases).[21]

### D.    Fraud/Fraudulent Inducement (TAC Counts 10)

The TAC's fraud claim fails because it fails to allege one of three necessary elements—*i.e.*, (i) "[a] legal duty separate from the duty to perform under the contract," (ii) "[a] fraudulent misrepresentation collateral or extraneous to the contract," or (iii) "[s]pecial damages that are caused by the misrepresentation and unrecoverable as contract damages…." *Miller*, 377 F. App'x at 74. Rather, President Trump duplicates his breach of contract claim by alleging fraud based on Woodward's alleged breach of a promise "that the Interview Sound Recordings would be used solely for the limited purpose of … *Rage*." TAC ¶ 198; *id.* at ¶¶ 66-86. The only fact the TAC introduces to distinguish its fraud claims from breach of contract is that Woodward made these representations "with the intent to deceive." *Id*. at ¶ 202. But "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud]

---

[21] Plaintiff's authorities all involve advertising, rather than the editorial speech at issue here, and are easily distinguishable. Mot. at 16-17. *Coton v. Televised Visual X-Ography, Inc.* was based on a model whose photograph was used "on the packaging of a pornographic movie DVD," despite her having "no association with the pornographic industry." *Coton*, 740 F. Supp. 2d 1299, 1311 (M.D. Fla. 2010). *See also, Molina*, 297 A.D.2d at 598–99 (plaintiff's picture used to advertise adult nightclub); *Passelaigue*, 2018 WL 1156011 at *2 ("Passelaigue learned for the first time that headshot images of her were being used for an advertising campaign for Botox.… She had never modeled for Botox or Allergan.").

claim," and this count of the TAC should be dismissed accordingly. *Miller*, 377 F. App'x. at 74 (citation and internal quotation marks omitted).

### E.    Negligent Misrepresentation (Count 12)

Finally, President Trump's negligent misrepresentation claim should be dismissed for failure to plausibly plead that Woodward "made a misrepresentation of material fact that he believed to be true but which was in fact false[.]"  Mot. at 24.  As the Book clearly states, Woodward decided to take the "unusual step of releasing these recordings after relistening" to them "earlier this year" (referring to 2022), long after he published *Rage*.  Accordingly, since he did not know that he would use the recordings for the Book at the time of the alleged misrepresentation, the negligent misrepresentation claim fails as a matter of law.

### CONCLUSION

Defendants respectfully requests that the Court deny Plaintiff's motion for leave to amend his pleadings and grant such other relief as it deems just and proper.

Dated:  October 10, 2025                         **DAVIS WRIGHT TREMAINE LLP**

*/s/ Elizabeth A. McNamara*

Elizabeth A. McNamara
Linda J. Steinman
John M. Browning
Leena M. Charlton
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Phone: (212) 489-8230
Email: lizmcnamara@dwt.com
          lindasteinman@dwt.com
          jackbrowning@dwt.com
          leenacharlton@dwt.com

*Attorneys for Robert Woodward,*
*Simon & Schuster, Inc. and*
*Paramount Global*

**WILLIAMS & CONNOLLY\***

Kevin T. Baine
Thomas G. Hentoff (*pro hac vice*)

680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5804

Email: kbaine@wc.com
　　　 thentoff@wc.com

\**Of counsel to Robert Woodward*