**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PRESIDENT DONALD J. TRUMP, 45th and 47th President of the United States, in his individual capacity, | Case No. 1:23-cv-06883-PGG |
| *Plaintiff*, | |
| v. | |
| SIMON & SCHUSTER, INC., ROBERT WOODWARD, and PARAMOUNT GLOBAL, | |
| *Defendants*. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ..................................................................................................................... 2

   I.   THE COURT HAS ALREADY HELD THAT AMENDMENT IS NOT FUTILE ........................... 2

   II.   THE CLAIMS SOUNDING IN COPYRIGHT ........................................................... 3

      A.   DEFENDANTS CONFLATE THE DERIVATIVE WORK WITH THE ORIGINAL RECORDINGS ............ 3

      B.   SUBJECTIVE INTENT IN MAKING A COLLABORATIVE ORAL HISTORY ..................................... 4

      C.   OBJECTIVE CONTROL: EDITING DOES NOT EQUATE TO AUTHORSHIP .................................... 4

      D.   FIXATION UNDER PRESIDENT TRUMP'S AUTHORITY .......................................................... 5

   III.   LANHAM ACT – FALSE ENDORSEMENT ................................................................ 6

   IV.   PRESIDENT TRUMP SUFFICIENTLY PLEADS CLAIMS FOR MISAPPROPRIATION (COUNTS VIII AND IX) .................................................................................................. 8

      i.   Under New York Choice-of-Law Rules, Florida Substantive Law Applies ............................ 8

      ii.   The TAC Adequately States Misappropriation Claims ..................................................... 9

      iii.   The Misappropriation Claims Are Not Preempted ......................................................... 12

   V.   PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR FRAUD/FRAUDULENT INDUCEMENT (COUNT X) .................................................................................................. 15

      i.   Under New York Choice-of-Law Rules, Florida Substantive Law Applies ......................... 15

      ii.   Elements and Analysis—The TAC States A Claim For Fraud/Fraudulent Inducement ........ 15

   VI.   PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR CONSTRUCTIVE FRAUD (COUNT XI) .... 17

      i.   Under New York Choice-of-Law Rules, Florida Substantive Law Applies ......................... 17

      ii.   Elements and Analysis—The TAC States A Claim For Constructive Fraud ....................... 17

   VII.   PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR NEGLIGENT MISREPRESENTATION ...... 18

      i.   Under New York Choice-of-Law Rules, Florida Substantive Law Applies ......................... 18

      ii.   Elements and Analysis—The TAC States A Claim For Negligent Misrepresentation .......... 19

CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**CASES**

*16 Casa Duse LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) ............................................................................. 3, 4

*Almeida v. Amazon.com, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ............................................................................ 12

*Brown v. Ames*,
  201 F.3d 654 (5th Cir. 2000) ............................................................................... 15

*Brown v. Showtime Networks, Inc.*,
  394 F. Supp. 3d 418 (S.D.N.Y. 2019) ..................................................................... 7

*Childress v. Taylor*,
  945 F.2d 500 (2d Cir. 1991) .................................................................................. 3

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989) .............................................................................................. 6

*Down to Earth Organics, LLC v. Efron*,
  2024 2024 U.S. Dist. LEXIS 60825 (S.D.N.Y. Mar. 31, 2024)..................................... 7

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ................................................................................ 15

*Dziegielewski v. Scalero*,
  352 So.3d 931 (Fla. 5th DCA 2022) ........................................................................ 19

*Facenda v. N.F.L. Films, Inc.*,
  542 F.3d 1007 (3d Cir. 2008) ............................................................................ 7, 14

*Falwell v. Penthouse Int'l*,
  521 F. Supp. 1204 (W.D. Va. 1981) ........................................................................ 5

Garcia v. Google,
  786 F.3d 733 (9th Cir. 2015) .................................................................................. 5

*Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*,
  713 F. Supp. 2d 215 (S.D.N.Y. 2010) ..................................................................... 20

*Gasery v. Kalakuta Sunrise, LLC*,
  422 F.Supp.3d 807 (S.D.N.Y. 2019) ................................................................. 17, 18

*In re Jackson*,
  972 F.3d 25 (2d. Cir. 2020) ............................................................................ 13, 14

*Intellivision v. Microsoft Corp.*,
     2008 WL 3884382 (S.D.N.Y. Aug. 20, 2008) .............................................................. 9

*Jack Daniel's Props., Inc. v. VIP Prods., LLC*,
     599 U.S. 140 (2023) .................................................................................................. 7

*Lehrman v. Lovo, Inc.*,
     2025 U.S. Dist. LEXIS 13146 (S.D.N.Y. 2025) ......................................................... 8

*Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*,
     868 F. Supp. 2d 172 (S.D.N.Y. 2012) ....................................................................... 7

*Melendez v. Sirius XM Radio, Inc.*,
     50 F.4th 294 (2d. Cir. 2022) .................................................................................... 14

*Midler v. Ford Motor Co.*,
     849 F.2d 460 (9th Cir. 1988) .............................................................................. 15, 16

*Millennium Funding, Inc. v. 1701 Mgmt. LLC*,
     576 F. Supp. 3d 1192 (S.D. Fla. 2021) .................................................................... 16

*Miller v. Holtzbrinck Publishers, LLC*,
     37 Fed. App'x 72 (2d Cir. 2010) .............................................................................. 16

*Nat'l Credit Union Admin. Bd. v. U.S. Bank N.A.*,
     898 F.3d 243 (2d Cir. 2018) ...................................................................................... 3

*Perez v. 117 Ave. of the Americas Food Corp.*, No. 15-CV-8151 (JPO),
     2016 WL 5415090 (S.D.N.Y. Sept. 27, 2016) ..................................................... 17, 20

*Rogers v. Grimaldi*,
     875 F.2d 994 (2d Cir. 1989) ...................................................................................... 6

*Smith v. Casey*,
     2014 WL 11899475 (S.D. Fla. 2014) ....................................................................... 10

*Thomson v. Larson*,
     147 F.3d 195 (2d Cir. 1998) ...................................................................................... 4

*Tyne v. Time Warner Entertainment Co., L.P.*,
     901 So.2d 802 (Fla. 2005) .................................................................................. 11, 12

*U.S. v. United Foods, Inc.*,
     533 U.S. 405 (2001) ................................................................................................ 12

## STATUTES

17 U.S.C. § 101 ................................................................................................................. 5

Fla. Stat. § 540.08 ............................................................................................................. 8, 9, 11

**RULES**

Fed. R. Civ. P. 15(a)(2) ....................................................................................................... 3

**PRELIMINARY STATEMENT**

Defendants' opposition improperly attempts to reargue an issue this Court has already decided, while misunderstanding the relevant legal questions. Opp. at 1–2.[1]  In its July 18, 2025, Order, the Court held that it *"cannot find at this stage that any amendment would be futile."*  ECF No. 83 at 58.  Plaintiff's proposed Third Amended Complaint ("TAC") clarifies ownership and authorship, details the limited license surrounding the original Interview Sound Recordings between President Trump and Bob Woodward ("Woodward"), and adds additional state law claims that fit these particular circumstances.  Defendants, rather than address whether the TAC is futile, which it is not, improperly invite the Court to adjudicate the merits prematurely and on an incorrect footing, confusing the Interview Sound Recordings with their derivatives.[2]

Defendants concede and admit the following:  (i) Both Woodward and President Trump were aware of the recordings and planned for their conversations to be recorded; (ii) Woodward represented that he was only going to be using these recordings as the basis for his first derivative work, later entitled "*Rage*;" (iii) Woodward has admitted that this is the first time that he has ever taken the original recordings of a subject for one work and later on published them for a second derivative audio work; (iv) President Trump was neither asked for, nor gave his consent to the further use of the Interview Sound Recordings; (v) Defendants now wrongly claim full ownership of the entirety of the Interview Sound Recordings; and (vi) President Trump was listed on derivative works as a contributor and narrator.

---

[1] Citations to "Opp." refer to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Third Amended Complaint [ECF 93] (filed Oct. 10, 2025).  Plaintiff also uses the same abbreviated and defined terms as in his opening brief.

[2] Nearly all of the Defendants' arguments in opposition focus on the derivative works and not the Interview Sound Recordings and, as such, are irrelevant to the TAC as drafted.

Further, the Plaintiff has been hindered in drafting the TAC because the unedited Interview Sound Recordings have never been disclosed. Instead, before the Court and Plaintiff, is an edited derivative based on the unedited Interview Sound Recordings, tailored to the advantage of Defendants. Because this Court made factual determinations regarding the lack of creative input in the Interview Sound Recordings without hearing all of them, the TAC seeks to squarely address what might have been overlooked previously, based on the edited snapshot provided.[3] The TAC directly responds to the Court's prior order and provides factual clarifications[4] regarding authorship, ownership, and scope of consent, none of which contradict prior pleadings. The amendments were prepared in good faith following a prolonged procedural hiatus exceeding eighteen months and are necessary for full adjudication on the merits.

As to the Lanham Act and additional state law claims, Defendants either fail to engage or make submissions that require the Court to improperly weigh the sufficiency of evidence. Therefore, this Court should grant the motion and allow for the TAC to proceed.

## ARGUMENT

### I.    THE COURT HAS ALREADY HELD THAT AMENDMENT IS NOT FUTILE

---

[3] Once this matter proceeds to discovery, the complete unredacted and unedited Interview Sound Recordings will afford the Court insight into the full extent of the President's creative input.

[4] A few citations or parentheticals appearing internal notes of Mr. Garson, have, through the inevitable migration of drafts over several years, acquired imperfections of form rather than substance. *See* Opp at 4 n.3 & 6. Thus, several thoughts, attributed as quotes (TAC ¶¶ 67, 82, 90, 93) regretfully ended up in the TAC, due to an error by Mr. Garson. Plaintiff will correct any such errata in the TAC and trusts the Court will forgive any residual relics of typographical heritage. Plaintiff, therefore, does not rely on ¶¶ 67, 82, 90, 93 from the TAC, but does rely on the plethora of other quotes attributable to the parties, which are indeed found in *The Trump Tapes*. *See, e.g.*, TAC ¶¶ 68-71, 74-78, which throughout their opposition, Defendants strategically ignore, preferring to fight the exception rather than the rule.

This Court should "freely give[]" leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, the Court already determined that amendment would *not* necessarily be futile. That determination forecloses Defendants' renewed futility arguments. Each new allegation in the TAC directly addresses the Court's prior dismissal Order by providing clearer allegations of joint intent and fixation under Plaintiff's authority, explicit pleading of the limited license, and further seeks leave to add additional claims, thereby providing plausible bases for liability and relief. In short, exactly what the Court ordered.

Defendants' refrain of "futility" ignores both the Court's prior ruling and Rule 15's broad standard. An amendment is futile only if it would fail under Rule 12(b)(6). *Nat'l Credit Union Admin. Bd. v. U.S. Bank N.A.*, 898 F.3d 243 (2d Cir. 2018).

## II.    THE CLAIMS SOUNDING IN COPYRIGHT

### A.    DEFENDANTS CONFLATE THE DERIVATIVE WORK WITH THE ORIGINAL RECORDINGS

Defendants do not distinguish between *The Trump Tapes* audiobook and the 2019–2020 Interview Sound Recordings from which they are derived. *See* Opp. at 4-8. The law, however, concerns the work at the time of creation, not its later repackaging. *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991). Woodward's self-serving post-publication pronouncements cannot erase contemporaneous intent; they are the literary equivalent to an author writing his own review. They were not contemporaneous. The relevant "work" is the jointly created recorded interviews, which Defendants fail to address, either by inadvertence or design, in their opposition.

The Opposition invites the Court to declare the Interview Sound Recordings inseparable from their derivatives while, at the same time, withholding the full recordings. Opp. at 10–11. The derivative recordings already demonstrate ample independent bases for

copyrightability.  Until discovery provides the entire record, the claim cannot be dismissed. *16 Casa Duse LLC v. Merkin*, 791 F.3d 247 (2d Cir. 2015) recognizes that separability and originality are factual questions, not fodder for a futility motion.

### B.  SUBJECTIVE INTENT IN MAKING A COLLABORATIVE ORAL HISTORY

Defendants insist that the TAC changes Plaintiff's theory of authorship. Opp. at 5–6. On the contrary, that argument bears no relation to the allegations of the TAC, as Defendants continue to focus on the derivative works rather than the Interview Sound Recordings. The TAC pleads that President Trump initiated sessions, set topics, and repeatedly called Woodward to continue what had become a running dialogue.  That is hardly the behavior of a passive interviewee. *Thomson v. Larson*, 147 F.3d 195 (2d Cir. 1998) recognizes that intent can be inferred from conduct.  Here, the conduct was plainly cooperative, two participants producing an integrated oral history, not a journalist simply dictating carefully crafted questions.

### C.  OBJECTIVE CONTROL: EDITING DOES NOT EQUATE TO AUTHORSHIP

Defendants equate control over editing of a derivative work with control over creation of the original Interview Sound Recordings (Opp. at 7–8), a confusion *16 Casa Duse LLC*, 791 F.3d, *supra* at *id*. expressly rejects.  As the Second Circuit explained, "[a]s a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression[.]" *Id.* at 258 (*quoting Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)).

President Trump's consent, direction, and supervision of the recordings meet that standard precisely.

Woodward's later manipulation of the material for a derivative audiobook does not make him the sole author of the underlying work any more than a film editor becomes the writer of the script. This is yet another example of how the Defendants fail to address the arguments of futility and the Interview Sound Recordings.

Defendants cite *Falwell v. Penthouse Int'l*, 521 F. Supp. 1204 (W.D. Va. 1981), as though a one-off magazine interview equates to a year-long collaboration. It does not. There, the subject had no control and the publisher no restraint. Here, President Trump is even credited, by Defendants themselves, as "Narrator." That label in and of itself concedes creative participation. Even *Falwell* acknowledged that a publisher exceeding consent could face contractual liability. *See id.* at 1208-10 ("Plaintiff is free to pursue a breach of contract . . . Plaintiff is entitled to recover . . . if Penthouse caused the writers to violate the terms under which the interview was granted. However, as previously suggested, these are matters of contract and tortious interference which are not properly before the court.") The TAC pleads precisely such a breach.

## D. FIXATION UNDER PRESIDENT TRUMP'S AUTHORITY

Defendants again conflate fixation of the original Interview Sound Recordings with later derivative use. Opp. at 12–13. In *Garcia v. Google, Inc.*, the *en banc* 9th Circuit held that under the Copyright Act, "fixation must be done 'by or under the authority of the author.'" 786 F.3d 733, 741 (9th Cir. 2015) (*en banc*) (citing 17 U.S.C. § 101). The *Garcia* Court applied § 101 to reject an inference of authorship where the work was not fixed "by or under [her] authority[.]" *Id*. Unlike *Garcia*, however, President Trump expressly authorized and directed the recording of his statements for a defined purpose, the book *Rage*, and retained control over the conditions of those recordings. That is fixation under his authority. The fixation occurred under the President's

authority: he approved the recording, dictated the circumstances, and limited its purpose. "[T]he author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Defendant's reliance on *Garcia* is misplaced. There, the performer was deceived and had no authority; here, President Trump directed a substantial portion of the process: he chose the time, the place, and in large part the subject matter. Contrary to Defendants' beliefs, *Garcia* actually supports President Trump's position on his ownership in the Interview Sound Recordings.

### III.    LANHAM ACT – FALSE ENDORSEMENT

Defendants would have this Court believe that the President's role in the *Trump Tapes* was simply that of serving as a mere source for a news report. This confused readers and listeners because the President's identifiable expressions, humor, poise, and finesse were used, and characterized as endorsements, of *The Trump Tapes*. In reality, the President was actively reinforcing his own brand - precisely the persona elements most consumers seek out when they engage with anything relating to President Trump.

*The Trump Tapes* are not artistic commentary; they are a commodity sold by trading on the President's identity. That is commercial speech, not art criticism. This reality is why Defendants' reliance on *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), Opp. 12, is misplaced: *Rogers* dealt with a film title, not a product marketed through the plaintiff's own voice.

Under *Rogers*, the question was whether the use was "artistically relevant" and "not explicitly misleading." Here, the use of President Trump's name and voice as "Narrator" is nothing *but* explicit. The invocation of "artistic relevance" again underscores President Trump's position,

because his persona is the most relevant factor of the commercial product that is *The Trump Tapes.*

Defendants' reliance on *Down to Earth Organics, LLC v. Efron*, 2024 2024 U.S. Dist. LEXIS 60825 (S.D.N.Y. Mar. 31, 2024), *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418 (S.D.N.Y. 2019), and *Louis Vuitton Malletier S.A. v. Warner Bros. Ent. Inc.*, 868 F. Supp. 2d 172 (S.D.N.Y. 2012) only highlights the difference between editorial documentaries and commercial products marketed through the subject's own persona. Those decisions protected bona fide expressive commentary; none involved the sale of a product promoted by, and at the heart of which is, the voice or name of the individual depicted. The *Trump Tapes* are not a news report; they are a commercial product. Even *Jack Daniel's Props., Inc. v. VIP Prods., LLC*, 599 U.S. 140 (2023), confirms that the *Rogers* safe harbor collapses once a use functions as a source identifier—the very circumstance here, where Defendants marketed the work by invoking the President's own voice and name.

Defendants brush aside the 'Narrator' credit as an irrelevant third-party editorial description (Opp. at 13 n.11), but that deflection misses the point: Defendants are the ones who sold and distributed the work under that description in order to maximize sales (see further at *infra*, n.7), and that is worthy of much discovery. In *Facenda v. NFL Films*, 542 F.3d 1007 (3d Cir. 2008), the Third Circuit held that using a broadcaster's distinctive voice in a promotional video for a video game created an actionable false endorsement claim. The parallel here is unavoidable. *The Trump Tapes* employ the President's actual voice to "underscore authenticity." That is both the product and the marketing, certainly not journalism. The use of the President's voice is not an artistic flourish; it is the selling point. *See* TAC ¶1.

Defendant's claim to journalistic purpose is not genuine.  The recordings were repackaged and sold two years later, hardly a breaking news story. *Falwell* protected editorial freedom; it did not grant immunity for post-hoc monetization. The *Trump Tapes* are no more "news" than a commemorative plaque is reportage.

Defendants' effort to dismiss *Lehrman v. Lovo, Inc.* 2025 U.S. Dist. LEXIS 13146 (S.D.N.Y. 2025) (Opp. at 13 n.12) as a curiosity of "AI litigation" misses the point. Only a few days before this Court's ruling, Judge Oetken delivered a comprehensive analysis of the Lanham Act, and his holding was not about software, but rather about misrepresentation.  He held that the unauthorized use of a public figure's voice to promote a product raises a triable question of consumer confusion under §43(a).  That principle applies with equal force when the voice belongs to the President and the product is an audiobook. The Opposition's insistence that the Lanham Act offers no remedy is simply out of date. Defendants' invocation of "the historical record" as though it is a legal maxim is deeply misplaced. By that, mistaken, theory, everything that ever occurred could be republished or used commercially without limit or hindrance. That is wrong. It is up to a jury, as fact finder, to determine whether Defendants represented, as they did, that President Trump actually endorsed *The Trump Tapes*, which he did not.

## IV.    PRESIDENT TRUMP SUFFICIENTLY PLEADS CLAIMS FOR MISAPPROPRIATION (COUNTS VIII AND IX)

President Trump seeks leave to plead two claims for misappropriation of his right of publicity, one claim under Fla. Stat. § 540.08 and the other under Florida common law, *see* ECF 89 at 14-17; ECF 88-2 ("TAC") ¶¶185-196.

### i.    Under New York Choice-of-Law Rules, Florida Substantive Law Applies

As previously demonstrated, under New York's state-law choice-of-law rules, Florida law applies to President Trump's proposed state-law claims. ECF 89 at 14-15. Defendants do not oppose this point and thereby concede it.

With respect to a claim for misappropriation, New York's choice-of-law rules point to Florida substantive law—the domicile of President Trump. ECF 89 at 15.

Defendants claim that President Trump's "choice of law analysis appears to be flawed as [President Trump] . . . conflated resident and domicile . . . . [w]hile Plaintiff is *domiciled* in Florida, he *resided* in Washington D.C. at all relevant times."  Opp. at 19 n.16 (emphasis added) (citing *Intellivision v. Microsoft Corp.*, 2008 WL 3884382, at *5 (S.D.N.Y. Aug. 20, 2008)).  That argument is meritless.  First, "at all relevant times[,]" when Defendants published *The Trump Tapes* in late 2022, and caused damages, President Trump was domiciled and resided in Florida, not Washington, D.C.  Anyway, *Intellivision*, addressed the issue of where the "loss from *fraud* is deemed to be suffered[,]" *id.*, not where damages are suffered on a claim for misappropriation. Defendants, furthermore, failed to address the cases cited by President Trump, which state that the law of a plaintiff's *domicile*, not residence, applies to misappropriation claims.  *See* ECF 89 at 15.  Furthermore, Defendants' contention, in fact, supports President Trump, *see* Opp. at 19 n.16 ("Plaintiff is domiciled in Florida[]").

> ii.  The TAC Adequately States Misappropriation Claims

In opposition, Defendants improperly invoke the statutorily provided exception, which bars misappropriation claims arising from "any bona fide news report or presentation having a current and legitimate public interest[.]" Opp. at 23-24 (citing Fla. Stat. § 540.08(4)(a)). Defendants conveniently ignore, however, the exception to the exception. The exception invoked

by Defendants applies *only* when a person's "name or likeness is *not* used for advertising purposes." *Id.* (emphasis added). Stated otherwise, the exception does not apply when the subject's name or likeness *is* used as part of advertising. *Id*. Here, Defendants blatantly used President Trump's name and likeness for "advertising purposes[,]" *id*., "*separate and apart* from the publication." *Smith v. Casey*, 2014 WL 11899475, at *6 (S.D. Fla. 2014) (citing cases).

Defendants sell *The Trump Tapes* on their website (and elsewhere) for $26.99, by branding President Trump as the performer and narrator: "Read by Donald J. Trump[.]"  That is not an incidental identification of President Trump within a bona fide news report; it is the very selling point of *The Trump Tapes*–a commercial product.  *See e.g.,* TAC ¶¶ 62-64, 123-129 (statements that Defendants exploited President Trump's name, image, and likeness to directly promote and sell *The Trump Tapes*).

Moreover, *The Trump Tapes* was not the work of a journalist breaking news in a news article or the like; Defendants had already published *Rage*, two years prior. *See* TAC ¶¶ 111 (*Rage* was published in or about September 14, 2020), *id*. ¶ 60 (*The Trump Tapes* were published in or about November 11, 2022).  The reason for the publication of *The Trump Tapes,* two years after *Rage* was published, was not journalism—it was merchandising.   On every sales platform, Defendants' use of President Trump's name, image, likeness, and even voice was no accident. The sales listings gush about "the intimate and astonishing audio archive of [Woodward]'s 20 interviews with Donald Trump," underscoring the fact that the sound of the President's voice is a collectible commodity.  These descriptions do not report—they advertise.  They are designed to move units, not enlighten the electorate.

-10-

And so, while Defendants now wrap themselves in the self-righteous garb of "newsworthiness," or "journalism," the reality is indeed far more commercial. This was not an act of public service but a commercial enterprise—an exercise in monetizing access and exploiting a President's likeness for profit, without his approval or participation.

Additionally, the statute only bars claims which "hav[e] a *current* and legitimate public interest[.]" Fla. Stat. § 540.08(4)(a) (emphasis added). Whatever "current and legitimate public interest" may have existed in the substance of the Sound Interview Recordings was fully served in 2020 by the Defendants' publication of *Rage*, which presented the very same stories, themes, and issues covered in the Sound Interview Recordings. In fact, the book's cover proudly describes it as "The Historical Record[--]" so much for current "newsworthiness."

Giving meaning to every word in the statute, the newsworthy defense protects the dissemination of *current* information to inform the public, not the two-year *delayed* release of the underlying raw material after its substance has already been harvested for reporting. Thus, the two-year gap between the publication of *Rage* and the publication of *The Trump Tapes* severs any plausible claim that the recordings were published to serve a "current and legitimate public concern."

In any event, the three cases cited by Defendant are entirely distinguishable. *First*, in *Tyne v. Time Warner Entertainment Co., L.P.*, 901 So.2d 802 (Fla. 2005), Time Warner Bros. created a dramatized movie, based on a book, which recounted a fishing vessel getting lost at sea. *Id*. at 803-804. There, the issue before the Florida Supreme Court was "does the phrase 'for purposes of trade or for any commercial or advertising purpose' in section 540.08(1) . . . include publications *which do not directly promote* a product or service?" *Id*. at 806 (cleaned up and

emphasis added). The court answered in the negative, because, logically, a claim for misappropriation usually fails when the publication is not aimed at "*directly* promot[ing] a product or service because of the way that [they] associate[d] the person's name or personality[.]" *Id*. at 808 (emphasis added). Here, by contrast, Defendants exploited President Trump's name, image, likeness, and voice to directly promote a product—*The Trump Tapes*. Make no mistake, there was nothing indirect about it or in the way Defendants associated President Trump. *See, e.g.*, TAC ¶¶ 62-64, 123-129.

*Second*, Defendants cite *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1318 (11th Cir. 2006). That case, however, involved a plaintiff suing Amazon, an online *retailer*, who "d[id] not make editorial choices as to the book cover images it displays on its website. The choice was made by the publisher Ophelia Editions." *Id*. at 1326. Thus, the court held that "Amazon did not use Almeida's image for the purpose of directly promoting a product[.]" *Id*. at 1327. Here, by contrast, President Trump seeks relief against the author and publisher, not an online retailer who had no editorial control, and therefore, did not misappropriate.

*Third*, Defendants cite *U.S. v. United Foods, Inc.*, 533 U.S. 405, 409 (2001), for the proposition that "commercial speech is speech that does no more than propose a commercial transaction[.]" That case however, is irrelevant; there, the question was "whether the government may underwrite and sponsor speech with a certain viewpoint using special subsidies exacted from a designated class of persons, some of whom object to the idea being advanced." *Id*. at 410. Here by contrast, Defendants exploited President Trump's name, image, and likeness, unrelated to any government subsidies.

> iii.     The Misappropriation Claims Are Not Preempted

As previously demonstrated, claims for misappropriation are generally not preempted by the Copyright Act. *See* ECF 89 at 16-17. In opposition, however, Defendants try to urge preemption because this claim supposedly "do[es] not seek to vindicate any substantial state interests distinct from those furthered by the copyright law." Opp. at 19-20.

This contention is meritless. Here, President Trump's proposed claims for misappropriation do seek to vindicate a substantial state interest, distinct from those furthered by copyright law. *See* ECF 89 at 16-17 (citing authorities). Defendants rely on *In re Jackson*, 972 F.3d 25, 39 (2d. Cir. 2020), yet that decision rests on an entirely different footing. There, the court examined whether a "Connecticut right of publicity claim[,]" "assert[ed] a sufficiently substantial state interest, distinct from the interests underlying federal copyright law, to evade preemption." *Id*. In analyzing the Connecticut right of publicity claim, which contains different elements than those under Florida law, the Court held that "[plaintiff] did not employ Jackson's name or persona in a manner that falsely implied Jackson's endorsement of [plaintiff], his mixtape, or his forthcoming album, nor in a manner that would induce fans to acquire or pay heed to the mixtape merely because it included Jackson's name and a sound that could be identified as his voice. . . . Nor is [plaintiff's] reference to Jackson's persona in any way derogatory, or an invasion of Jackson's privacy." *Id*. at 38. Critically, there, the analysis was:

> [W]hether, on the one hand, the defendant's use of a work involving the plaintiff's likeness seeks advantage for the defendant on the basis of the plaintiff's identity— as where the plaintiff is identified in a manner that implies the plaintiff's endorsement, sponsorship, or approval (or in some cases the plaintiff's disapproval or rejection) of the defendant or its product, or holds opinions favored (or disfavored) by the defendant, or where . . . the value of what the defendant distributes lies in its reference to the identity of the plaintiff shown—what might be called 'identity emphasis,' which argues against preemption—or whether, on the other hand, the advantage sought by the defendant flows from the

reproduction or dissemination of the work itself (as opposed to the persona of the plaintiff), which argues in favor of preemption.

*Id.* at 48-49.

Here, in contrast, President Trump seeks leave to plead the undisputed facts that Defendants used his name, image, voice, and likeness without consent, elements which are entirely distinct from relief under the Copyright Act (let alone under Connecticut law).  Further to the point, here, Defendants use of President Trump's likeness was precisely a strategy of profiting from "identity emphasis" on the basis of President Trump's likeness, given that he is identified in a manner that implies endorsement and, given that Defendants place extreme value in the identity of President Trump, an exact situation in which the *Jackson* court "urges against preemption[.]"

Defendants' reliance on *Melendez v. Sirius XM Radio, Inc.*, is also misplaced.  50 F.4th 294, 304 (2d. Cir. 2022).  There, the plaintiff failed to allege "that Sirius XM used his name or likeness in a way separate from, or beyond, airing excerpts of existing archival episodes in which he appeared. . . . [T]he gravamen of [his] right of publicity claims [wa]s that Sirius XM used the challenged excerpts 'to promote *The Howard Stern Show*[.]'"  *Id.*  Here, President Trump does not merely allege that Defendants published his likeness.  In addition, he also alleges that Defendants exploited his name, image and likeness to sell *The Trump Tapes* itself.  *Melendez* actually cites several cases where claims for misappropriation were not preempted which support President Trump's position, where, like here, a plaintiff alleged that defendants "used the plaintiff's identity or likeness to support a product that was independent from the copyrighted work itself."  *Id.* at 306 (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1011 (3d Cir. 2008) (defendant used plaintiff NFL broadcaster's voice in production about football video

-14-

game); *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 999–1000 (9th Cir. 2001) (defendant used photograph of plaintiffs in a catalog to sell t-shirts identical to those worn by plaintiffs in a photograph from thirty years earlier); *Midler v. Ford Motor Co.*, 849 F.2d 460, 461 (9th Cir. 1988) (defendant used imitation of plaintiff Bette Midler's voice in car advertisement); *Brown v. Ames*, 201 F.3d 654, 656–57 (5th Cir. 2000) (defendant record company misappropriated "the names and likenesses" of "individual blues musicians, songwriters, [and] music producers" on company's CDs, tapes, catalogs, and posters)).  These cases further demonstrate that, where, as here, a party uses a plaintiff's identity as the direct sales point of a product, they are not preempted.  President Trump's misappropriation claims are not preempted.

## V.   PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR FRAUD/FRAUDULENT INDUCEMENT (COUNT X)

### i.   Under New York Choice-of-Law Rules, Florida Substantive Law Applies

As demonstrated, the Court should apply New York choice-of-law rules, under which, Florida substantive law applies.  ECF 89 at 17-18.  In opposition, Defendants insist, as stated *supra*, that the law of a plaintiff's residence applies, not the law of his domicile.  Opp. at 19 n.16.  Not so; as previously demonstrated, ECF 89 at 18 (citing cases), *supra*, and incorporated by reference, the law of a plaintiff's *domicile*—here, Florida—governs.

### ii.   Elements and Analysis—The TAC States A Claim For Fraud/Fraudulent Inducement

As previously demonstrated, President Trump sufficiently pleads the elements for fraud/fraudulent inducement, *see* ECF 89 at 18-21; TAC ¶¶ 68-78, 197-205.

In opposition, Opp. at 24-25, Defendants attempt to cite cases that apply New York substantive law, not Florida law.  Therefore, those cases are irrelevant.  Even if they were

relevant, which they are not, *Miller v. Holtzbrinck Publishers, LLC*, 37 Fed. App'x 72 (2d Cir. 2010) is far from instructive.  There, the gravamen of the plaintiff's fraud claim was that defendant "orally promised to pay [plaintiff] 'at least $25,000 from Hunter's advance royalties,' and an unspecified portion of [defendant's] royalties after the book had been published. [Plaintiff], relying on that promise, wrote a manuscript that was eventually published. According to [plaintiff's] complaint, [defendant] did not pay [plaintiff] the promised sums and, indeed, did not intend to pay [defendant] at the time she promised to do so." *Id*. at *75.  Here, President Trump's proposed fraud/fraudulent inducement claim does not seek relief for a failed promise to pay— breach of contract.  Instead, he seeks relief for damages he incurred as a result of Woodward's representations that the interview recordings would be used solely for the book Rage, when in fact, he intentionally later published the recordings for profit.

Fraud claims are generally not preempted by the Copyright Act, *see* ECF 89 at 20-21.  In opposition, Defendants fail to address the cases cited by President Trump and thereby concede them.  Defendants, however, cite *Millennium Funding, Inc. v. 1701 Mgmt. LLC,* 576 F. Supp. 3d 1192 (S.D. Fla. 2021), for the proposition that a "fraud claim was preempted by the copyright infringement claim because the core of allegations was the same both claims."  Opp. at 21.  That analysis does not apply here.  There, "although the state law claims require[d] an extra element of a false statement, the copyright infringement claim relie[d] on the allegation of a false statement."  *Id*. at 1218.  Here, by contrast, President Trump's copyright claims, TAC ¶¶ 136-148, *do not* rest on allegations of intentionally false statements of material fact intended to deceive. President Trump's fraud/fraudulent inducement claim, therefore, does not rely on the same facts, and Defendants' argument, again, fails.

VI.    **PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR CONSTRUCTIVE FRAUD (COUNT XI)**

President Trump seeks leave to plead a claim for constructive fraud, *see* ECF 89 at 21-23; TAC ¶¶206-215, in the alternative to his claim for fraud/fraudulent inducement.

i.    <u>Under New York Choice-of-Law Rules, Florida Substantive Law Applies</u>

As stated previously, ECF 89 at 21, and above, *supra*, and incorporated here by reference, the Court should apply New York choice-of-law rules and apply substantive Florida law.

ii.    <u>Elements and Analysis—The TAC States A Claim For Constructive Fraud</u>

President Trump sufficiently plead the elements for constructive fraud. ECF 89 at 21-23.

In opposition, Defendants contend that a claim for constructive fraud fails "for lack of a plausible allegation of fiduciary duty." Opp. at 22. In support of that contention, Defendants implicitly—but incorrectly—posit that President Trump contends only that a fiduciary relationship between Woodward and President Trump was "created by their joint authorship and collaborative intent[,]" Opp. at 22-23 (*citing* TAC ¶ 149). Defendants, however, ignore the TAC's specific allegations of fact that President Trump reposed significant trust and confidence in Woodward, *see e.g.,* ECF 89 at 23 n.7 (citing *The Trump Tapes*); TAC ¶¶105-109, and that a fiduciary relationship arose and existed. Taking those allegations as true, as the Court must on this motion, *Perez v. 117 Ave. of the Americas Food Corp.*, No. 15-CV-8151 (JPO), 2016 WL 5415090, at *3 (S.D.N.Y. Sept. 27, 2016), the TAC states a more-than-plausible claim for this tort. Defendants cannot prevail on this motion by ignoring some allegations and cherry-picking others. Furthermore, Defendants' sole reliance on *Gasery*, applies New York law—not Florida law. Further, in *Gasery v. Kalakuta Sunrise, LLC*, 422 F.Supp.3d 807, 819 (S.D.N.Y. 2019), the court held that "[c]o-owners of a copyright do not have a fiduciary duty to each other based on that co-

ownership itself. . . . There are no additional facts in Plaintiff's complaint . . . that indicate that Plaintiff and Kalakuta intended to create a fiduciary duty or a joint venture[.]"  Given that Defendants vehemently oppose that President Trump has any copyright interest, their reliance on this case is disingenuous.  Furthermore, in the TAC, unlike in *Gasery*, "[t]here are . . . additional facts . . . that [do] indicate . . . a fiduciary duty[,]" *id*., *see e.g.,* TAC ¶¶ 105-109, although Defendants ignore those facts.

As previously demonstrated, ECF 89 at 20-21, 23, *supra*, and incorporated by reference, a claim for constructive fraud is not preempted by the Copyright Act, for the same reasons as President Trump's proposed claim for fraud/fraudulent inducement is not preempted.   In opposition, with respect to constructive fraud, Defendants contend that this claim is preempted because it is based on "the allegation that Woodward exceeded the scope of his license."  Opp. at 21 (*citing* TAC ¶ 210).

President Trump, however, pled nothing of the sort.  In fact, nowhere, with respect to his proposed claim for constructive fraud, did President Trump use the legal term "license." Instead, President Trump alleges that Woodward accepted trust and confidence sought from, and reposed by President Trump, and breached that confidence, beyond "the limited purpose authorized by President Trump."  TAC ¶ 210.  A "limited purpose" is not a "license."

## VII.    PRESIDENT TRUMP SUFFICIENTLY PLEADS A CLAIM FOR NEGLIGENT MISREPRESENTATION

President Trump seeks leave to add a claim for negligent misrepresentation, TAC ¶¶216-224, in the alternative to his claims for fraud/fraudulent inducement and/or constructive fraud.

i.    <u>Under New York Choice-of-Law Rules, Florida Substantive Law Applies</u>

As discussed above, *supra*, pp. 14-15, and incorporated here by reference, the Court should apply New York choice-of-law rules. Under those rules, as demonstrated above with respect to fraud/fraudulent inducement and constructive fraud, New York choice-of-law rules lead to the application of Florida substantive law. The same conclusion applies to this claim for negligent misrepresentation. Defendants, by their silence and failure to respond, concede this point.

ii.    Elements and Analysis—The TAC States A Claim For
Negligent Misrepresentation

President Trump has previously demonstrated that he pleads a sufficient claim for negligent misrepresentation. ECF 89 at 24-25. In opposition, Defendants' sole contention boils down to this: Woodward "did not know that he would use the recordings for [*The Trump Tapes*] at the time of the alleged misrepresentation[,]" Opp. at 25, evidenced by Woodward stating in *The Trump Tapes*' introduction, that he "decided to take the 'unusual step of releasing these recordings after relistening' to them 'earlier this year' (referring to 2022), long *after* he published *Rage*." *Id*.; *see The Trump Tapes*, p. 1 (emphasis added).

This contention, in fact, confesses and indeed, screams liability. With humdrum candor, Defendants acknowledge that Woodward made representations he believed to be true at the time—but which he now admits were false—because, according to him, he changed his mind two years later. Thus, Defendants plainly admit the first element for negligent misrepresentation: Woodward "made a misrepresentation of material fact that he believed to be true[,] but which was in fact false[.]" *Dziegielewski v. Scalero*, 352 So.3d 931, 934 (Fla. 5th DCA 2022).

At best for Defendants, this contention invites the Court to fact-find and examine Woodward's state of mind—an issue improperly resolved on a motion for leave to amend. *Perez*,

2016 WL 5415090, at *3 (court declined to consider documents in deciding a motion for leave to amend, as on "a motion to amend . . . a court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor[]") (cleaned-up).

The Copyright Act does not preempt a claim for negligent misrepresentation. ECF 89 at 25. In opposition, Defendants insist on preemption because, according to them, the claim is "based on a duty not to infringe upon the intellectual property rights of the plaintiff" and "merely restate[s] the plaintiff's copyright infringement claim."  Opp. at 21 (citing *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 227–28 (S.D.N.Y. 2010)). This contention borders on frivolous. *Gary Friedrich* involved a negligence claim, which is wholly distinct and different from a claim for *negligent misrepresentation*.  *Id*. at 227. There, the court held that a *negligence* claim, premised on a duty, was preempted because it restated a copyright infringement claim. *Id*. at 228. Here, President Trump seeks leave to add an entirely different tort—*negligent misrepresentation*, which requires a false representation, and does not have a duty requirement. The difference in the elements, and namely, the additional element for false promise contained in a claim for negligent misrepresentation, makes all the difference. Defendants plainly ignore this and thereby concede it.

## CONCLUSION

For the foregoing reasons, President Trump respectfully requests that the Court grant leave to file the Third Amended Complaint.

Dated: October 31, 2025                    Respectfully submitted,

                                           GS2LAW PLLC

                                           By:  /s/ Robert Garson
                                           Robert Garson (RG 1521)
                                           Kenneth A. Caruso (Of Counsel)
                                           David Labkowski (Of Counsel)
                                           Yanina Zilberman (*Pro Hac Vice*)
                                           20801 Biscayne Blvd, Suite 506
                                           Aventura, FL, 33180
                                           rg@gs2law.com

                                           *Attorneys for Plaintiff,*
                                           *President Donald J. Trump,*
                                           *45th and 47th President of the*
                                           *United States, in his individual*
                                           *capacity*